# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| JON CHRISTOPHER EVANS AND JOINTLY ADMINISTERED RELATED CASES | Case No. 09-03763-NPO |
| DEBTORS. | Chapter 7 |

| | |
|---|---|
| DEREK A. HENDERSON, TRUSTEE FOR THE BANKRUPTCY ESTATE OF JON CHRISTOPHER EVANS AND JOINTLY ADMINISTERED RELATED CASES | PLAINTIFF |
| VS. | ADV. PROC. NO. 10-00005-NPO |
| COMMUNITY BANK OF MISSISSIPPI, ET AL. | DEFENDANTS |

### TITLE COMPANIES' REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON THE CONTRACT CLAIMS OF MERCHANTS & FARMERS BANK

Mississippi Valley Title Insurance Company and Old Republic National Title Insurance Company (the "Title Companies") submit their Reply Brief in Support of Motion for Summary Judgment as to Merchants & Farmers Bank's ("M&F") [Dkt. 197] and State Bank and Trust Company's ("State Bank") [Dkt. No 186] (collectively the "Banks") claims for (1) breach of contract, (2) bad faith/tortious breach of contract/breach of obligation of good faith and fair dealing, and (3) attorneys' fees. Nothing in the Banks' responses precludes summary judgment.

### I.  CLARIFICATION OF ISSUES

Three title claims are the subject of the Title Companies' Motion for Summary Judgment on the contract claims of State Bank and M&F (the "Motion"). Two of the claims arise from title claims submitted by State Bank pertaining to (1) Tract 3E and (2) Tracts 3B and 3F. The Title Companies cured the defects with all of respect to all of those Tracts so that State Bank has

1

4/272878.1

now received exactly what it bargained for when making the loans. The third claim arises from a title claim submitted by M&F pertaining to Tracts 3A and 3F. The Title Companies purchased Tract 3A from the bankruptcy estate and offered to convey it to M&F, but M&F chose to receive a $265,000 payment with the express understanding that the payment "has the same effect as a conveyance." The Title Companies paid M&F $450,000 for its claim on Tract 3F. Simply, State Bank received exactly that for which it bargained, and M&F received a total of $715,000. State Bank, unhappy with the collateral intended as security for its loans, and M&F, unsatisfied with the payments it received pursuant to the clear terms of the policy (even the payment that acted as a cure), both seek to insert additional coverage into the clear and unambiguous language of the Title Policies. With regard to the Title Companies' Motion, there are three primary issues:

1) Did the Title Companies fully satisfy their obligations under the title policies for the M&F by paying M&F on one tract for the "same effect as a conveyance" and paying the value of the property at the time the claim was made (which was the same value at the time the claims were paid) on the other tract?

2) Did the Title Companies fully satisfy their obligations under the Title Policies by providing State Bank with the collateral intended as security for each loan?

3) Did the Title Companies have an arguable basis for their decisions to resolve the Banks' title claims, thereby, barring the Banks' claims for bad faith?

As discussed below, the clear language of the Title Policies coupled with the undisputed facts show that the Title Companies fully performed their obligations to the Banks and acted in a good faith at all times.

## II. ARGUMENT

The unsupported assertions of fact and law in the Banks' responses demonstrate their inability to avoid summary judgment. For the reasons set forth below, the Court should dismiss as a matter of law all of the Banks' contractual and extra-contractual claims with prejudice.

2

4/272878.1

A.   **M&F's Response Ignores the Nature of Its Own Claims.**

The primary issue before the Court here is whether the Title Companies fully performed all of their responsibilities under the Title Policies by either paying the Banks or curing the title defects so that the Banks received their respective collateral. M&F focuses a majority of its argument on the date of valuation under the Title Policies.[1] [Dkt. No. 355, p. 7]. Accordingly, M&F reasons, the "issue is the amount of money owed by the [Title Companies] under terms of the contracts of insurance…" [Dkt. No. 355, p. 9]. M&F's argument misses the mark completely with Tract 3A. With respect to that Tract, the Title Companies undisputedly exercised their right to cure under the Title Policies and offered to convey to M&F its collateral instead of paying its claim. M&F, however, chose to receive payment on Tract 3A. The date of valuation is wholly irrelevant with regard to that Tract. Thus, the only Tract where valuation even possibly comes into play is with Tract 3F.

