W. Wayne Drinkwater (MBN 6193)
Mason E. Lowe (MBN 102393)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

*Attorneys for Defendant ACA Financial Guaranty Corporation*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

------------------------------------------------------------------ x
: 
JAMES E. DAVIS, INDIVIDUALLY AND ON :
BEHALF OF ALL OTHERS SIMILARLY :
SITUATED, :
: 
                Plaintiff, : Case No. 3:11CV093-M-A
: 
                vs. :
: 
ACA FINANCIAL GUARANTY CORPORATION, :
and JOHN DOES One through Ten, : **ORAL ARGUMENT REQUESTED**
: 
                Defendants. :
: 
: 
------------------------------------------------------------------ x

**DEFENDANT ACA FINANCIAL GUARANTY CORPORATION'S
REPLY MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND TO STAY ALL CLASS CERTIFICATION PROCEEDINGS**

# TABLE OF CONTENTS

### TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

I. THERE IS NO BASIS TO CONVERT ACA'S MOTION TO DISMISS
INTO A MOTION FOR SUMMARY JUDGMENT .......................................................3

II. NEW YORK'S GUARANTY LAW REQUIRES THE DISMISSAL OF
PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW ...........4

III. THE POLICIES' PLAIN LANGUAGE REQUIRES THE DISMISSAL OF
PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW ...........9

IV. PLAINTIFF'S ANTICIPATORY REPUDIATION
CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW ..................................11

V. PLAINTIFF'S NEGLIGENCE AND GROSS NEGLIGENCE
CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW ................................12

VI. PLAINTIFF'S BREACH OF THE IMPLIED DUTY
OF GOOD FAITH AND FAIR DEALING CLAIM
SHOULD BE DISMISSED AS A MATTER OF LAW ................................................13

VII. ALL PROCEEDINGS RELATING TO CLASS CERTIFICATION,
INCLUDING DISCOVERY, SHOULD BE STAYED ................................................14

CONCLUSION.....................................................................................................................14

# **TABLE OF AUTHORITIES**

**CASES:**

*Assets Realization Co. v. Roth*,
    226 N.Y. 370 (N.Y. 1919) ....................................................................................... 8

*Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*,
    2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003),
    *aff'd*, 110 F. Appx. 191 (2d Cir. 2004) ................................................................. 12

*Blitman Constr. Corp. v. Ins. Co. of N. Am.*,
    498 N.Y.S.2d 349 (N.Y. 1985) ............................................................................... 8

*Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31 (2d Cir. 1999) ................................................................. 6

*Compis Servs., Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*,
    708 N.Y.S.2d 770 (N.Y. App. Div. 2000) .............................................................. 8

*Dudgeon v. Mut. Ben. Health & Accident Ass'n*,
    70 F.2d 49 (4th Cir. 1934) .................................................................................... 11

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) .............................................................................................. 14

*Great Am. Restoration Servs. v. Scottsdale Ins. Co.*,
    911 N.Y.S.2d 142 (N.Y. App. Div. 2010) ............................................................ 10

*Israel v. Chabra*,
    601 F.3d 57 (2d Cir. 2010) ..................................................................................... 5

*Kelly v. Sec. Mut. Life Ins. Co.*,
    186 N.Y. 16 (1906) ............................................................................................... 12

*May v. Aetna Life & Cas. Co.*,
    614 N.Y.S.2d 955 (N.Y. App. Div. 1994) .............................................................. 8

*Medaris v. Lionel Corp.*,
    268 N.Y.S.2d 936 (N.Y. App. Div. 1966) ............................................................ 12

*Mohasco Indus., Inc. v. Giffen Indus., Inc.*,
    335 F. Supp. 493 (S.D.N.Y. 1971) ......................................................................... 8

*Outlook Realty, LLC v. U.S. Underwriters Ins. Co.*,
    886 N.Y.S.2d 630 (N.Y. App. Div. 2009) ............................................................ 10

*Republic Nat'l Bank of N.Y. v. Haddad*,
    504 N.Y.S.2d 669 (N.Y. App. Div. 1986) ..........................................................................5

*Rhodes v. Liberty Mut. Ins. Co.*,
    892 N.Y.S.2d 403 (N.Y. App. Div. 2009) ........................................................................10

*Sholom & Zuckerbrot Queens Leasing Corp. v. Forate Realty Corp.*,
    286 N.Y.S.2d 364 (N.Y. App. Div. 1967) ........................................................................12

*St. Paul Fire & Marine Ins. C. v. Commodity Credit Corp.*,
    646 F.2d 1064 (5th Cir. 1981) ..............................................................................................8

