
W. Wayne Drinkwater (MBN 6193)
Mason E. Lowe (MBN 102393)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000

*Attorneys for Defendant ACA Financial Guaranty Corporation*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

----------------------------------------------------------------- x
:
JAMES E. DAVIS AND FRANCOIS KOHLMAN, :
INDIVIDUALLY AND ON BEHALF OF ALL :
OTHERS SIMILARLY SITUATED, :
: Case No. 3:11-CV-093-MPM-SAA
:
Plaintiffs, :
:
vs. :
: **ORAL ARGUMENT REQUESTED**
:
ACA FINANCIAL GUARANTY CORPORATION, :
and JOHN DOES One through Ten, :
:
Defendants. :
:
:
:
:
----------------------------------------------------------------- x

**DEFENDANT ACA FINANCIAL GUARANTY CORPORATION'S
REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMEDED COMPLAINT
AND TO STAY ALL CLASS CERTIFICATION PROCEEDINGS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

I.    NEW YORK'S GUARANTY LAW REQUIRES THE DISMISSAL OF
PLAINTIFFS' BREACH OF CONTRACT CLAIM AS A MATTER OF LAW ............. 2

II.   THE POLICY'S PLAIN LANGUAGE REQUIRES THE DISMISSAL OF
PLAINTIFFS' BREACH OF CONTRACT CLAIM AS A MATTER OF LAW ............. 6

III.  PLAINTIFFS' ANTICIPATORY REPUDIATION
CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW....................................... 8

IV.  PLAINTIFFS' BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING AND
TORT CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW ........................ 9

V.   ALL PROCEEDINGS RELATING TO CLASS CERTIFICATION,
INCLUDING DISCOVERY, SHOULD BE STAYED .................................................... 10

CONCLUSION........................................................................................................................ 11

# **TABLE OF AUTHORITIES**

**CASES:**

*Assets Realization Co. v. Roth*,
    226 N.Y. 370 (N.Y. 1919) ................................................................................................6

*Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*,
    2003 WL 23018888 (S.D.N.Y. Dec. 22, 2003),
    *aff'd*, 110 F. Appx. 191 (2d Cir. 2004) ..............................................................................10

*Compagnie Financiere de CIC et de L'Union Europeenne v.*
    *Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    188 F.3d 31 (2d Cir. 1999) ................................................................................................4

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ........................................................................................................10

*In re Liquidation of Union Indem. Ins. Co.*,
    749 N.Y.S.2d 250 (N.Y. App. Div. 2002) .........................................................................3

*Mackler v. Burke*,
    767 N.Y.S.2d 898 (N.Y. App. Div. 2003) .........................................................................3

*Mohasco Indus., Inc. v. Giffen Indus., Inc.*,
    335 F. Supp. 493 (S.D.N.Y. 1971) ....................................................................................6

*St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*,
    646 F.2d 1064 (5th Cir. 1981) ............................................................................................6

*United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*,
    369 F.3d 34 (2d Cir. 2004) ................................................................................................5

*United States v. McMullen*,
    222 U.S. 460 (1912) ..........................................................................................................6

*Wurm v. Commercial Ins. Co. of Newark, New Jersey*,
    766 N.Y.S.2d 8 (NY App. Div. 2003) ...............................................................................9

**STATUTES:**

11 U.S.C. §524(e) ........................................................................................................................2, 3

11 U.S.C. §901(a) ............................................................................................................................3

N.Y. Ins. Law §6905(a) ...................................................................................................................9

ACA[1] respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiffs' Amended Complaint and stay all class certification proceedings, pending the Court's resolution of ACA's instant motion to dismiss.

## PRELIMINARY STATEMENT

New York law clearly provides that a guarantor (like ACA) is relieved of its liability where there is any alteration to either the insured obligation (*e.g.*, the cancellation of the Original Insured Bonds) or the guarantor's rights under the guaranty (*e.g.*, the loss of ACA's subrogation rights under the Policy). In addition, the Policy at issue here is clearly and unequivocally limited to insuring the payments due and payable *only* under the Original Insured Bonds, evidenced by unique CUSIP numbers.

