**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

JAMES E. DAVIS AND FRANCOIS KOHLMANN,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED                                            PLAINTIFFS

vs.                                                    CIVIL ACTION NO. 3:11-CV-093-MPM-SAA

ACA FINANCIAL GUARANTY
CORPORATION, and
JOHN DOES One through Ten                                          DEFENDANTS

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Come now Plaintiffs, James E. Davis and Francois Kohlmann ("Plaintiffs"), Individually and on Behalf of All Others Similarly Situated, being all owners and/or holders of Connector 2000 Association, Inc. Toll Road Revenue Bonds insured by Defendant(s) ACA Financial Guaranty Corporation and John Does One - Ten (hereinafter collectively referred to as "ACA"), and files this Motion for Class Certification and Memorandum of Law in Support Thereof as follows:

**INTRODUCTION**

James Davis and Francois Kohlman (hereinafter collectively referred to as "Plaintiffs") purchased municipal bonds insured by ACA. The original bond issuer, Connector 2000 Association, Inc. ("Connector 2000") became insolvent and unable to meet its debt obligations. Notwithstanding its "unconditional" obligation to pay the debt service in the event of nonpayment, ACA has taken the position that it no longer owes a duty to make the scheduled payments. On behalf of the class members, Plaintiffs seek in this action to establish ACA's liability under the policies and to recover damages for ACA's refusal to honor its obligations.

1

**RELEVANT BACKGROUD**

On June 5, 2001, ACA issued seven secondary market insurance policies ("the Policies") which insured $42,700,000 of municipal toll road bonds issued by Connector 2000. The policies are identified as S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22. Each policy covers nonpayment for a particular insured bond, identified by each policy in its "Exhibit A." Collectively, the Policies' "Exhibit A" identify the obligations bearing CUSIP[1] numbers: 20786LCS8, 20786LCU3, 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5. The insured bonds were sold and traded under these CUSIP numbers.

The coverage provisions of the Policies state:

> ACA Financial Guaranty Corporation, a Maryland stock insurance corporation (the "Insurer"), *in consideration* of the payment of the *premium* and *subject to the terms of* this Secondary Market Insurance Policy (the "Policy") and *the Custody Agreement* between U.S. Bank Trust National Association (the "Custodian") and the Insurer, dated November 3, 1997 (the "Custody Agreement"), hereby agrees to pay the Custodian for the benefit of each Holder or Owner as the case may be, the Amount Due for Payment *resulting from the nonpayment by the Issuer of the Obligations described in Exhibit A*, attached hereto.

On June 24, 2010, Connector 2000 filed a petition for bankruptcy protection under Chapter 9 in U.S. Bankruptcy Court for the District of South Carolina. The Connector 2000 Bankruptcy Plan identified certain bonds that were scheduled for "cancellation and exchange." ACA asserts that as a result of the bankruptcy, the class members' securities are no longer enforceable obligations, and that, therefore, neither is ACA's insurance obligations. ACA has refused to make payments that were scheduled to be made, and has publicly confirmed in its

---

[1] "CUSIP" is the abbreviation for the Committee on Uniform Securities Identification Procedures ("CUSIP"), which assigns identifying numbers to particular, unique securities.

2

June 30, 2011 Quarterly Financial Statement that its repudiation applies to all policies that insured the class members' bonds.

Plaintiffs James Davis and Francois Kohlmann are currently the owners/holders of securities identified by CUSIP No. 20786LCS8 which were insured by ACA under policy No. 50601-15. The Class upon whose behalf this suit is brought is defined as follows:

> All owners or holders of Connector 2000 Association, Inc. Toll Revenue Bonds (Southern Connector Project, Greenville, South Carolina) bearing CUSIP numbers 20786LCS8; 20786LCU3; 20786LCV1; 20786LCW9; 20786LCX7; 20786LCY5; and 20786LCY5, which were insured under ACA's Secondary Market Policies numbers: S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22, respectively.

## LEGAL DISCUSSION

Under the Federal Rules of Civil Procedure, a class should be certified when a Plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). Rule 23 is to be construed liberally and read to favor the maintenance of class actions. *See* FED. R. CIV. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mutual Insurance, Inc.,* 508 F.2d 239, 246 & n.7 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975). Further, when evaluating a motion for class certification, a court accepts as true the allegations made in support of certification, and does not examine the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). As demonstrated below, Plaintiffs meet all requirements necessary to certify this case as a class action.

