

PROPERTY AND CASUALTY COMPANIES — ASSOCIATION EDITION

# QUARTERLY STATEMENT
### AS OF JUNE 30, 2011
OF THE CONDITION AND AFFAIRS OF THE
## ACA Financial Guaranty Corporation

| | | | |
|---|---|---|---|
| NAIC Group Code | 0000 (Current Period), 0000 (Prior Period) | NAIC Company Code 22896 | Employer's ID Number 52-1474358 |

Organized under the Laws of __Maryland__, State of Domicile or Port of Entry __Maryland__

Country of Domicile __United States__

Incorporated/Organized __06/25/1986__   Commenced Business __10/31/1986__

Statutory Home Office __7 Saint Paul Street, Suite 1660__ (Street and Number), __Baltimore, MD 21202__ (City or Town, State and Zip Code)

Main Administrative Office __600 Fifth Avenue, 2nd Floor__ (Street and Number), __New York, NY 10020__ (City or Town, State and Zip Code), __212-375-2000__ (Area Code) (Telephone Number)

Mail Address __600 Fifth Avenue, 2nd Floor__ (Street and Number or P O Box), __New York, NY 10020__ (City or Town, State and Zip Code)

Primary Location of Books and Records __600 Fifth Avenue, 2nd Floor__ (Street and Number), __New York, NY 10020__ (City or Town, State and Zip Code), __212-375-2000__ (Area Code) (Telephone Number)

Internet Web Site Address __http //www aca.com__

Statutory Statement Contact __Eugene Thomas Carew__ (Name), __212-375-2041__ (Area Code) (Telephone Number) (Extension)

__ecarew@aca.com__ (E-Mail Address), __212-375-2100__ (Fax Number)

## OFFICERS

| Name | Title | Name | Title |
|---|---|---|---|
| Raymond John Brooks, Jr. | President and CEO | Steven Joseph Berkowitz # | Chief Legal Officer & COO |
| Arnold Barry Jay Brousell | Treasurer and CFO | | |

## OTHER OFFICERS

## DIRECTORS OR TRUSTEES

| | | | |
|---|---|---|---|
| Raymond John Brooks, Jr | Richard Joseph Caplan | Roger Dale Cunningham | Bradley Irving Dietz |
| Willis Thomas King, Jr | Dwight Edward Lacey | Paul Douglas McFarlane | Andrew Nathan Rothseid |
| John Bruce Sprung | | | |

State of __New York__
ss
County of __New York__

The officers of this reporting entity being duly sworn, each depose and say that they are the described officers of said reporting entity, and that on the reporting period stated above, all of the herein described assets were the absolute property of the said reporting entity, free and clear from any liens or claims thereon, except as herein stated, and that this statement, together with related exhibits, schedules and explanations therein contained, annexed or referred to, is a full and true statement of all the assets and liabilities and of the condition and affairs of the said reporting entity as of the reporting period stated above, and of its income and deductions therefrom for the period ended, and have been completed in accordance with the NAIC Annual Statement Instructions and Accounting Practices and Procedures manual except to the extent that (1) state law may differ, or, (2) that state rules or regulations require differences in reporting not related to accounting practices and procedures, according to the best of their information, knowledge and belief, respectively Furthermore, the scope of this attestation by the described officers also includes the related corresponding electronic filing with the NAIC, when required, that is an exact copy (except for formatting differences due to electronic filing) of the enclosed statement The electronic filing may be requested by various regulators in lieu of or in addition to the enclosed statement

_____   _____   _____
Raymond John Brooks, Jr        Steven Joseph Berkowitz        Arnold Barry Jay Brousell
President and Chief Executive Officer   Chief Legal Officer & Chief Operating Officer   Treasurer & Chief Financial Officer

a Is this an original filing?  Yes [X]  No [ ]
b If no,
  1 State the amendment number _____
  2 Date filed _____
  3 Number of pages attached _____

Subscribed and sworn to before me this ____ day of __August, 2011__

Nicolas Kalcanides,

NICOLAS KALCANIDES
Notary Public - State of New York
No. 01KA6227659
Qualified in New York County
My Commission Expires 9/7/14



EXHIBIT 2

# NOTES TO FINANCIAL STATEMENTS

The Company (specifically, ACA Management, LLC) is one of several defendants in an action pending in New Mexico state court brought by Frank Foy on behalf of the State of New Mexico. The complaint alleges that Vanderbilt Capital Advisors (and certain affiliates) engaged in an unlawful "pay to play" scheme with various New Mexico state officials, causing New Mexico state agencies to purchase certain worthless CDO investments, including some with which the Company was allegedly connected. The complaint seeks compensatory damages in excess of $90 million, plus interest and civil penalties which Plaintiff asserts raise the claim to several hundred million dollars, under certain New Mexico statutes, including the Fraud Against Taxpayers Act ("FATA"). The Company moved to dismiss the complaint for lack of jurisdiction. On April 28, 2010, without ruling on the Company's jurisdictional motion, the Court dismissed the complaint in its entirety on a number of grounds including constitutionality and lack of standing. Just before this dismissal was issued, the plaintiff filed an amended complaint which added a number of additional plaintiffs and legal theories. The Court subsequently entered an order striking all portions of the amended complaint inconsistent with the April 28 dismissal. The only surviving portions of the amended complaint are allegations of FATA violations occurring after July 1, 2007. The Company has renewed its motion to dismiss for lack of personal jurisdiction, and has also joined in a motion by all defendants to dismiss the amended complaint for failure to state a claim and for lack of subject matter jurisdiction. In addition, the New Mexico Attorney General has asked the Court to dismiss portions of the lawsuit in favor of lawsuits filed by the New Mexico Attorney General relating to the underlying "pay to play" scheme (the Company is not named in those lawsuits).