M&F also claims that "the indemnification purpose" of the Title Policies requires the Title Companies to pay for all other losses, including attorneys' fees. [Dkt. No. 355, p. 16]. M&F claims that the Title Policies are ambiguous because of a conflict between the Successful Cure Provision and the indemnification purpose of the title insurance. [Dkt. No. 355, p. 16-17]. Although this argument is similar to the argument asserted by State Bank, M&F failed to point to any specific contradiction between two clauses in the Title Policies.[2] The lack of merit of this

---

[1] Furthermore, the discussion incorporated by reference by M&F contradicts the overwhelming majority of law. M&F carelessly claims that its position is supported by a "rational examination of cases from throughout the county," but M&F fails to provide any cases supporting its argument. [Dkt. No. 355, p. 10, 9-13]. The majority of M&F's argument is copied, without attribution, from a letter drafted counsel for First Security Bank and sent to the Title Companies on October 29, 2010. [Dkt. No. 357-2].

[2] Critically, "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous." *First Specialty Ins. Corp. v. U.S. Aquaculture Licensing*, 2008 WL 5191668, at *3 (N.D. Miss. Dec. 10, 2008) (Aycock, J.) (quoting *Turner*, 799 So.2d at 32). In fact, the opposite is true: "when construing contracts, the Mississippi Supreme Court *favors* a determination that the terms of the contract are not ambiguous and are

3

4/272878.1

misplaced argument is discussed below. For purposes of M&F, the import is simple – conclusory statements are incompetent summary judgment evidence and cannot defeat the Title Companies' properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("significant probative evidence" required to survive summary judgment); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (non-movant cannot meet burden simply by relying on unsubstantiated assertions, improbable inferences, or unsupported speculation because these are not competent summary judgment evidence).

### B.     The Title Companies Satisfied their Obligations on the Paid Claims.

M&F makes two arguments in support of its position that the Title Companies have failed to satisfy their obligations under the title policy by paying M&F. First, M&F asserts that the Title Companies owe the Banks additional payment, including the balance of its loan notes, loan interest, and attorneys' fees. Second, M&F argues that the Court should apply the policy issuance date as the date of valuation for determining the amount of payment on Tract 3F.[3]  Both arguments lack merit.

#### 1.     The Maximum Payment Provision controls the maximum amount due to the insured when the Title Companies elect to pay rather than cure.

The Maximum Payment Provision clearly states that the "policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy." [Dkt. No. 320-1, p. 1]. The provision also expressly provides that when payment is made, "[t]he extent of liability of the Company for loss or damage shall not exceed the least of" three options: (1) the

---

sufficiently definite to determine the intent of the parties." *Carlo Corp. v. Casino Magic of La. Corp.*, 26 F. Supp. 2d 904, 907 (S.D. Miss. 1998) (emphasis added).

[3] M&F makes these same arguments about Tract 3A, but the Title Companies offered to cure the defect on Tract 3A, and M&F chose payment, instead. Thus, the valuation date is entirely irrelevant with respect to Tract 3A.

4

Amount of Insurance, (2) the Indebtedness, or (3) the difference between value of the title as insured and the value of the title subject to the defect. [*See* Maximum Payment Provision, Dkt. No. 320-1, p. 5, ¶8]. This specific provision controls over the Title Policies' general provisions relied upon by M&F which reference "indemnity" and/or "loss or damage." *Harris v. Harris*, 988 So. 2d 376, 379 (Miss. 2008) ("specific language controls over general inconsistent language in a contract.") In other words, the Maximum Payment Provision establishes that the maximum amount payable is the least of these three options. With regard to Tract 3F, the Title Companies paid under the third option. The Maximum Payment Provision is clear, unambiguous, and undisputedly applies to the Paid Claims.