*United States v. McMullen*,
    222 U.S. 460 (1912)............................................................................................................8

*United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
    369 F.3d 34 (2d Cir. 2004)..................................................................................................8

*Wallace Clark & Co. v. Acheson Indus., Inc.*,
    422 F. Supp. 20 (S.D.N.Y. 1976). .....................................................................................12

*White Rose Food v. Saleh*,
    758 N.Y.S.2d 253 (N.Y. 2003) ...........................................................................................5

**STATUTES:**

11 U.S.C. § 524(e) ........................................................................................................................4

11 U.S.C. § 901(a) ........................................................................................................................4

**TREATISES:**

*Couch on Insurance*, § 240:22 (3d. ed. 2010)............................................................................11

ACA[1] respectfully submits this Reply Memorandum of Law in support of its motion to: (a) dismiss Plaintiff's Complaint in its entirety; and (b) stay all class certification proceedings, including any discovery related thereto, pending the Court's resolution of ACA's motion.

## PRELIMINARY STATEMENT

New York law clearly provides that a guarantor (like ACA) is relieved of its liability where there is any alteration to either the insured obligation (*e.g.*, the cancellation of the Original Insured Bonds) or the guarantor's rights under the guaranty (*e.g.*, the loss of ACA's subrogation rights under the Policies). In addition, the Policies at issue here are clearly and unequivocally limited to insuring the payments due and payable *only* under the Original Insured Bonds, evidenced by unique CUSIP numbers. Thus, to have preserved his rights under the Policies, Plaintiff simply had to take the necessary steps to prevent the cancellation of the Original Insured Bonds or to assign to ACA the right to take such action. Plaintiff's authorized representative (*i.e.*, the Trustee) did just the opposite.

- When the Issuer commenced its Bankruptcy Action, which accelerated the sums due under the Original Insured Bonds, *no one (a) sent a Nonpayment Notice to ACA for said liquidated amount, (b) took any other steps to assign their rights in respect to said liquidated sum to ACA or (c) ever offered ACA the right to control all claims concerning the Original Insured Bonds in the Bankruptcy Action. Instead, the Trustee undertook to represent the interests of all holders of the Original Insured Bonds in the Bankruptcy Action, including Plaintiff, to the exclusion of ACA.*

- When the Issuer proposed a Plan to cancel and mandatorily exchange the Original Insured Bonds with the Replacement Bonds (which had different payment terms and CUSIP numbers), *the Trustee – not ACA – voted in favor of the Issuer's Plan without taking any steps to: (a) protect ACA's valuable subrogation rights under the Policies; (b) seek a declaration that ACA would be liable to make payments allegedly due under (i) the Original Insured Bonds that were scheduled to be cancelled or (ii) the Replacement Bonds; or (c) assert any objection to the Issuer's Plan on the grounds that it did not preserve Plaintiff's right to recover from ACA under the Policies despite the cancellation of the Original Insured Bonds.*

---

[1] This reply memorandum of law adopts the capitalized terms as defined in ACA's Reply Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Complaint and to Stay all Class Certification Proceedings ("ACA Br.").

In short, Plaintiff's own agent, the Trustee, voluntarily took affirmative steps in the Bankruptcy Action that facilitated the cancellation of the Original Insured Bonds and effectively nullified ACA's valuable subrogation rights under the Policies to pursue the Issuer for any and all sums the Issuer fails to pay on the Original Insured Bonds.

Realizing that he has lost the protection afforded under the Policies as a result of his own agent's action, Plaintiff seeks to shift the blame to ACA, unfairly accusing it of playing "Wall Street games" and taking "positions that reek of bad faith." However, given his representation in the Bankruptcy Action by a sophisticated Trustee, who was presumably represented by equally sophisticated counsel, Plaintiff cannot claim that ACA took any unfair advantage of him.

Plaintiff's opposition papers rely on two key contentions – one that is patently untrue and a second that is legally irrelevant. First, Plaintiff falsely claims that ACA was his agent in the Bankruptcy Action and that ACA had an express duty under §§ 4.03(b)(iii) and 4.07 of the Custody Agreement to take whatever steps were necessary in that action to ensure Plaintiff's continuing right to sue ACA for the full amount of the Original Insured Bonds irrespective of their cancellation. However, ACA has submitted irrefutable proof that Plaintiff was represented by the Trustee – not ACA – in the Bankruptcy Action, and, in any event, Plaintiff never alleges compliance with the contractual pre-requisites to appoint ACA as his agent.