The facts of this case are simple and straightforward. The Issuer filed a Chapter 9 Bankruptcy Action, in which it proposed a Plan to: cancel the Original Insured Bonds; release itself of any liability under those bonds; and replace those bonds with the Replacement Bonds having different CUSIPs, payment terms and maturity dates. In light of the foregoing, if Plaintiffs wanted to preserve their rights to collect from ACA under the Policy the full amount due under the Original Insured Bonds, they were obligated to either: (a) obtain ACA's consent to the Issuer's proposed Plan; (b) prevent the implementation of the Issuer's proposed Plan; or (c) assign to ACA the right to take the steps necessary to address the alteration of the Original Insured Bonds and ACA's corresponding subrogation rights under the Policy. Plaintiffs did none of the above. Instead, Plaintiffs' Trustee affirmatively voted in favor of the Issuer's Plan, which cancelled the Original Insured Bonds and effectively nullified ACA's valuable subrogation rights under the Policy to pursue the Issuer for any sums the Issuer failed to pay under the Original

---

[1] This reply memorandum adopts the capitalized terms as defined in ACA's Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended Complaint and to Stay all Class Certification Proceedings ("ACA Br.").

Insured Bonds, thereby relieving ACA of any further payment obligation under the Policy.

Plaintiffs now seek to shift the blame to ACA for not taking steps to preserve Plaintiffs' rights to recover from ACA under the Policy, unfairly accusing ACA of playing "Wall Street games." The undeniable fact is that the Policy and Custody Agreement provided a clear and simple mechanism for appointing ACA as Plaintiffs' agent in the Bankruptcy Action, but no one took the requisite steps to appoint ACA as Plaintiffs' agent – which role was instead fulfilled by the Trustee. ACA was therefore entitled to rely upon the plain language of the Policy, long-standing New York guaranty law and the inapplicability of 11 U.S.C. §524(e) (which precludes the discharge of a guarantor in non-Chapter 9 bankruptcy proceedings) in concluding that it would be relieved of its liability of any further payment obligations under the Policy should the Issuer's Plan be approved without ACA's consent. ACA had no duty to educate Plaintiffs or their Trustee about the consequences of their failure to obtain ACA's consent or to expend its own resources in an effort to increase or continue its liability under the Policy.

As discussed in more detail herein, none of Plaintiffs' imaginative arguments – which lack any basis in fact or law – support the denial of ACA's motion to dismiss, which motion should be granted in its entirety.

I. **NEW YORK'S GUARANTY LAW REQUIRES THE DISMISSAL OF PLAINTIFFS' BREACH OF CONTRACT CLAIM AS A MATTER OF LAW**

ACA cited controlling authority for the well-settled proposition that a guarantor is relieved of liability where, as here, there is, without the guarantor's consent, an alteration of the underlying insured obligation or the rights of the guarantor. (*See* ACA Br. Point II(B).)[2]

---

[2] Plaintiffs' misleading contention that their "securities" were not "replaced, exchanged or cancelled" is simply another reference to their claim that the Certificates of Bond Insurance ("CBI") – as opposed to the Original Insured Bonds – were not cancelled as a result of the Issuer's Bankruptcy Action. This argument fails for the reasons discussed in Point II, below.

2

Plaintiffs seek to distinguish that authority on the grounds that the cases cited by ACA (a) are inapplicable to bond insurance; (b) involve modifications without the guarantor's knowledge; and (c) ignore the "fresh start" policy in bankruptcy (*i.e.*, as codified in 11 U.S.C. §524(e)). Not only do Plaintiffs fail to cite any authority purporting to create or recognize such artificial distinctions, but Plaintiffs' manufactured distinctions have either been rejected by applicable legal authority or are inapplicable to the facts at issue in this case.