### A. The Rule 23(a) Requirements Are Met

#### 1. Rule 23(a)(1) – Numerosity

The focus of the numerosity requirement of Rule 23 is judicial economy. The Rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration 1 H. Newberg and A. Conte, NEWBERG ON CLASS

3

ACTIONS § 3:5 (4th ed. 2003); Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower . . . . In light of prevailing precedent, the difficulty inherent in joining as few as 40 members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the of Rule 23(a)(1) on that fact alone.

1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003). Rule 23(a)(1) requires that the class be so large that joinder of all members is impracticable. To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State University,* 213 F.3d 858, 868 (5th Cir. 2000) (internal quotation omitted).

Based on the size of the subset of bonds that were insured by ACA (42.7 million) and the fact that the bonds were sold in $5,000.00 units, it is apparent that the number of affected bond holders or owners could be in the thousands. Joinder of all members is impracticable, and the numerosity requirement of Rule 23(a) is easily satisfied.

### 2. Rule 23(a)(2) – Commonality

The proposed class also meets the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." This requirement is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 5th Cir. 1997)). Here, the overriding issue common to all class members is whether Connector 2000's bankruptcy relieved ACA of its obligation to make payments to the class members under the Policies.

Plaintiffs' Second Amended Complaint specifically lists other common issues implicated by their claims:

    i.    Whether ACA's actions and/or omissions is an anticipatory repudiation of the Policies.

    ii.    Whether the Issuer's bankruptcy eliminated ACA's insurance obligations to the members of the class.

    iii.    Whether ACA is liable under the policies at issue.

    iv.    Whether ACA's actions were carried out in a negligent, intentional, or grossly negligent fashion with a total disregard for the rights of the Class.

    v.    Whether ACA acted in bad faith in refusing to comply with its obligation under the Policies.

    vi.    Whether ACA breached its covenant of good faith and fair dealing owed to the Class under the Policies; and

    vii.    Whether ACA assumed and breached fiduciary duties as agent of the Class members.

### 3.    Rule 23(a)(3) – Typicality

Plaintiffs also meet the typicality requirement of Rule 23(a). Rule 23(a)(3) requires that "the claims…of the representative parties are typical of the claims…of the class…" Fed. R. Civ. 23(a)(3). The test for typicality is not demanding, *Shipes v. Trinity Inds.,* 987 F.2d 311, 316 5th Cir. 1993), and it "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn,* 118 F.3d at 426. Here, the named Plaintiffs' claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Plaintiffs' interests are co-extensive with those of the class, since every class member claims injury resulting from the same uniform alleged misconduct by ACA.

Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Here, typicality is inherent in the class claims asserted. All of the class members' claims arise from the common issue of whether ACA's payment obligations under the Policies remain intact. Accordingly, Plaintiffs have met the typicality requirement of Rule 23(a)(3).

### 4. Rule 23(a)(3) – Adequacy of Representation

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement, the "class representatives, their counsel, and the relationship between the two [must be] adequate to protect the interests of absent class members." *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002)). Differences between a named plaintiff and class members will render the named plaintiff an "inadequate" representative only if those differences create conflicts between the interests of the named plaintiff and the interests of class members. *Mullen,* 186 F.3d at 625-26.

Here, there are no conflicts of interest or other antagonisms between Plaintiffs, on the one hand, and Class Members, on the other. *See Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986). All have the mutual incentive to establish ACA's liability under the Policies. In addition, Plaintiffs' counsel have provided, and will provide, fair and vigorous representation for the Class. The interests of the Class will be fairly represented by the Plaintiffs. Counsel in this matter is competent and experienced in consumer protection litigation, complex civil litigation, class action litigation, insurance litigation, and securities litigation.

6

B.  **The Requirements of Rule 23(b) Are Met**

    1.  **Common questions of law and/or fact predominate over questions affecting individual class members**

Though only one of the Rule 23(b) requirements are necessary, this proposed class satisfies all three. Under Rule 23(b)(1), a class is properly certified when "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The proposed class consists of owners/holders of insured bonds who claim to be entitled to payment under the Policies. If not for class relief, there is the danger of some individual class members obtaining judgments confirming their rights to such payments while others – who purchased the same insured securities and under the identified insurance policies – could be denied the same relief. Certification under Rule 23(b)(1) is therefore appropriate.