The Company is a named defendant in New York State Supreme Court in a suit brought by its parent company Manifold Capital Corporation (f/k/a ACA Capital Holdings, Inc.) ("Manifold") for alleged breaches of an Intercompany Agreement dated August 6, 2008 (the "Intercompany Agreement") and entered into among the Company, Manifold, and their affiliates. In particular, Manifold alleges that the Company breached the Intercompany Agreement by, among other acts, seeking a determination from the Maryland Insurance Administration (the "MIA") under a separate Escrow Agreement dated as of August 5, 2008 (the "Escrow Agreement"), that specified fees and expenses it incurred to the law firm Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank") and the Blackstone Group ("Blackstone") were subject to indemnity under the Intercompany Agreement, and therefore, to be paid from the Escrow Account established under the Escrow Agreement. Manifold further seeks a determination that the claims the Company has asserted for indemnity under the Intercompany Agreement are not covered claims and that the Company is liable for Manifold's legal fees and expenses incurred in enforcing its rights under the Intercompany Agreement. The Company denies any liability to Manifold, is vigorously defending the lawsuit and has countersued Manifold for, among other claims, a declaration that its claims for Fried Frank and Blackstone fees are subject to indemnity and for recovery of its legal fees and expenses incurred to enforce its rights under the Intercompany Agreement. The extent of liability to the Company, if any, would be for the fees and expenses Manifold incurred in responding to the Company's claim before the MIA and in the Supreme Court action. The extent of any gain to the Company from a successful resolution to this litigation would be for it to receive the aforementioned indemnification in addition to its fees and expenses incurred in pursuing its counterclaim.

The Company was recently named as a defendant in a putative class-action in the United States District Court for the Northern District of Mississippi. The putative class purports to consist of all owners and/or holders of Connector 2000 Association, Inc. Toll Road Revenue Bonds (the "Connector Bonds") insured by the Company. The issuer of the Connector Bonds, Connector 2000 Association, Inc. (the "Issuer"), successfully confirmed a Chapter 9 plan (the "Plan"), and emerged from its bankruptcy proceeding on April 1, 2011. Pursuant to the terms of the Plan and by operation of law, the Connector Bonds were exchanged for new obligations of the Issuer (the "New Obligations") and were effectively cancelled. As a result, the Company asserts that the Connector Bonds are no longer enforceable obligations, and as such, neither is the guaranty obligation originally provided by the Company under its secondary market insurance policies. Because the Connector Bonds are no longer effective or enforceable obligations by virtue of the exchange effected under the Plan, and because the original guaranty issued by the Company in connection with the Connector Bonds under the Policy was not extended under the Plan or otherwise to the New Obligations, the Company asserts that it has no further liability or obligation under its policies. The Company's time to answer or otherwise move against the complaint is mid-August 2011.

The Company is a third-party defendant in a suit filed in the Fourth Judicial Circuit in Duval County, Florida. The Company insured $11.65 million of bonds issued for the construction of a hospital and nursing facility in Macclenny, Florida. The bond documents required the hospital (i.e., the entity responsible for servicing the bonds insured by the Company) to procure and maintain a certain type of professional liability insurance. The hospital failed to comply with the professional liability insurance requirements under the bond documents and has commenced this action against the bond trustee to, among other things, be relieved of such obligation. In response, the bond trustee commenced a third party action against the Company demanding that the Company indemnify it for any liability the bond trustee may have to the hospital. The Company, in turn, brought a third-party action against the hospital and others seeking a declaration, inter alia, that the Company is either excused from its obligation under the bond insurance policy or that the hospital must procure professional liability insurance as required by the bond documents. To date, the Company has successfully moved to strike a number of the hospital's affirmative defenses to the Company's third-party complaint and has successfully defended against the trustee's motion to dismiss certain claims in the Company's third-party complaint. The parties are now engaged in discovery on the remaining claims.

Various lawsuits against the Company have arisen in the course of the Company's business. Contingent liabilities arising from litigation, income taxes and other matters are not considered material in relation to the financial position or the results of operations of the Company.

15. **LEASES**

   A.  In March 2010, ACA finalized negotiations with a new tenant for all of its office space at 140 Broadway. Under the terms of the transaction, ACA was released from its obligations under the lease, its security deposit of $2.7 million was returned and it made cash payments of $11.6 million. ACA recognized a loss of $13.0 million on the lease termination, which included the carrying value of leasehold improvements and furniture and fixtures related to this space. The Company's rental expense for the quarters ended June 30, 2011 and 2010 was $183.4 thousand and $598.8 thousand, respectively.

   In 2010, ACA finalized a sublease of new office space at 600 Fifth Avenue running through September 30, 2016. Minimum future lease payments under the lease are 2011-$0.3 million, 2012- $0.5 million, 2013- $0.5 million, 2014- $0.6 million, 2015- $0.6 million, and 2016- $0.5 million. The Company took possession of this space in July 2010.