The Title Companies properly paid M&F under the Maximum Payment Provision. Unfortunately for M&F, its request for additional payment is based on its desires rather than on the clear and controlling language of the Title Policies.

   **2.    The Date of Valuation is the Date the Title Claim was Made or the Date the Claim was Paid.**

There is no dispute that the Unsuccessful Cure Provision and the Maximum Payment Provision dictate the amount and date of payment under the Title Policies. The only dispute raised by M&F is a misplaced argument regarding the date of valuation for purposes of payment. M&F fails to cite any authority discussing or analyzing the Unsuccessful Cure Provision or the Maximum Payment Provision. [Dkt. No. 355, pp. 9-16]. Instead, the M&F relies on Mississippi cases stating that alleged ambiguities in an insurance policy should be resolved in favor of an insurer.[4] M&F did not provide any controlling or persuasive authority analyzing the language in

---

[4] The Fifth Circuit has recognized that title insurance policies may not be contracts of adhesion but rather are arms-length transactions because the policies are drafted by the American Land Title Association. *First Am. Title Ins. Co. v. First Trust Nat'l Ass'n (In re Biloxi Casino Belle Inc.)*, 368 F.3d 491, 496-97, n.5 (5th Cir. 2004)(citing Michael F. Jones & Rebecca R. Messall, *Mechanic's Lien Title Insurance Coverage for Construction Projects: Lenders and Insurers Beware*, 16 REAL EST. L.J. 291, 306-07 (1988)).

5

4/272878.1

question. Conversely, the Title Companies provided the Court with numerous cases directly on point. Specifically, these cases agree with the Title Companies' position that the date of valuation is after a title claim is made—not the pre-claim date(s) urged by M&F. [Dkt. No. 321, p. 15].

The Fifth Circuit has held that a title company "insured the Bank's title to the Property, not the Property's fair market value." *First State Bank v. American Title*, 1996 WL 400322, at *3 (5th Cir. 1996 June 19, 1996). The Tenth Circuit Court of Appeals has also recognized that "[t]itle insurance does not insure the value of the subject property; it insures only that the title to such property is unencumbered by unknown liens, easements, and the like which might affect the property's value." *First Fed. Sav. & Loan Ass'n v. Transamerica Title Ins. Co.*, 19 F.3d 528, 530-31 (10th Cir. 1994); *See JP Morgan Chase Bank*, 725 F. Supp. 2d at 623 (quoting *Gibraltar Sav. v. Commonwealth Land Title Ins. Co.*, 905 F.2d 1203, 1205 (8th Cir. 1990) ([a] title policy is a contract of indemnity, not of guaranty, and provides reimbursement for actual loss only. A title insurance policy provides for indemnity only to the extent that [the insured's] security is impaired and to the extent of the resulting loss that it sustains.")).

As the Seventh Circuit Court of Appeals held, "[i]t is hard to see how 'actual loss' could exceed market value on the date of the loss. A decline in the value of the [property] … cannot be attributed to a problem in title.... '[A]ctual loss' is no greater than the price such interests would have fetched if unimpaired." *Allison v. Ticor Title Ins. Co.*, 907 F.2d 645, 651 (7th Cir. 1990) (interpreting language substantially similar to the Maximum Payment Provision). This sound reasoning applies to M&F. M&F cannot expect to recover (and the Title Policies do not cover) more than the property was worth at the time they could have foreclosed. Any holding otherwise would result in a windfall recovery for M&F. M&F intended the subject property as sufficient

6

4/272878.1

collateral for its loans. To the extent the value of that collateral has decreased, M&F assumed that risk. Even if M&F had perfect title, it still could not have recovered the value of the property on the date it made the loan (years ago). Instead, M&F's recovery would be limited to the value of the property at the time of foreclosure. To the extent the collateral was insufficient, M&F can pursue the borrower for the deficiency. The Title Companies neither insured the value of the property, nor the liquidity of the borrower.