Second, Plaintiff claims that ACA's motion to dismiss should be denied because Plaintiff's "security" (codeword for the ACA Policy he purchased) was not cancelled and exchanged for any Replacement Bonds. True, but utterly irrelevant. ACA's payment obligations under the Policies are tied exclusively to amounts owed by the Issuer under the Original Insured Bonds, and it is the cancellation of those bonds – not ACA's Policies – which precludes any further claim by Plaintiff under the Policies.

2

In short, as discussed in more detail herein, none of Plaintiff's arguments support the denial of ACA's motion to dismiss, which motion should be granted in its entirety.

**I. THERE IS NO BASIS TO CONVERT ACA'S MOTION TO DISMISS INTO A MOTION FOR SUMMARY JUDGMENT**

Plaintiff does not dispute that, on a motion to dismiss, the Court may consider documents that are (a) matters of public record, (b) incorporated by reference in the Complaint or (c) central to Plaintiff's claims. (*See* ACA Br. n.2.) Rather, Plaintiff claims that ACA's motion to dismiss must be converted into a summary judgment motion because two documents cited by ACA allegedly do not meet the above criteria.

The first document is the Lowe Declaration – an attorney affirmation containing no substantive allegations but simply attaching documents, all but one of which Plaintiff concedes are properly considered on a motion to dismiss. Plaintiff cites no authority for the frivolous position that such an attorney affirmation requires the Court to convert ACA's motion into one for summary judgment, nor is ACA aware of any such authority.

The second document is a July 11, 2011 letter from Plaintiff to ACA. (Lowe Dec. Ex. 10.) This letter, *inter alia*, confirms ACA's contention that the Original Insured Bonds – as opposed to ACA's Policy – have been cancelled and mandatorily exchanged for the Replacement Bonds. As such, it is central to Plaintiff's claims. The Court may nonetheless disregard this letter and still grant ACA's motion to dismiss as the pertinent facts therein are equally established in other documents Plaintiff concedes the Court may refer to in resolving ACA's motion to dismiss. (*Id.*, Exs. 2-3, 6, 8-9.)

Given the foregoing, Plaintiff's demand that ACA's motion to dismiss be converted into one for summary judgment should be denied.[2]

## II. NEW YORK'S GUARANTY LAW REQUIRES THE DISMISSAL OF PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW

As a separate and independent basis for the dismissal of Plaintiff's breach of contract claim, ACA cited controlling and uncontradicted authority for the proposition that a guarantor is relieved of liability where, as here, there is, without the guarantor's consent, an alteration of the underlying insured obligation or the rights of the guarantor. (*See* ACA Br. Point I(B)(2).)

Plaintiff does not dispute (a) this well-settled legal principle; (b) that the Original Insured Bond – as opposed to the Policy – was altered through its cancellation in the Bankruptcy Action; or (c) that ACA's rights under the Policies were altered. Instead, Plaintiff claims that its breach of contract claim should not be dismissed because: (i) 11 U.S.C. §524(e) precludes a guarantor from being relieved of liability on a guarantee when the alteration to the underlying insured obligation occurs in a bankruptcy proceeding; and (ii) ACA should, in any event, be deemed to have consented to the cancellation of the Original Insured Bonds and the alteration of its subrogation rights under the Policies.

Plaintiff initially points to 11 U.S.C. §524(e) as providing a statutory exemption in bankruptcy cases to the general rule that the alteration of an insured obligation without the guarantor's consent relieves the guarantor of liability under the guarantee. ***Plaintiff fails to mention, however, that §524(e) is, by statute, not applicable in Chapter 9 bankruptcy proceedings, like the Issuer's Bankruptcy Action.*** *See* 11 U.S.C. §901(a). Hence, the default rule cited by ACA in its moving papers applies instead.

---

[2] Even if the Court were to convert ACA's motion to dismiss into a motion for summary judgment, all of Plaintiff's claims are deficient as a matter of law and his Complaint should still be dismissed. (*See* ACA Br. n.9.)

4

Plaintiff next claims that ACA consented to the cancellation of the Original Insured Bonds and the loss of its valuable subrogation rights under the Policy because (a) the Policy allows Plaintiff to sue ACA directly without including the Custodian or other bondholders; and (b) ACA failed to affirmatively protect Plaintiff's rights vis-à-vis ACA in the Bankruptcy Action. Plaintiff is wrong on both points.

First, the provision allowing Plaintiff to sue ACA directly without including the Custodian or other bondholders does not on its face purport to constitute advance consent by ACA to the cancellation of the Original Insured Bonds or the alteration of ACA's rights under the Policies, and Plaintiff cites no authority supporting such a proposition.