First, the above-cited principle of guaranty law has been applied in cases involving bond insurance. *See, e.g.*, *In re Liquidation of Union Indem. Ins. Co.,* 749 N.Y.S.2d 250, 251 (N.Y. App. Div. 2002) (holding that insurer's obligation on performance and payment bonds could not be altered without its consent). Second, New York courts have similarly applied this principle to relieve a guarantor of liability where the guarantor is aware of – but does not consent to – the proposed modification of the insured obligation and/or the modification of the insured's rights and obligations. *See, e.g.*, *Mackler v. Burke*, 767 N.Y.S.2d 898, 899 (N.Y. App. Div. 2003).

Third, while 11 U.S.C. §524(e) provides a statutory exemption in bankruptcy to the general rule that the alternation of an insured obligation without the guarantor's consent relieves the guarantor of liability under the guarantee, ***Plaintiffs pointedly ignore that Congress specifically provided by statute that §524(e) is <u>not</u> applicable in a Chapter 9 bankruptcy proceeding like the Issuer's Bankruptcy Action. See 11 U.S.C. §901(a).*** Moreover, Plaintiffs' characterization of the cancellation of the Original Insured Bonds as an "involuntary" alteration of their bonds ignores the reality of what actually happened. This was not a bankruptcy cram-down plan. ***The cancellation of the Original Insured Bonds resulted from a Plan proposed by the Issuer and voluntarily voted in favor of by the Trustee, Plaintiffs' authorized representative in the Issuer's Bankruptcy Action***. What occurred in the Issuer's Bankruptcy

3

Action is more akin to a voluntary, negotiated settlement by two parties that is subsequently blessed by a court as opposed to something forced upon the Plaintiffs against their will. Unlike Plaintiffs, ACA did not vote in favor of the Issuer's Plan, and thus the cancellation of the Original Insured Bonds was done without ACA's consent. (Lowe Ex. 8.)

Plaintiffs next claim that ACA consented to the cancellation of the Original Insured Bonds and the loss of its valuable subrogation rights under the Policy in the Bankruptcy Action because (a) the Policy allows Plaintiffs to sue ACA directly without including the Custodian or other bondholders; and (b) ACA failed to affirmatively protect Plaintiffs' rights vis-à-vis ACA in the Bankruptcy Action. Plaintiffs are wrong on both counts.

First, the provision allowing Plaintiffs to sue ACA directly without including the Custodian or other bondholders does not on its face purport to constitute advance consent by ACA to the cancellation of the Original Insured Bonds or the alteration of ACA's rights under the Policy, and Plaintiffs cite no authority supporting such a proposition. To obtain a guarantor's advance consent to any alteration of the insured obligation, New York courts require clear language to that effect, and no such language appears in the Policy or the Custody Agreement. (*See* Authority cited in ACA Br. at Point II(C)(3) and footnote 13.)[3]

Second, ACA's failure to affirmatively oppose the cancellation of the Original Insured Bonds in the Bankruptcy Action does not constitute its implied consent to the cancellation of such bonds or the impairment of ACA's rights under the Policy. Plaintiffs' argument that ACA

---

[3] Plaintiffs' citation to *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 188 F.3d 31 (2d Cir. 1999) is unavailing and, in fact, undermines Plaintiffs' argument. In *Compagnie*, the Second Circuit held that a guarantor was not discharged by virtue of the debtor's release where the guarantee provided that:"[t]he Guarantors hereby agree that their obligations hereunder shall be unconditional and irrevocable, irrespective of the validity, legality or enforceability of the Loan Agreement, the absence of any action to enforce the [sic] same, the recovery of any judgment against the Borrower, ... or any other circumstances which might otherwise constitute a legal or equitable discharge [or] defense [of] a guarantor...." *Id.* at 36. Here, neither the Policy nor the Custody Agreement contains any such language.

consented to the foregoing rests on the fundamentally flawed premise that "ACA became agent for the bondholders and was allowed to 'control all matters' in the bankruptcy proceeding." (Pl. Br. at 22.) As explained in great detail in ACA's moving brief – and inexplicably ignored by Plaintiffs in their opposition papers – ACA was never appointed Plaintiffs' agent in the Bankruptcy Action, and ACA never had any authority or ability to control Plaintiffs' claims therein. (ACA Br. Point II(C)(4).) Indeed, the very contractual provision Plaintiffs cite for this proposition, *i.e.*, §4.07 of the Custody Agreement, contradicts their own argument. (*Id.*)[4]