Under Rule 23(b)(2), a class is properly certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In response to this lawsuit, ACA informed the public in its June 30, 2011 quarterly statement that

> The Company was recently named as a defendant in a putative class-action in the United States District Court for the Northern District of Mississippi. **The putative class purports to consist of all owners and/or holders of Connector 2000 Association, Inc. Toll Road Revenue Bonds (the "Connector Bonds") insured by the Company**. The issuer of the Connector Bonds, Connector 2000 Association, Inc. (the "Issuer"), successfully confirmed a Chapter 9 plan (the "Plan"), and emerged from its bankruptcy proceeding on April 1, 2011. Pursuant to the terms of the Plan and by operation of law, the Connector Bonds were exchanged for new obligations of the Issuer (the "New Obligations") and were effectively cancelled. As a result, **the Company asserts that the Connector Bonds are no longer enforceable obligations, and as such, neither is the guaranty obligation originally provided by**

7

> **the Company under its secondary market insurance policies.** Because the Connector Bonds are no longer effective or enforceable obligations by virtue of the exchange effected under the Plan, and because the original guaranty issued by the Company in connection with the Connector Bonds under the Policy was not extended under the Plan or otherwise to the New Obligations, **the Company asserts that it has no further liability or obligation under its policies.**

Thus, ACA has disclaimed liability to the entire class for the same reason, i.e., "because the Connector 2000 Bonds are no longer enforceable obligations." Since this ground constitutes an "act or refusal to act" which "applies generally to the class," certification under Rule 23(b)(2) is appropriate.

Finally, Rule 23(b)(3) imposes two prerequisites – predominance and superiority: "[Q]uestions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and…a class action [must be] superior to the other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To predominate, "common issues must constitute a significant part of the individual case." *Mullen*, 186 F.3d at 626. The plaintiff must demonstrate that issues "that are subject to generalized proof and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Board of Realtors, Inc.* 675 F.2d 671, 676 (5th Cir. 1982). As the Supreme Court explained in *Amchem Prods., Inc. v. Winsor*, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. 591, 623 (1997).

As described above, Plaintiffs and the Class allege injury by a common course of conduct. These allegations provide the common issues required to ensure predomination of common questions over individual issues.

### 2. A class action is the superior means to adjudicate the claims at issue

The Court must also apply Rule 23(b)(3) and consider whether a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here.

#### a. Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The bonds at issue are sold in $5,000 minimum par values. Thus, the financial interest of many of the class members is such that they cannot be expected to seek recourse individually. Given the expense of individual litigation, the claims for damages in this case are such that class relief is the only realistic alternative to no relief at all for many Class Members.

9

       **b.**  **The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendants asserting the claims here in dispute. Therefore, this factor supports class certification.

       **c.**  **The Court is an appropriate forum for resolution of the claims in dispute**

The provisions of the Class Action Fairness Act ("CAFA") establish original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. The total claims of individual class members in this action are well in excess of $5,000,000 in aggregate exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). Plaintiffs and other members of the class are citizens of states other than the state of Maryland, where ACA resides. Furthermore, Plaintiffs allege that the total number of members of the proposed Class is believed to be greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction will extend to members of the Class under the Due Process Clause because Plaintiffs will issue notice that is constitutionally sufficient to apprise class members of all necessary information pursuant to Rule 23. *Shutts,* 472 U.S. at 811-12.

       **d.**  **Manageability**

Finally, this case can be easily managed by this court on a class basis.

**CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court certify the following class:

> All owners or holders of Connector 2000 Association, Inc. Toll Revenue Bonds (Southern Connector Project, Greenville, South Carolina) bearing CUSIP numbers 20786LCS8; 20786LCU3; 20786LCV1; 20786LCW9; 20786LCX7; 20786LCY5; and 20786LCY5, which were insured under ACA's Secondary Market Policies numbers: S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22, respectively.

Plaintiffs also respectfully request that they be appointed as the class representatives and that the law firm McCraney Montagnet & Quin, PLLC be appointed as class counsel.

RESPECTFULLY SUBMITTED this the 25th day of April, 2012.

By:    */s/ O. Stephen Montagnet, III*
      JESSE MITCHELL, III (MSB# 103020)
      WILLIAM M. QUIN, II (MSB# 10834)
      O. STEPHEN MONTAGNET, III (MSB# 10049)
      *Counsel for Plaintiff*

OF COUNSEL:

MCCRANEY MONTAGNET & QUIN, PLLC
602 Steed Road, Suite 200
Ridgeland, Mississippi 39157
Telephone:   (601) 707-5725
Facsimile:     (601) 510-2939

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 25, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                /s/ *O. Stephen Montagnet, III*
                O. STEPHEN MONTAGNET, III