The Unsuccessful Cure Provision is unequivocally clear that, in the event of an unsuccessful cure, value of the insured title is determined on one of two dates: (1) the date the claim was made under the policy, or (2) the date the claim is settled or paid by the Title Companies. Both of these dates occur after the discovery of the title defect. Further, the extent of liability remains governed by the Maximum Payment Provision. The overwhelming majority of cases have held that the date of valuation under a lender's policy is the date of foreclosure or the date the lender could have foreclosed but for the title defect.[5] It is undisputed that this was the date used by the Title Companies in paying M&F. For the reasons above and in the Title Companies' brief in support of its Motion, this satisfied all obligations under the Title Policies.

### C. The Title Companies Satisfied their Obligations on the Cured Claims.

As set forth in the Title Companies' brief in support of their Motion, the Title Companies cured the defects on both of State Bank's claims and offered to cure Tract 3A for M&F. By

---

[5] *See Karl v. Commonwealth Land Title Ins. Co.*, 20 Cal. App. 4th 972, 24 Cal. Rptr. 2d 912, 919-20 (Cal. App. 1993); *Cale v. Transamerica Title Ins.*, 225 Cal. App. 3d 422, 426-27 (Cal. App. 3d Dist. 1990); *Blackhawk Production Credit Ass'n. v. Chicago Title Ins. Co.*, 423 N.W.2d 521, 525 (Wis. 1988); *CMEI, Inc. v. American Title Ins. Co.*, 447 So. 2d 427, 428 (Fla. App. 1984); *RTC Mortg. Trust 1994 N-1 v. Fidelity Nat'l Title Ins. Co.*, 58 F. Supp. 2d 503, 534-35 (D.N.J. 1999); *Falmouth Nat'l Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1063 (1st Cir. 1990); *Green v. Evesham Corp.*, 430 A.2d 944, 949 (N.J. App. 1981) (value determined as of date when lender received deed in lieu of foreclosure); *Trico Mortgage Co. v. Penn Title Ins. Co.*, 657 A.2d 890, 896 (N.J. App. 1995) (value calculated at date of sheriff's sale); *Atlanta Title & Trust Co. v. Allied Mortg. Co.*, 12 S.E.2d 147, 149 (Ga. App. 1940) ("The insurable value of a mortgage on real estate is the fair market value of the realty which secures the mortgage, and is not controlled by the original purchase-price of the mortgage."); *Narberth Building & Loan Assoc. v. Bryn Mawr Trust Co.*, 190 A. 149 (Pa. Super. 1937).

doing so, the Title Companies fully complied with the terms of the Title Policies.

   **1.**  **M&F entirely ignores that the payment on Tract 3A had the same effect as a cure.**

As discussed in their brief, the Title Companies had the contractual right to cure any title defects. [Dkt. No 321, pp. 11-15]. The Title Companies presented the option of conveying Tract 3A to M&F, but M&F instead chose to receive $265,000 from the Title Companies with the express understanding that "payment of these tendered funds has the same effect as a conveyance of title to the insured property to Merchants & Farmers Bank." [Dkt. No. 197, ¶ 12; Exhibit 4, *Acknowledgement of Tender and Reservation of Rights* (Exhibit 2 to M&F's Complaint)]. Because this payment had the same effect as a cure of any defect, the Title Companies are entitled to judgment as a matter of law on M&F's breach of contract claim with respect to Tract 3A for the reasons discussed below and in pages 11-13 of their brief regarding the Title Companies' right to cure title defects. [Dkt. No 321, pp. 11-13]. M&F never addressed this in its response, instead focusing on the entirely irrelevant (for Tract 3A) date of valuation.