To obtain a guarantor's advance consent to any alteration of the insured obligation, New York Courts require clear language to that effect. *See, e.g.*, *Republic Nat'l Bank of N.Y. v. Haddad*, 504 N.Y.S.2d 669, 670-71 (N.Y. App. Div. 1986) (guarantor gave advance consent to new note consolidating and extending due date of guaranteed debt where the guarantees expressly provided that the obligations may "in whole or in part, be renewed, extended, modified, accelerated, compromised, settled or released;" that "[t]his guarantee shall be a continuing, absolute and unconditional guarantee of payment...."; and that "[t]he execution and delivery hereafter to Bank by Guarantor of a new instrument of guarantee shall not terminate, supersede or cancel this instrument, unless expressly provided therein....").[3] ***No such language***

---

[3] *See also White Rose Food v. Saleh*, 758 N.Y.S.2d 253, 254 (N.Y. 2003) (guarantor gave advance consent to extension of payment terms under a note where the agreement expressly provided that the guarantors "agree and consent that the time for payment may be extended or said Note renewed from time to time and for any term or terms by agreement between the holder and the Maker without notice"); *Israel v. Chabra*, 601 F.3d 57, 59, 65 (2d Cir. 2010) (guarantor gave advance consent to changes in payment terms of guaranteed debt through provision stating that the "liability of the Guarantor under this Guaranty shall be absolute and unconditional irrespective of ... any change in the time, manner or place of payment of, or in any other term of, all or any of such provisions or the Obligations...").

5

*appears in the Policy or Custody Agreement.*[4]

Second, ACA's alleged failure to affirmatively oppose the cancellation of the Original Insured Bonds in the Bankruptcy Action does not constitute its implied consent to the cancellation of such bonds or the impairment of ACA's rights under the Policy. Plaintiff's argument that ACA did, in fact, consent to the foregoing rests on the fundamentally flawed premise that "ACA became agent for the bondholders and was allowed to 'control all matters' in the bankruptcy proceeding." (Pl. Br. at 21.) As a factual matter, ACA was never appointed Plaintiff's agent in the Bankruptcy Action, and ACA never had any authority or ability to control Plaintiff's claims in the Bankruptcy Action. Indeed, the very contractual provisions Plaintiff cites for this proposition, *i.e.*, §§ 4.03(b)(iii) and 4.07 of the Custody Agreement, contradict his own argument. Sections 4.03(b)(iii) and 4.07 provide, in pertinent part, that:

> **4.03(b)(iii):** By acceptance of a Certificate of Bond Insurance Position, *each Holder or Owner, as the case may be, designates, appoints, authorizes and directs the Custodian to act as his attorney-in-fact as follows*: … (iii) if and so long as any deficiency exists with respect to the related Insured Obligations, *to appoint, without recourse, the Insurer as agent for the Holder or Owner, as the case may be, and the Custodian in any legal proceeding* with respect to the related Insured Obligations …, *such appointment to be made contemporaneously with the delivery of the notice to the Insurer demanding payment under the Policy* … (Lowe Dec. Ex. 3 (emphasis added).)
>
> **4.07:** The Custodian shall promptly notify the Insurer of any notice it receives of (i) the commencement of any Insolvency Proceeding by an Issuer . . . *Following and to the extent of payment by the Insured under the related Policy, the Insurer <u>may</u> at any time during the continuation of an Insolvency Proceeding control all matters relating to such Insolvency Proceeding* . . . (Lowe Dec. Ex. 3 (emphasis added).)

---

[4] Plaintiff's citation to *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31 (2d Cir. 1999) is unavailing and, in fact, undermines Plaintiff's argument. In *Compagnie*, the Second Circuit held that a guarantor was not discharged by virtue of the debtor's release where the guarantee provided that:"[t]he Guarantors hereby agree that their obligations hereunder shall be unconditional and irrevocable, irrespective of the validity, legality or enforceability of the Loan Agreement, the absence of any action to enforce the [sic] same, the recovery of any judgment against the Borrower, ... or any other circumstances which might otherwise constitute a legal or equitable discharge [or] defense [of] a guarantor...." *Id.* at 36. Here, neither the Policy nor the Custody Agreement contains any such language.

6

Significantly, Plaintiff nowhere alleges that, in compliance with these provisions:

- the Custodian appointed ACA as agent for Plaintiff or any other bondholders in the Bankruptcy Action. Indeed, the Trustee – *not ACA* – acted as the exclusive agent for those bondholders. (*See* Lowe Dec. Exs. 2 (Ex. D) and 4.);

- at any time prior to or during the Bankruptcy Action, the Custodian, Plaintiff or anyone else ever delivered to ACA a notice of non-payment under the Policies for the liquidated amounts due under the Original Insured Bonds or for the amounts claimed by Plaintiff in this litigation;[5] or

- ACA actually paid the liquidated amounts due under the Policies and/or the amounts claimed by Plaintiff in this litigation.