Notwithstanding the foregoing, Plaintiffs still contend that ACA is somehow at fault for not affirmatively taking steps in the Bankruptcy Action to ensure ACA's continuing liability under the Policy despite the fact that: (a) the bondholders were represented by the Trustee – not ACA – in the Bankruptcy Action; and (b) nothing precluded Plaintiffs or the Trustee from taking such action. Plaintiffs, however, cite no authority for the proposition that ACA is somehow responsible for making sure that Plaintiffs (or their Trustee) act or refrain from acting in a manner that would eliminate ACA's liability under the Policy.[5] Indeed, the authority cited by

---

[4] While ACA did file an unliquidated and contingent Proof of Claim in the Bankruptcy Action, Plaintiffs cite no authority for the proposition that this act afforded ACA any rights to control Plaintiffs' liquidated and non-contingent claims relating to amounts due under the Original Insured Bonds in the Bankruptcy Action.

[5] Plaintiffs' reliance on *United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34 (2d Cir. 2004), is misplaced. In *Braspetro*, the sureties issued performance bonds for the construction of two projects in Brazil. When the contractor ran into financial difficulties, the owner and contractor agreed to successive contract amendments providing for advance payments directly to the contractor to address its financial condition. The sureties in *Braspetro* were deemed to have consented to the contract amendments because: (a) the sureties never advised the contractor or owner that the advance payments or contract amendments (which did not adversely effect the sureties) relieved the sureties of their obligations under the performance bonds; (b) when directly asked by the owner about the continued validity of the performance bonds, ***the sureties refused to state that the performance bonds were no longer valid or that the sureties were relieved of their obligations thereunder***; and (c) the sureties advised the owner that, if it declared the contractor to be in default, the sureties would have to investigate any claim that would be made against them, thereby further suggesting the sureties believed they were still potentially liable under the performance bonds. *Id.* at 43-47 and 61-62. ***In short, after learning of the contract amendments and being forthrightly asked about the sureties' continuing liability under the performance bonds, the sureties were obligated to affirmatively advise the owner of their position that they were no longer liable under the performance bonds, failing which the Court held that they had impliedly consented to the contract amendments.*** Here, in stark contrast, promptly after the cancellation of the Original Insured Bonds, ACA advised Plaintiffs of its position that it had no further liability under the Policy. (Lowe Ex. 13.) Thus, the facts and holding in *Braspetro* are

5

ACA – and not refuted or distinguished by Plaintiffs – confirms that ACA had no affirmative obligation to warn Plaintiffs or their Trustee that their actions or inaction would jeopardize their rights under the Policy. (*See* ACA Br. p.21, n.16.) As succinctly noted by ACA:

> …when the Issuer proposed to cancel the Original Insured Bonds and be relieved of liability thereunder in the Bankruptcy Action, ACA had every right to rely upon the plain language of the Policy and well-settled New York guaranty law in concluding that it would be relieved of its liability of any further payment obligations under the Policy if the Issuer's Plan was approved without ACA's consent. To maintain ACA's potential liability under the Policy, it was Plaintiffs' – not ACA's – obligation to affirmatively seek ACA's consent to proposed modifications to the Original Insured Bonds as well as the alteration of ACA's corresponding rights under the Policy. The law is clear that ACA, itself, had no duty to educate Plaintiffs or their Trustee about the consequences of their failure to obtain ACA's consent. (ACA Br. 21.)

## II. THE POLICY'S PLAIN LANGUAGE REQUIRES THE DISMISSAL OF PLAINTIFFS' BREACH OF CONTRACT CLAIM AS A MATTER OF LAW

As a separate, independent basis for dismissal, ACA explained that it did not breach the clear terms of its Policy by refusing to pay the amounts claimed by Plaintiffs because:

- ACA's payment obligation under the Policy is expressly limited to paying the shortfall in the amount the Issuer is obligated – but fails – to pay on the specific Original Insured Bond identified in the Policy. When that bond was cancelled, the Issuer's payment obligation thereunder ceased, and there was no payment shortfall on that bond for ACA to cover under the Policy.