   **2.**  **The Title Companies fulfilled their obligations by curing the defects on State Bank's claims.**

The Title Companies also cured the defects on the State Bank Tracts, which satisfied the Title Companies' obligations under the Title Policies. State Bank admits that the Title Companies caused the "Trustee to recognize the validity and priority of State Bank's lien, allowing State Bank to foreclose on these tracts [Tracts 3B and 3F]." [Dkt. No. 351, pp. 5]. State Bank further admits that the Title Companies corrected the legal description in Tract 3E. [Dkt. No. 351, pp. 6]. Despite this, State Bank asserts that the Title Companies owe State Bank the "loan deficiency" and all attorney's fees incurred by State Bank (including fees incurred as a result of pursuing litigation against the Title Companies and claims in bankruptcy) on Tracts 3B

8

4/272878.1

and 3F and the attorney's fees for the same on Tract 3E. [Dkt. No. 351, pp. 9]. State Bank's assertion that the Title Companies owe the entire loan deficiency and attorney's fees related to the bankruptcy proceeding and proceedings against the Title Companies has no basis in law or fact. Most importantly, State Bank's argument contradicts Mississippi law that a "title insurance contract does not … insure the amount of the indebtedness. It insures that the title to the property described in the lien referred to, or mentioned, in the policy, is in fact a good title, with the exceptions, if any, therein mentioned." *Rancher's Life Ins. Co. v. Banker's Fire & Marine Ins. Co.*, 190 So. 2d 897, 899 (Miss. 1966) (internal citations omitted).

As discussed above, State Bank does not dispute that the Title Companies cured all alleged defects pertaining to the tracts. This critical admission by silence establishes that the Title Companies have satisfied their policy obligations because the Successful Cure Provision states that "[i]f the Company establishes the Title, or removes the alleged defect, lien or encumbrance…, all as insured, … it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured." (*See* Successful Cure Provision, Dkt. No. 320-1, p. 5, ¶9(a)). Simply put, if the Title Companies cure the alleged title defect, they have no other liability under the Title Policies.[6]

Despite the Title Policies' clear and unambiguous language, State Bank asserts that "where monetary losses, such as attorney's fees, are sustained <u>before</u> an alleged cure is effected, application of the [Successful Cure Provision] creates an irreconcilable conflict with the indemnification purpose of the title policies." [Dkt. No. 351, p. 8]. In other words, State Bank asserts that the Title Policies insure its loans, rather than title to its intended collateral. The Title

---

[6] State Bank also alleges that the Title Companies breached the policies by the delay in curing the legal description of Tract 3E. For the reasons discussed below, the Title Companies did not unreasonably delay doing so. In addition, as discussed below, State Bank suffered no actual damages as a result of any alleged delay. Thus, State Bank's argument that the Title Companies breached the policies in curing the legal description is without merit.

9

Case 3:15-cv-00093-MPM-SAA Doc #: 293 Filed: 10/19/17 1 of 17 PageID #: 6923
Case 3:15-cv-00093-MPM-SAA Doc #: 293 Filed: 10/19/17 Page 10 of 17 PageID #: 6923 Main
Document    Page 10 of 17

Policies provide no such coverage.

Notably, State Bank does not does dispute that the Successful Cure Provision is, in and of itself, unambiguous. Instead, to reach its strained interpretation, State Bank asserts that the purported irreconcilable language (the terms "loss or damage") is not defined in the Title Policies. [Dkt. No. 351, p. 8]. Thus, State Bank reasons, the Title Policies are ambiguous and should be construed as providing *carte blanche* coverage, without regard for the Title Policies' limitations exceptions, or exclusions. Critically, "[t]he mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous." *First Specialty Ins. Corp. v. U.S. Aquaculture Licensing*, 2008 WL 5191668, at *3 (N.D. Miss. Dec. 10, 2008) (Aycock, J.) (quoting *Turner*, 799 So.2d at 32). In fact, the opposite is true: "when construing contracts, the Mississippi Supreme Court *favors* a determination that the terms of the contract are not ambiguous and are sufficiently definite to determine the intent of the parties." *Carlo Corp. v. Casino Magic of La. Corp.*, 26 F. Supp. 2d 904, 907 (S.D. Miss. 1998) (emphasis added). Thus, State Bank's assertion that the Title Policies are ambiguous is not enough to create a true ambiguity.