Absent compliance with each of these provisions, *ACA had no contractual right – much less any duty – to control Plaintiff's claims in the Bankruptcy Action to preserve Plaintiff's interests by taking steps to prohibit the cancellation of the Original Insured Bonds*. Thus, as a matter of law, ACA was never appointed as Plaintiff's agent under §§ 4.03(b)(iii), 4.07 or any other provision of the Custody Agreement.

Notwithstanding the foregoing, Plaintiff still contends that ACA is somehow at fault for not affirmatively taking steps in the Bankruptcy Action to ensure ACA's continuing liability under the Policies despite the fact that: (a) the bondholders were represented by the Trustee – not ACA – in the Bankruptcy Action; and (b) nothing precluded Plaintiff or the Trustee from taking such action. Plaintiff cites no authority for the proposition that ACA is somehow responsible for making sure that the bondholders (or their representative) do not take steps that would eliminate

---

[5] Plaintiff identifies three non-payment notices sent to ACA during the Bankruptcy Action, in July and September 2010 and January 2011. (*See* Pl. Br. at 7.) Plaintiff does not, however, allege that these notices of non-payment covered the payments Plaintiff is seeking from ACA in this litigation, *i.e.*, all payments allegedly due on the Original Insured Bonds that became due and payable on or after July 2011. Despite the fact that Plaintiff's agent in the Bankruptcy Action (*i.e.*, the Trustee) filed a proof of claim for the entire accelerated amounts that would ultimately come due on the Original Insured Bonds, inclusive of the sums sought in this litigation, no such demand for non-payment was ever made to ACA. (ACA Br. at 7, n.7.) Thus, Plaintiff's reference to the above payments is a complete red herring that should be ignored. In any event, it is not proper to consider such evidence on a motion to dismiss as it is not referenced in the Complaint and is not relevant to Plaintiff's claims.

7

ACA's liability under the Policy.[6] ACA is not Plaintiff's lawyer, guardian or *de facto* agent charged with the responsibility of watching over Plaintiff's shoulder and educating him about the potential consequences of his actions. To hold otherwise would turn the law of contracts on its head and charge all insurers with fiduciary duties towards their insureds, including timely advising such insureds on the steps necessary to perfect their claims under the insurance policies. *See Blitman Constr. Corp. v. Ins. Co. of N. Am.*, 498 N.Y.S.2d 349, 351 (N.Y. 1985) (insurer not obligated to alert insured to policy provisions affecting his or her rights); *Compis Servs., Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 708 N.Y.S.2d 770, 772 (N.Y. App. Div. 2000) (same); *May v. Aetna Life & Cas. Co.*, 614 N.Y.S.2d 955, 955 (N.Y. App. Div. 1994) (same).

In short, ACA's consent to the cancellation of the Original Insured Bonds cannot, as a matter of law, be derived from its failure to act in the Bankruptcy Action when it had no contractual or other obligation to do so.

---

[6] Plaintiff's reliance on *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34 (2d Cir. 2004), is misplaced. In *Braspetro*, the sureties issued performance bonds for the construction of two projects in Brazil. When the contractor ran into financial difficulties, the owner and contractor agreed to successive contract amendments providing for advance payments directly to the contractor to address its financial condition. The sureties in *Braspetro* were deemed to have consented to the contract amendments because: (a) the sureties never advised the contractor or owner that the advance payments or contract amendments (which did not adversely effect the sureties) relieved the sureties of their obligations under the performance bonds; (b) when directly asked by the owner about the continued validity of the performance bonds, ***the sureties refused to state that the performance bonds were no longer valid or that the sureties were relieved of their obligations thereunder***; and (c) the sureties advised the owner that, if it declared the contractor to be in default, the sureties would have to investigate any claim that would be made against them, thereby further suggesting the sureties believed they were still potentially liable under the performance bonds. *Id.* at 43-47 and 61-62. ***In short, after learning of the contract amendments and being forthrightly asked about the sureties' continuing liability under the performance bonds, the sureties were obligated to affirmatively advise the owner of their position that they were no longer liable under the performance bonds, failing which the Court held that they had impliedly consented to the contract amendments.*** Here, in stark contrast, promptly after the cancellation of the Original Insured Bonds, ACA advised Plaintiff of its position that it had no further liability under the Policies. (Lowe Dec. Ex. 3 (July 7, 2011 letter).) Thus, the facts and holding in *Braspetro* are inapplicable and do not support Plaintiff's contention that ACA consented to the cancellation of the Original Insured Bonds. Plaintiff's other cases are equally inapplicable. *See, e.g.*, *United States v. McMullen*, 222 U.S. 460 (1912) (where contract expressly allowed government to extend deadlines due to unforeseen circumstances, the fact that deadlines were so extended because of such circumstances did not discharge the surety); *Assets Realization Co. v. Roth*, 226 N.Y. 370 (N.Y. 1919) (liquidation of creditor did not relieve indemnitor of its obligation to the creditor's receiver); *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*, 646 F.2d 1064 (5th Cir. 1981) (addressing issue of fraudulent inducement of surety to enter into suretyship agreement); *Mohasco Indus., Inc. v. Giffen Indus., Inc.*, 335 F. Supp. 493 (S.D.N.Y. 1971) (same).