- In addition, ACA is only required to make payments under the Policy for the benefit of the Holders/Owners of the Original Insured Bonds. Upon the cancellation and mandatory replacement of the Original Insured Bonds with the Replacement Bonds, there are no longer any Owners/Holders of the Original Insured Bonds. Thus, there no longer exist any Owners/Holders entitled to receive anything under the Policy.

Plaintiffs contend that ACA's above interpretation fails because ACA has substituted the word "Original Insured Bond" – which does not appear in the Policy – in place of "Obligation,"

---

inapplicable and do not support Plaintiffs' contention that ACA consented to the cancellation of the Original Insured Bonds. Plaintiffs' other cases are equally inapplicable. *See, e.g.*, *United States v. McMullen*, 222 U.S. 460 (1912) (where contract expressly allowed government to extend deadlines due to unforeseen circumstances, the fact that deadlines were so extended because of such circumstances did not discharge the surety); *Assets Realization Co. v. Roth*, 226 N.Y. 370 (N.Y. 1919) (liquidation of creditor did not relieve indemnitor of its obligation to the creditor's receiver); *St. Paul Fire & Marine Ins. Co. v. Commodity Credit Corp.*, 646 F.2d 1064 (5th Cir. 1981) (addressing issue of fraudulent inducement of surety to enter into suretyship agreement); *Mohasco Indus., Inc. v. Giffen Indus., Inc.*, 335 F. Supp. 493 (S.D.N.Y. 1971) (same).

which is the actual defined term in the Policy. Plaintiffs then note that the Policy defines "Obligations" as consisting of two separate CUSIP numbers: (a) CUSIP No. 20786LAA9, representing one of the Original Insured Bonds that was cancelled in the Issuer's Bankruptcy Action (*see* Lowe Ex. 10); and (b) CUSIP No. 20786LCS8, representing the CBI for the Policy, which was not cancelled. In short, Plaintiffs' argument is that because CUSIP No. 20786LSC8 (*i.e.*, the CBI relating to the issuance of the Policy) was not cancelled, ACA is thus obligated to pay the shortfall in the amount the Issuer is obligated – but fails – to pay on the CBI.

Plaintiffs' argument, however, suffers from a fundamental and fatal flaw – ***there can never be any shortfall between the amounts due and paid by the Issuer under the CBI because the <u>Issuer</u> never had any payment obligation thereunder.*** Indeed, under the plain language of the Policy, "Nonpayment" is defined as "the failure of the Issuer to have provided sufficient funds to the Custodian for payment in full of all principal and interest on any Due Date of Payment of an Obligation." (Lowe Ex. 3.) "Due Date of Payment" is then defined as "the stated maturity date thereof…" (*Id.*) ***However, the CBI (CUSIP No. 20786LCS8) -- unlike the Original Insured Bond (CUSIP No. 20786LAA9) -- has no "maturity date."*** Moreover, to state the obvious, the Issuer never had any obligation to pay anything on the CBI (*i.e.*, Policy) as its obligations were limited solely to making debt service payments on the Original Insured Bonds. Thus, Plaintiffs' contrived contractual interpretation argument fails as a matter of law.

Plaintiffs next raise an equally flawed argument contending that ACA's payment obligation under the Policy was purportedly "not dependent on its resolution of substantive coverage questions raised by its receipt of 'notice of non-payment'." (Pl. Br. 14.) In other words, according to Plaintiffs, if the Trustee sent an obviously inflated notice of nonpayment for ***$100 billion dollars***, ACA would be obligated to pay that amount before it could ever object to

7

such a patently improper notice. Indeed, in raising this frivolous argument, Plaintiffs ignore the language in the Policy limiting ACA's payment obligation to the "Amount Due for Payment," which as noted in ACA's moving papers is the shortfall in the amount the Issuer is obligated – but fails – to pay *on the specific Original Insured Bond* identified in the Policy.[6]