State Bank ignores clear and unambiguous language of the Successful Cure Provision, which dictates that the Title Companies "shall not be liable for any <u>loss or damage</u>" to State Bank when the defect is cured. In other words, State Bank's argument fails on its face. State Bank argues that the Title Policies' preliminary paragraph which states that the Title Companies "insure … against <u>loss or damage</u>" as defined in the policy is somehow contradictory with the Successful Cure Provision's statement that the Title Companies "shall not be liable for any <u>loss or damage</u>" to State Bank when the defect is cured.

This argument fails on its face for two reasons. First, Mississippi law is clear that

10

"specific language controls over general inconsistent language in a contract."[7] *Harris*, 988 So. 2d at 379 (citing *Union Planters Bank, N.A. v. Rogers*, 912 So. 2d 116, 120 (Miss. 2005)) (internal quotations omitted). State Bank's misplaced appeal for broad, unrestrained coverage turns this basic principle of contract construction upside down. State Bank would have general provisions control over specific. Regardless of its intent, State Bank's argument cannot survive the specific language of the Successful Cure Provision.

Second, courts agree that a title insurance company satisfies its obligations by curing the alleged title defects. *Baker v. First Am. Title Ins. Co.*, 2009 Ariz. App. LEXIS 823 (Ariz. App. Oct. 27, 2009); *First Fed. Sav. Bank v. Stewart Title Guar. Co.*, 317 S.C. 131, 141 (S.C. App. 1994) (there are no other losses of which to indemnify when a title insurer establishes title to the property through litigation) (applying Florida law). And, the Fifth Circuit has explained that title insurance insures "the Bank's title to the Property, not the Property's fair market value." *First State Bank v. American Title*, 1996 WL 400322, at *3 (5th Cir. 1996 June 19, 1996). Thus, the Title Companies need not provide the full value of the loan. Here, the Title Companies have undisputedly cured the alleged title defects. Therefore, they have no other obligations under the Title Policies.[8]

### D.     **The Banks Bad Faith Claims Fail as a Matter of Law.**

In support of their bad faith claims, the Banks assert that the Title Companies (1) intentionally failed to satisfy their obligations under the Title Policies; (2) unreasonably delayed

---

[7] Further, Mississippi courts have held that courts must "read the policy as a whole, considering all the relevant portions together and, whenever possible, should give operable effect to every provision in order to reach a reasonable overall result." *Progressive Gulf Ins. Co. v. We Care Day Care Ctr., Inc.*, 953 So. 2d 250, 253 (Miss. App. 2006)(citing *J&W Foods Corp. v. State Farm Mut. Auto. Ins. Co.*, 723 So. 2d 550, 552 (P8) (Miss. 1998) (internal quotations omitted).

[8] M&F also argues in passing that the Title Companies owe the loan deficiencies and attorney's fees. With respect to Tract 3A, M&F's argument is irrelevant because the Title Companies offered to cure the defect. With respect to Tract 3F, M&F's argument is misplaced for the reasons set forth above.

11

4/272878.1

curing the defect in Tract 3E; and (3) intentionally failed to indemnify the Banks for the loan deficiencies and attorneys' fees. The Banks' bases for these alleged facts are misplaced and summary judgment on these claims in favor of the Title Companies is proper.

**1. Clarification of the Law**

To maintain a claim for bad faith, the Banks must demonstrate the following elements by clear and convincing evidence: (1) "that the claim or obligation was in fact owed"; (2) that the Title Companies have "no arguable reason to refuse to pay the claim or to perform its contractual obligation"; and (3) "that the insurer's breach of the insurance contract results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an intentional tort." *Essinger v. Liberty Mut. Fire Ins. Co.*, 529 F.3d 264, 271 (5th Cir. 2008). The determination of whether an insurer had a reasonable arguable basis to deny the claim is a question of law for the Court. *United Am. Ins. Co. v. Merrill*, 978 So. 2d 613, 634 (Miss. 2007); *Windmon v. Marshall*, 926 So. 2d 867, 872 (Miss. 2006); *Murphree v. Federal Ins. Co.*, 707 So. 2d 523, 529 (Miss. 1997).