8

### III. THE POLICIES' PLAIN LAGUAGE REQUIRES THE DISMISSAL OF PLAINTIFF'S BREACH OF CONTRACT CLAIM AS A MATTER OF LAW

In its moving papers, ACA explained that it did not breach the clear and unequivocal terms of its Policies by refusing to pay the amounts claimed by Plaintiff because:

- ACA's obligation under the Policies is expressly limited to paying the shortfall in the amount the Issuer is obligated to pay on the Original Insured Bonds. When the Original Insured Bonds were cancelled, the Issuer's payment obligations ceased, and ACA likewise owes nothing further under the Policies.

- In addition, ACA is only required to make payments under the Policies for the benefit of the Holders/Owners of the Original Insured Bonds. Upon the cancellation and mandatory replacement of the Original Insured Bonds with the Replacement Bonds, there are no longer any Owners/Holders of the Original Insured Bonds. Thus, there no longer exist any Owners/Holders entitled to receive anything under the Policies.

Plaintiff does not refute ACA's interpretation of the Policies, but instead contends that ACA's motion should be dismissed because: (a) Plaintiff's "security" has not been cancelled; (b) the Policy contains no exclusionary language allowing ACA to deny coverage; and (c) the Policy itself is noncancellable. As explained below, none of these arguments have any merit.

First, Plaintiff's claim that his "security" was not cancelled is a red herring because Plaintiff is conflating the Original Insured Bond (***CUSIP No. 20786LAA9***), which was cancelled (*see*, *e.g.*, ACA Br. at pp. 6-9), with the ACA Policy (***enhanced CUSIP No. 20786LCS8***), which was not. (*See* Pl. Br. at 12-13.) ACA does not dispute that the Policy was not cancelled, but that is irrelevant.

Under the plain language of the Policy, ACA's actual payment obligation is ***only*** triggered upon a "Nonpayment," which is defined as "the failure of the Issuer to have provided sufficient funds to the Custodian for payment in full of all principal and interest on any Due Date of Payment of an Obligation." (Cplt. Ex. B.) "Due Date of Payment," in turn, is defined as "the stated maturity date thereof…" (*Id.*) Only the Original Insured Bonds have maturity dates for the payment of interest and principal – not the Policy. In other words, under the Policy, ACA

9

must pay the difference between the amount due by the Issuer under the Original Insured Bonds less the amount actually paid by the Issuer. Here, the Original Insured Bonds have been cancelled, thereby eliminating any further obligation by the Issuer thereunder. Since the Issuer no longer owes anything under the Original Insured Bonds after their cancellation, there is no shortfall payable by ACA under the Policies.

Second, Plaintiff argues that ACA is still liable to pay certain sums under the Policy because the Policy contains no exclusion for payments as a result of the Issuer's bankruptcy or the cancellation of the Original Insured Bonds. Plaintiff misapprehends the issue. ACA is not denying coverage based on any exclusion. Rather, Plaintiff has not and cannot carry his burden to establish that his claim falls within the scope of the Policy's coverage in the first place.[7] To establish coverage, Plaintiff must establish the existence of a "Nonpayment" of "Amounts Due for Payment" on the "Due Date of Payment" of an "Obligation." As discussed above, Plaintiff cannot meet this burden because the Original Insured Bonds have been cancelled, and thus there is no "Amount Due for Payment" under the Policies.[8]

Third, Plaintiff contends that ACA's motion must be denied because the Policy itself has a non-cancellation clause. Again, Plaintiff's argument misses the mark. ACA has not and is not arguing that the Policy was cancelled – only that the underlying Original Insured Bond was

---

[7] It is well-established that *it is the insured's burden to establish coverage* and the insurer's burden to establish the applicability of an exclusion. *Great Am. Restoration Servs. v. Scottsdale Ins. Co.*, 911 N.Y.S.2d 142, 145 (N.Y. App. Div. 2010); *Rhodes v. Liberty Mut. Ins. Co.*, 892 N.Y.S.2d 403, 405 (N.Y. App. Div. 2009); *Outlook Realty, LLC v. U.S. Underwriters Ins. Co.*, 886 N.Y.S.2d 630, 631 (N.Y. App. Div. 2009).