Recognizing the meritless nature of their contractual interpretation arguments, Plaintiffs again resort to manufacturing straw men arguments that ACA has not raised. For instance, Plaintiffs argue that their Policy is "non-cancellable". This assertion is irrelevant. As explained previously, ACA is not seeking to cancel the Policy but rather is contesting coverage thereunder. (*See* ACA Br. Point II(C)(1).) Similarly, Plaintiffs devote a section of their brief to arguing that there is no exclusionary language in the Policy that would be applicable here. However, ACA is not denying coverage based on any exclusion, but rather asserting that Plaintiffs have not made a claim falling within the Policy's coverage. (*See* ACA Br. Point II(C)(2).)

In short, as a result of the cancellation of the Original Insured Bonds, ACA has been relieved of any payment obligations under the Policy.

### III. PLAINTIFFS' ANTICIPATORY REPUDIATION CLAIM SHOULD BE DISMISSED AS A MATTER OF LAW

Contrary to Plaintiffs' assertion, ACA does not concede that it anticipatorily repudiated the Policy. ACA's position is that, based on the plain language of the Policy and by operation of law, it has no further payment obligations under the Policy. (*See* Points I-II, above.)

Next, Plaintiffs suggest that this Court should ignore the unequivocal language of the

---

[6] Plaintiffs further point to a July 15, 2011 purchase by ACA of $25,000 worth of the CBIs representing certain of the Policies and ACA's listing of the CBIs on its website as proof that ACA knew that the CBIs were not cancelled and exchanged for the Replacement Bonds. First, ACA does not dispute that the CBIs have not been cancelled, but as explained above, that is legally and factually irrelevant to the Court's decision. In any event, the purchase and the website listing were simply administrative oversights as explained in the February 7, 2012 Reply Affidavit of Carl M. McCarthy, submitted in a pending action in New York State Court brought by the holders of over 84% of the CBIs that supposedly comprise the class that Plaintiffs seek to certify in this case. (*See* Reply Declaration of Mason E. Lowe, dated March 21, 2012, Ex. 14.)

Policy prohibiting acceleration without ACA's consent[7] on the grounds that Plaintiffs are seeking "damages" and not an "acceleration" of sums due under the Policy. This contention is belied by Plaintiffs' own pleading, which seeks on its anticipatory repudiation claim the "present recovery of all payments that would have been made in the future if ACA had honored its obligations" under the Policy. (Cplt. ¶125.) This is the very definition of "acceleration" and precisely what the Policy prohibits.

In response to the well-settled law that anticipatory repudiation is inapplicable to bilateral contracts solely for the payment of money (like the Policy), Plaintiffs cite authority recognizing an extremely narrow exception to this rule where an insurer flatly "disclaim[s] the intention or the duty to shape its conduct in accordance with the provisions of the contract. [For example, r]epudiation occurs when the insurer completely abrogates any 'obligation ever to make monthly disability payments, as when the insurer refused to make further payments under the disability provisions of a life policy no matter what the proof of disability is given the insurer.'" *Wurm v. Commercial Ins. Co. of Newark, New Jersey*, 766 N.Y.S.2d 8, 12 (NY App. Div. 2003). Here, ACA merely asserted a good faith defense to coverage based on the policy language and operation of law. Tellingly, Plaintiffs fail to refute the authority cited by ACA for the proposition that a party's good faith interpretation of a contract clause – even if in error – may give rise to a breach of contract **but not a repudiation**. (*See* ACA Br. p.22.)

## IV. PLAINTIFFS' BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AND TORT CLAIMS SHOULD BE DISMISSED AS A MATTER OF LAW

Plaintiffs maintain that they are entitled to assert their tort and implied covenant claims

---

[7] That language is consistent with New York's Insurance Law, which provides, in pertinent part, that "in the event of a payment default by or insolvency of the obligor, there shall be no acceleration of the payment required to be made under such policy unless such acceleration is at the sole option of the corporation…" N.Y. Ins. Law §6905(a).