**2. The Title Companies satisfied their policy obligations.**

As discussed above and in the Title Companies' brief in support of their Motion, the Title Companies have fully performed their obligations under the Title Policies. Because the Title Companies have satisfied their obligations under the Title Policies, there can be no claims for bad faith. Even if the Court determines that additional benefits are owed, the Title Companies had an arguable basis for the payments made and the actions taken to resolve the Banks' claims. The bases for the Title Companies' actions are the overwhelming majority of cases throughout the nation agreeing with the position taken by the Title Companies, which have been cited in the briefs submitted to the Court. The Mississippi Supreme Court recently made clear that extra-

contractual damages such as bad faith and attorneys' fees are not warranted where the insurer can demonstrate an arguable, good-faith basis for denial of a claim. *Lisanby*, 47 So. 3d at 1178. The Mississippi Supreme Court "has said that the plaintiff bears a heavy burden of proving that the denial of an insurance claim was in bad faith." *Id*. (internal quotations omitted).

Because the Title Companies properly satisfied their obligations, or at a minimum, had an arguable basis for their decisions in doing so, the Banks cannot meet their heavy burden and the Court should grant judgment as a matter of law in favor of the Title Companies on the Banks' bad faith claims and for punitive damages.

### 3. The Title Companies did not unreasonably delay curing the defects and State Bank suffered no harm from the alleged delay.

State Bank asserts that the Title Companies unreasonably delayed curing the legal description of Tract 3E.[9] State Bank's allegation that the Title Companies failed to cure in a reasonably diligent manner ignores the facts. The issues surrounding Charles Evans and Chris Evans came to light in September of 2009. Cedar Lake Investors, LLC, the borrower on Tract 3E, filed its chapter 7 bankruptcy petitions on November 19, 2009. (See cause no. 09-04102).

Trustee Henderson filed this adversary proceeding to determine the extent, validity and priority of liens on January 15, 2010. [Dkt. No. 1]. The Title Companies diligently worked with the bankruptcy trustee and other parties to secure the Title Resolution Agreement, which was filed with the Court in April 2010 and approved by the Title Resolution Order in May 2010. The Title Companies also retained a lawyer to reform the legal description of Tract 3E, which was accomplished by May of 2011 through a final judgment in the Chancery Court of Madison County. The Title Resolution Order, the chancery court judgment, and other efforts by the Title Companies resolved the title defects at issue and allowed the Title Companies to convey to the

---

[9] State Bank makes no claim the Title Companies unduly delayed curing the defect with Tracts 3B and 3F.

13

4/272878.1

Banks their intended collateral or cure any defects. Due to the complexity of this matter and all the parties involved, the Title Companies' ability to negotiate a plan for resolving all title defects in this time frame is nothing short of remarkable and demonstrates the utmost good faith.

Ignoring this, State Bank argues in a conclusory fashion that the Title Companies did not correct the legal description in Tract 3E in a reasonable amount of time. [Dkt. No. 351, p. 12]. State Bank provides no law or argument why other than a reference to *Traveler's Indem. Co. v. Wetherbee*, 368 So. 2d 829 (Miss. 1979), which is inapplicable here. [Dkt. No. 351, p. 12]. In *Wetherbee*, the insured purchased an all-risk insurance policy on his home. *Id*. at 830. A fire severely damaged the insured's premises. *Id*. Shortly after the insured submitted a claim, the insurer inspected the house. *Id*. Suspecting arson, the insurer cancelled the policy and declined payment pending the fire marshal's investigation. *Id*. Subsequently, the fire marshal concluded his investigation and exonerated the insured for suspected arson. *Id*. at 831. In an effort to resolve the claim, the insured provided an estimate of the loss resulting from the fire in the amount of $23,889.38. *Id*. The insurer valued the loss at $20,000.00. *Id*. Despite the fact that $20,000.00 was an undisputed loss, the insurer refused making any payment unless and until the insured agreed to the exact amount. *Id*. In the interim, the insured was forced to move his family into various hotels and apartments and had to continue paying mortgage payments to avoid foreclosure. *Id*. at 830-31. Despite the insurer's causative investigation being complete on May 25, 1976, the insurer did not make any payments until February 4, 1977. *Id*. at 834. Even this payment, however, did not include payment for the undisputed damage. *Id*.