[8] ACA's moving brief identified proposed language that would have broadened the scope of coverage under the Policy to ensure not just the payment of interest and principal under the Original Insured Bonds, but instead the payment of specified amounts irrespective of whether such amounts were otherwise due under the Original Insured Bonds. (ACA Br. at 14-15.) Plaintiff's contention that this is an after-the-fact attempt to create a non-existent exclusion under the Policy is baseless. Plaintiff's claim here is analogous to a situation where a party buys fire insurance for his home and then makes a claim for flood damage. The coverage provided under the "fire insurance" policy simply does not extend to flood damage and, if the insured wanted to insure against the risk of any type of damage to his home, then he should have negotiated for broader coverage.

cancelled. To the extent Plaintiff claims that ACA must pay out on the Policy irrespective of whether the Original Insured Bonds were cancelled and replaced, he is improperly seeking to transform the "non-cancellable" provision in the Policy into an "incontestable" provision. The case of *Dudgeon v. Mut. Ben. Health & Accident Ass'n*, 70 F.2d 49 (4th Cir. 1934), is particularly instructive on this point. In *Dudgeon*, an insurance company successfully defended a claim on the ground that the insured had procured the policy by means of false representations. The plaintiff, in turn, argued that even assuming the truth of the insurance company's allegations regarding the misrepresentations, "a provision forbidding cancellation of the policy during any period for which premiums had been paid operated to render it incontestable on such ground." *Id.* at 50. The court flatly rejected the plaintiff's contention, holding that: "The plaintiff has merely confused the right to cancel with the right to contest. ***The right to cancel is the right to terminate the policy. The right to contest is the right to deny liability under it.***" *Id.* at 51 (emphasis added). *See also Couch on Insurance*, § 240:22 (3d. ed. 2010) (A policy provision "against cancellation during any period for which a premium has been paid is not the equivalent of an incontestable clause, and the terms 'noncancellable' and 'non-contestable' are not synonymous, since the former does not cut off defenses arising from" the insured's misconduct.) Here, consistent with *Dudgeon*, ACA is not seeking to cancel the Policy but is rather denying liability thereunder as a result of Plaintiff's failure to establish the basis of any coverage for his asserted claim due to the cancellation of the Original Insured Bonds.

### IV.  PLAINTIFF'S ANTICIPATORY REPUDIATION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiff's anticipatory repudiation claim should be dismissed as it is dependent upon the success of Plaintiff's legally deficient breach of contract claim. In addition, it is well-established in New York that the doctrine of anticipatory repudiation is limited to bilateral contracts, and is

11

inapplicable to any contract (like the Policies at issue here) that is solely for the payment of money at a future time. *See, e.g.*, *Kelly v. Sec. Mut. Life Ins. Co.*, 186 N.Y. 16, 20 (1906); *Sholom & Zuckerbrot Queens Leasing Corp. v. Forate Realty Corp.*, 286 N.Y.S.2d 364, 366 (N.Y. App. Div. 1967); *Medaris v. Lionel Corp.*, 268 N.Y.S.2d 936, 937 (N.Y. App. Div. 1966); *Wallace Clark & Co. v. Acheson Indus., Inc.*, 422 F. Supp. 20, 23, n.6 (S.D.N.Y. 1976).

V. **PLAINTIFF'S NEGLIGENCE AND GROSS NEGLIGENCE CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW**

For the first time, Plaintiff maintains that he is entitled to assert claims for negligence and gross negligence because, upon the commencement of the Bankruptcy Action, ACA purportedly became the agent of all Owners/Holders of the Original Insured Bonds in the Bankruptcy Action and had a duty to protect their interests in that Action. These claims fail for two reasons.

First, ACA was never appointed as Plaintiff's agent in the Bankruptcy Action and never had any authority or ability to control his claims. (*See* Discussion in Point II, above.)