because ACA allegedly breached its duty to act as Plaintiffs' agent in the Bankruptcy Action. As discussed previously, ACA was never appointed and did not act as Plaintiffs' agent in the Bankruptcy Action. (*See* Point I, above; ACA Br. Point II(C)(4).) Even if ACA was required to take control of the Bankruptcy Action pursuant to §4.07 of the Custody Agreement (which it expressly was not), ACA's purported failure to do so would simply constitute an express breach of such agreement – not a breach of duty independent of such agreement. As Plaintiffs' own cases recognize, "if the trust or special confidence in a person has 'solely to do with his carrying out his obligations under the contract' between the parties, no fiduciary duty exists." *Banco Espirito Santo De Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, *15 (S.D.N.Y. Dec. 22, 2003), *aff'd*, 110 F. Appx. 191 (2d Cir. 2004). In other words, "[W]here a party is merely seeking to enforce its bargain, a tort claim will not lie." *Id.* at *16 (*citing N.Y. Univ. v. Cont'l Ins. Co.*, 639 N.Y.S.3d 283, 288 (N.Y. 1995)). Thus, a breach of ACA's alleged failure to carry out its duties under the Custody Agreement cannot serve as the basis of any tort claim, and the cases cited by Plaintiffs are not to the contrary.

### V.    ALL PROCEEDINGS RELATING TO CLASS CERTIFICATION, INCLUDING DISCOVERY, SHOULD BE STAYED

Plaintiffs claim that the Supreme Court's ruling in *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) prohibits this Court from staying class certification proceedings pending ACA's motion to dismiss. This is not true. In *Eisen*, the Supreme Court merely held that establishing a likelihood of success on the merits is not a pre-requisite to maintaining a class action. *Id.* at 177. However, *Eisen* does not prohibit a Court from exercising its discretion, in the interests of judicial economy, to stay class certification proceedings pending resolution of a defendant's motion to dismiss. (*See* ACA Br. Point V.)

In any event, class certification in this case would largely be a waste of time. Among

10

other things, Plaintiffs' "class" purports to include all current holders of the ACA Policies securing the debt service on the Original Insured Bonds. (Cplt. ¶106.) However, of the approximately $44.1 million par amount of the Original Insured Bonds covered by the Policies, holders of Policies covering $37.18 million (or over 84%) have initiated a declaratory judgment action in New York State Court raising essentially the same issues raised by Plaintiffs in this action. *See Oppenheimer AMT-Free Municipals, et al. v. ACA Fin. Guaranty Corp.*, Index No. 653290/11 (N.Y. Sup. Ct. N.Y. Co.) Moreover, in the New York Action, the parties have already fully briefed cross-motions for summary judgment and oral argument has been scheduled by the Court. Accordingly, in the interest of judicial economy, this action should be stayed pending resolution of the parties' cross-motions for summary judgment in the New York action.

## CONCLUSION

For the aforementioned reasons, ACA respectfully requests that the Court enter an order: (a) dismissing Plaintiffs' Amended Complaint; (b) staying all proceedings, including discovery, relating to class-certification pending the Court's ruling on ACA's motion to dismiss; and (c) granting ACA such other and further relief as this Court deems just and proper.

Dated: Jackson, Mississippi
      March 21, 2012

                                                      BRADLEY ARANT BOULT CUMMINGS LLP

                                                      By: /s/ Mason E. Lowe
                                                           W. Wayne Drinkwater (MBN 6193)
                                                           Mason E. Lowe (MBN 102393)

                                                      One Jackson Place
                                                      188 E. Capitol Street, Suite 400
                                                      Jackson, Mississippi 39201
                                                      Telephone: (601) 948-8000
                                                      Facsimile: (601) 948-3000
                                                      *Attorneys for Defendant ACA*
                                                      *Financial Guaranty Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>Jesse Mitchell, III Esq.
>O. Stephen Montagnet, III, Esq.
>William M. Quin, II, Esq.
>MCCRANEY MONTAGNET & QUIN, PLLC
>602 Steed Road, Suite 200
>Ridgeland, Mississippi 39157
>**Attorneys for Plaintiffs**

This the 21st day of March, 2012.

>/s/ Mason E. Lowe
>MASON E. LOWE