*Wetherbee* does not apply here. First, the *Wetherbee* court relied heavily on the fact that the insured (an individual) in that case was in financial straits. Here, both State Bank and the Title Companies are sophisticated entities. Thus, the "special relationship" consideration does

14

not apply. *Andrew Jackson*, 566 So. 2d at 1188-89. Further, in this case, the Title Companies did not withhold payment to State Bank. Additionally, the Title Companies did not attempt to leverage any financial straits of State Bank in this case (and there is no evidence that State Bank is in any financial trouble). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) ("significant probative evidence" required to survive summary judgment); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (non-movant cannot meet burden simply by relying on unsubstantiated assertions, improbable inferences, or unsupported speculation because these are not competent summary judgment evidence).

The Title Companies cured the title defect. No reasonable minds could contend that the Title Companies' actions were made in bad faith. To the contrary, in the face of an enormously complex claims process, the Title Companies acted promptly, diligently, and in good faith. The facts of this case are vastly different from the facts in *Wetherbee*.

Moreover, State Bank never alleges that it suffered any actual damages as a result of the alleged delay in correcting the legal description of Tract 3E. Notably, State Bank claims that it suffered damages with respect to Tracts 3B and 3F in the form of a loan deficiency, but make no such claims with respect to Tract 3E. Although State Bank's argument on Tracts 3B and 3F is misplaced for the reasons discussed above, its silence with respect to Tract 3E is telling. State Bank provides no claim that it suffered actual damages as a result of the delay because there are no damages. Without any harm as a result of any alleged delay, State Bank cannot be successful on this claim.

    **4.    The Title Companies' decision to cure pursuant to the terms of the Title Policies cannot be bad faith.**

As a last effort to claim bad faith, State Bank claims that the "Title Companies intentionally ignore the clear language of their title policies which provide that they are contracts

15

4/272878.1

for indemnification against actual monetary loss or damage." [Dkt. No. 351, p. 12]. Thus, State Bank contends, the Title Companies have no arguable basis for not providing the entire amount of the loan and not paying for the attorneys' fees related to the bankruptcy and adversary proceedings. Of course, State Bank fails to mention the Successful Cure Provision, which (as discussed above) states that if the Title Companies cure the title defects, then they are not responsible for any loss or damage. At the very least, this creates an arguable basis for the Title Companies' actions.

In short, none of the bad faith allegations withstand even the slightest scrutiny. As such, the Title Companies are entitled to summary judgment on these claims, as well.

### III.  CONCLUSION

Despite the conclusory allegations in the Banks' responses, nothing changes that the Title Companies fully complied with their obligations under the Title Policies. Accordingly, for the reasons set forth above and in the Title Companies' brief in support of their Motion, the Title Companies respectfully request that the Court grant the Title Companies' motion for partial summary judgment as to the contract claims and award the Title Companied any and all further appropriate relief.

Respectfully submitted, this the 29th day of September, 2011.

**MISSISSIPPI VALLEY TITLE INSURANCE
COMPANY and OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY**

By:

/s/ Mason E. Lowe
DAVID W. CLARK  (MSB #6112)
MASON E. LOWE (MSB#102393)

4/272878.1

OF COUNSEL
Bradley Arant Boult Cummings LLP
One Jackson Place
188 East Capitol Street, Suite 400
PO Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been filed via the CM/ECF System, which sent notification to all counsel of record.

This the 29th day of September, 2011.

/s/ *Mason E. Lowe*
Mason E. Lowe