Second, even if ACA had been required to take control the Bankruptcy Action pursuant to §§ 4.03(b)(iii) and 4.07 of the Custody Agreement, ACA's purported failure to do so would simply constitute an express breach of such agreement – not a breach of duty independent of such agreement. As Plaintiff's own cases recognize, "if the trust or special confidence in a person has 'solely to do with his carrying out his obligations under the contract' between the parties, no fiduciary duty exists." *Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, *15 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. Appx. 191 (2d Cir. 2004). In other words, "[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie." *Id.* at *16 (*citing N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.3d 283, 288 (N.Y. 1995)). Thus, a breach of ACA's alleged failure to carry out its duties under §§ 4.03(b)(iii) or 4.07 of the Custody Agreement cannot serve as the basis of any tort claim, and the cases cited by Plaintiff

12

are not to the contrary.

## VI. PLAINTIFF'S BREACH OF THE IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

In its Complaint, Plaintiff alleged that ACA "breached the implied covenant of good faith and fair dealing when it inexcusably refused to pay the amounts due for payment under the Polic(ies) and when it clearly stated that it had no further liability or obligation under the Polic(ies)." (Cplt. ¶ 31.) This claim is clearly duplicative of Plaintiff's breach of contract claim for ACA's alleged breach of the express terms of the Policies based on ACA's refusal to pay the sums Plaintiff claims are now due (*compare* Cplt. ¶¶ 20-27 *with* ¶ 31), and is therefore legally insufficient as matter of law. (*See* ACA Br. at Point I(D).)

In its opposition papers, Plaintiff now disavows the allegations in its Complaint and asserts for the first time that ACA allegedly breached its duty of good faith by supposedly having "artfully dodged the issue of the validity of the bonds, disavowed the duty to conduct an objective and reasonable investigation, and prepared instead to renege on its obligations." (Pl. Br. at 22-23.)[9] The purported factual predicate for this newly concocted claim is that ACA allegedly sat idly by during the Bankruptcy Action when it was under a purported duty to act as Plaintiff's agent and preserve Plaintiff's right to sue ACA. (*Id.* at 22-24.) This claim fails for the same reason that Plaintiff's tort claims fail: (a) ACA had no right – much less any contractual duty – to act as Plaintiff's agent and take control of the Bankruptcy Action; and (b) in any event, the facts alleged by Plaintiff – even if sustainable (***which they are not***) only set forth a claim for a breach of the express terms of §§ 4.03(b)(iii) and 4.07 of the Custody Agreement – not a breach of any implied duty. (*See* Point V, *supra*.) Accordingly, Plaintiff's newly minted

---

[9] In a footnote, Plaintiff acknowledges that these facts were never alleged in its Complaint, but it should nonetheless be allowed to amend its Complaint to assert these allegations. (*Id.* at 23, n.7.)

13

breach of the implied duty of good faith also fails as a matter of law.

### VII. ALL PROCEEDINGS RELATING TO CLASS CERTIFICATION, INCLUDING DISCOVERY, SHOULD BE STAYED

Plaintiff claims that the Supreme Court's ruling in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) prohibits this Court from staying class certification proceedings pending ACA's motion to dismiss. Not true. In *Eisen*, the Supreme Court merely held that establishing a likelihood of success on the merits is not a pre-requisite to maintaining a class action. *Id.* at 177. However, *Eisen* does not prohibit a Court from exercising its discretion, in the interests of judicial economy, to stay class certification proceedings pending resolution of a defendant's motion to dismiss. (*See* ACA Br. Point II.).

### CONCLUSION

For the aforementioned reasons, ACA respectfully requests that the Court enter an order: (a) dismissing all of the claims in Plaintiff's Complaint; (b) staying all proceedings, including discovery, relating to class-certification pending the Court's ruling on ACA's motion to dismiss; and (c) granting ACA such other and further relief as this Court deems just and proper.

Dated: Jackson, Mississippi
October 11, 2011

           BRADLEY ARANT BOULT CUMMINGS LLP

           By: /s/ Mason E. Lowe
               W. Wayne Drinkwater (MBN 6193)
               Mason E. Lowe (MBN 102393)

           One Jackson Place
           188 E. Capitol Street, Suite 400
           Jackson, Mississippi 39201
           Telephone: (601) 948-8000
           Facsimile: (601) 948-3000

           *Attorneys for Defendant ACA Financial Guaranty Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Jesse Mitchell, III Esq.
>William M. Quin, II, Esq.
>O. Stephen Montagnet, III, Esq.
>MCCRANEY MONTAGNET & QUIN, PLLC
>602 Steed Road, Suite 200
>Ridgeland, Mississippi 39157
>**Attorney for Plaintiff**

This the 11th day of October, 2011.

>/s/ Mason E. Lowe
>MASON E. LOWE