IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES E. DAVIS AND FRANCOIS KOHLMANN,
INDIVIDUALLY AND ON BEHALF OF ALL
OTHERS SIMILARLY SITUATED                                                PLAINTIFFS

vs.                                        CIVIL ACTION NO. 3:11-CV-093-MPM-SAA

ACA FINANCIAL GUARANTY
CORPORATION, and
JOHN DOES One through Ten                                                DEFENDANTS

---

**PLAINTIFFS' SECOND MOTION FOR CLASS CERTIFICATION
AND MEMORANDUM OF LAW IN SUPPORT THEREOF
OR IN THE ALTERNATIVE LEAVE TO PERMISSIVELY JOIN ADDITIONAL
PLAINTIFFS**

---

Come now Plaintiffs, James E. Davis and Francois Kohlmann ("Plaintiffs"), Individually and on Behalf of All Others Similarly Situated, being all owners and/or holders of Connector 2000 Association, Inc. ("Connector 2000") Toll Road Revenue Bonds insured by Defendant(s) ACA Financial Guaranty Corporation and John Does One - Ten (hereinafter collectively referred to as "ACA"), and files this *Motion for Class Certification and Memorandum of Law in Support Thereof or in the alternative Leave to Permissively Join Additional Plaintiffs* pursuant to FRCP 20 (a)(1) as follows:

**INTRODUCTION**

ACA issued seven "non-cancelable" and "unequivocal" insurance policies (the "Policies") guaranteeing payment of principal and interest on $44,136,364 of Connector 2000 revenue bonds.[1] ACA would have this Court believe that Oppenheimer owns all of the insured bonds. They do not. The truth is that: approximately $7,000,000 of the insured bonds are owned by individuals and other entities; these individuals and entities are citizens of seventeen different states; over fifty of these

---

[1] See "Exhibit 1" – ACA's Secondary Market Insurance Policies.

1

individuals and entities have contacted the undersigned regarding this lawsuit and their rights, and a substantial number of the aforementioned individuals and entities have contracted with the undersigned to protect their interests against ACA. These facts alone warrant class certification. Without class certification, it is feared that these bondholders will be left in the cold and not have the means to seek what they are owed by ACA or be forced to file numerous lawsuits all around the country relating to the same defendant, applying the same law, and seeking the same relief.

In fact, ACA is banking on this. That is why in its appeal of the ("New York Action")[2] ACA has vehemently argued that any bonds not owned by Oppenheimer be excluded from the appeal.[3] This includes the exact CUSIPs/bonds held by Plaintiffs as well as the other bondholders. In essences, ACA is attempting to force these individuals to file individual actions all over the country to recover what the New York Supreme Court has clearly said is owed by ACA. Such a strategy is in line with prior arguments of ACA in which it argued that it does not intend to be bound by the ruling in the New York Action and appeal, because it can comply with contradictory judgments from this Court and the New York Action.[4] Such arguments by ACA go directly to the heart of one of the primary reasons for class actions – to prohibit numerous contradictory rulings relating to the same facts, transactions, and law.

At this time, Plaintiffs can only identify approximately fifty[5] known bondholders. Many of the known bondholders are individuals who own $5,000 to $20,000 of the insured bonds and they

---

[2] The "New York Action" refers to the lawsuit filed in the New York Supreme Court styled *Oppenheimer v. ACA Financial Guaranty Corp.,* No. 653290/11 (N.Y. Sup. Ct. N.Y. Co.).
[3] See "Exhibit 2" attached hereto - *Brief for Defendant-Appellant* filed by ACA in the New York Supreme Court, Appellate Division – First Department in *Oppenheimer AMT-Free Municipals, Oppenheimer Multi-State Municipal Trust,* on behalf of its series *Oppenheimer Rochester National Municipals,* and *Oppenheimer Municipal Fund,* on behalf of its series *Oppenheimer Limited Term Municipal Fund.*
[4] ACA argues that "[m]oreover, even if ACA were found liable here but not in the NY Action, the two varying results would not preclude ACA from complying with both judgments." (See *Doc.* #43 at 17-18 *ACA's Memorandum of Law in Opposition to Motion for Class Certification*)
[5] Plaintiffs have been contacted by approximately fifty known insured bondholders. However, Plaintiffs are confident that more than the fifty known bondholders exists due to an approximate $3,500,000 gap of insured bonds unaccounted for. Plaintiffs believe that this gap exist because a great deal of bondholders are not aware of ACA's

cannot afford to bring an individual action against ACA to seek declaratory and injunctive relief. Thus, this Court's granting of this Motion certifying the putative class is their only hope.[6]

Within weeks of filing the original complaint in this action, the undersigned was contacted by approximately fifty of the insured bondholders[7]. These bondholders reside in the following sixteen states: Mississippi, Florida, North Carolina, New Jersey, Michigan, Illinois, Colorado, Georgia, South Carolina, Connecticut, New York, Virginia, New Hampshire, Maryland, Alabama, and Idaho. Within the past thirty days, the undersigned has been contacted by other bondholders and bond brokers in Texas. A substantial number of the known bondholders have directly contracted with the undersigned to represent their interests against ACA. The range of the bondholders' ownership runs the gambit –from hundreds of thousands to a single insured bond of $5,000. Obviously, the bondholders who own only a small portion of the insured bonds cannot afford to fight ACA alone. Therefore, their only recourse against ACA is through class action or Rule 20 permissive joinder.

## **RELEVANT FINDINGS AND RULINGS BY THE NEW YORK COURT**

In its August 10, 2012, Order (Doc. #58) this Court allowed Plaintiffs to refile its Motion for Class Certification in light of the New York Order[8] issued against ACA. The following is relevant language from the New York Order as it relates to this action, ACA's conduct, and all bondholder's rights.

---

denial or either of the two lawsuits filed against ACA. In fact, the undersigned has recently been in contact with bondholders who were not aware that <u>any</u> lawsuits had been filed against ACA.

[6] However, Plaintiffs request that if the Court denies their Motion for Class Certification, then the Court grant Plaintiffs leave, pursuant to FRCP 20 (a)(1), to add all bondholders that have retained the undersigned to represent their interest against ACA.

[7] In Plaintiffs' Initial Disclosures, the identities of the fifty-six identifiable insured bondholders were disclosed to ACA.

[8] See <u>Exhibit "3"</u> attached hereto – July 23, 2012, Order issued in *Oppenheimer v. ACA Financial Guaranty Corp.,* No. 653290/11 (N.Y. Sup. Ct. N.Y. Co.).

3

**ACA REMAINS OBLIGATED:**

- "ACA is no mere contractual guarantor, but rather a monoline insurer." (New York Order at 32)

- "ACA would have the court discard explicitly bargained-for provisions of the Policies, and jettison [insured bondholder's] expectations." (New York Order at 26)

- "The viability of the bond market depends on the preservation of the protections granted to bondholders." (New York Order at 37)

- "[T]he plain language of the Policies supports the relief sought in [the] complaint." (New York Order at 26)

- "The Policies and CBIs clearly state that ACA agreed to absolutely and unconditionally guarantee payment of the [Connector 2000's] full obligations in the event of [Connector 2000's] nonpayment." (New York Order at 26)

- ACA "unconditionally and irrevocably guaranteed … full and complete payment … to be made by or on the behalf of [Connector 2000]." (New York Order at 8)

- "The Policies also state that they are 'noncancellable' except if the bondholder or owner surrenders its interest in the CBIs or position." (New York Order at 8)

- "In the present case, ACA has not, and cannot contend, that Oppenheimer has surrendered its interest or waived payment from the insurer." (New York Order at 27)

- "Because the default clause is enforceable under contract law principles of New York … ACA is bound by the terms of its Policies, and enforcement of the terms is required." (New York Order at 27).

- "ACA is obligated to provide coverage to plaintiffs for their claimed losses under the Secondary Market Insurance Policies…." (New York Order at 38)

4

**THE CONNECTOR BANKRUPTCY:**

- "'Events of Default' include technical defaults, such as when an Issuer/Debtor files for bankruptcy." (New York Order at 26)

- "[T]he power to accelerate the underlying debt upon an Event of Default rested solely in the hands of ACA." (New York Order at 8).

- "ACA was listed on [Connector 2000's] bankruptcy docket as a creditor and included as a 'Special Notice Party' in the proceedings." (New York Order at 12)

- "ACA also was listed as an unliquidated and contingent creditor on [Connector 2000's] 'Creditors Holding 20 Largest Unsecured Claims.'" (New York Order at 12).

- ACA informed the Connector Bankruptcy Court "that it anticipates that it will incur liability for additional payments with respect to the Insured Obligations." (New York Order at 12-13).

- "ACA also reserved its rights to recover any amount paid under the CBIs and Policies, as well as its subrogation rights." (New York Order at 13)

- "ACA's obligations were never discharged under the Plan." (New York Order at 31)

**NEW YORK GUARANTY LAW**

- "While ACA argues that it had no notice of the bankruptcy proceeding, ACA had full notice of [Connector 2000's] bankruptcy, and ACA appeared, participated, and protected its rights in that bankruptcy proceeding." (New York Order at 32)

- "More importantly, ACA is no mere contractual guarantor, but rather a monoline insurer." (New York Order at 32).

5

- "New York Bankruptcy Courts have remarked, a 'bankruptcy proceeding is meant to protect the debtor, not third-party guarantors.'" (New York Order at 31) (Citing *Schumacher v. White,* 429 BR 400, 408 [ED NY 2010], quoting *In re Larmar Estates, Inc.,* 5 BR 328, 331 [Bankr ED NY 1980]).

- "The Plan did not work to erase Oppenheimer's right to collect from ACA." (New York Order at 32)

**ACA's SUBROGATION RIGHTS**

- "Contractual subrogation here arises out of the insurance contract." (New York Order at 35) (Citing *Federal Ins. Co. v. Arthur Andersen & Co.,* 75 NY2d 366, 372 [1990])

- "The insurer's right of subrogation is completely derivative, and limited to the rights of the insured against the third party for its default or wrongdoing." (New York Order at 35)

- "[T]he Policies and section 4.07 of the Custody Agreement provide that the contractual condition for ACA to obtain subrogation rights was for ACA to first make accelerated pre-payment to Oppenheimer, which ACA elected not to do." (New York at 36)

- "By failing to exercise its unilateral option to make accelerated payments (see Insurane Law 6905[a]), ACA effectively waived its right under the Policies and applicable law to take control of any subrogation rights with respect to those payments at the time of the bankruptcy proceeding." (New York Order at 36)

- "ACA will be entitled to its subrogation rights, as Oppenheimer maintains, when it actually makes a payment to Oppenheimer…." (New York Order at 37)

6

**HOLDING OF NEW YORK COURT**

- "The viability of the bond market depends on the preservation of the protections granted to bondholders." (New York Order at 37)

- "Bankruptcy is not intended to provide a means for an insurer to escape liability simply because of the financial trouble of an insured." (New York Order at 37) (Citing *Matter of F.O. Baroff Co.,* 555 F2d 38, 43 [2d Cir. 1977])

- "Adjudged and Declared that defendant ACA is obligated to provide coverage to plaintiffs for their claimed losses under the Secondary Market Insurance Policies, evidenced by Enhanced CUSIP Nos. 20786LCS8, 20786LCU3, 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5." (New York Order at 38)

The Court should note that the declaratory relief sought here by Plaintiffs is the same relief sought in the New York Action based on the same facts and law. Specifically, Plaintiffs seek a declaratory judgment by this Court declaring that ACA is obligated to provide coverage to plaintiffs for their claimed losses under the Secondary Market Insurance Policies. Also, Plaintiffs seek injunctive relief prohibiting ACA from denying Plaintiffs and other bondholders claims for Nonpayment in the future.

Unlike Oppenheimer, Plaintiffs brought additional claims for breach of contract, anticipatory repudiation, breach of implied covenant of good faith, gross negligence, and breach of fiduciary duty. The reason for the additional claims brought by Plaintiffs primarily exists because Plaintiffs assigned rights to ACA during the bankruptcy based on payments made by ACA to bondholders during the Connector Banckrupty. Despite being assigned these rights, ACA sat on them to Plaintiffs detriment.

**RELEVANT BACKGROUND**

7

The original bond issuer, Connector 2000 became insolvent and unable to meet its debt obligations. Notwithstanding its "unconditional", "non-cancelable", and "unequivicable" obligation to pay the debt service in the event of nonpayment, ACA has taken the position that it no longer owes a duty to make the scheduled payments. As ruled in the New York Action, ACA's position is unfounded and absolutely unsupported by law.

On June 5, 2001, ACA issued the Policies which insured $44,136,364 of municipal toll road bonds issued by Connector 2000.[9] The Policies are identified as S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22. Each policy covers nonpayment for a particular insured bond, identified by each policy in its "Exhibit A." Collectively, the Policies' identify the obligations bearing CUSIP[10] numbers: 20786LCS8, 20786LCU3, 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5. The insured bonds[11] were sold and traded under these CUSIP numbers.

The coverage provisions of the Policies state:

> ACA Financial Guaranty Corporation, a Maryland stock insurance corporation (the "Insurer"), *in consideration* of the payment of the *premium* and *subject to the terms of* this Secondary Market Insurance Policy (the "Policy") and *the Custody Agreement* between U.S. Bank Trust National Association (the "Custodian") and the Insurer, dated November 3, 1997 (the "Custody Agreement"), hereby agrees to pay the Custodian for the benefit of each Holder or Owner as the case may be, the Amount Due for Payment *resulting from the nonpayment by the Issuer of the Obligations described in Exhibit A*, attached hereto.

On June 24, 2010, Connector 2000 filed a petition for bankruptcy protection under Chapter 9 in U.S. Bankruptcy Court for the District of South Carolina. The Connector 2000 Bankruptcy Plan identified certain bonds that were scheduled for "cancellation and exchange." ACA asserts that as a result of the bankruptcy, the class members' securities are no longer enforceable obligations,

---

[9] See "Exhibit 1".
[10] "CUSIP" is the abbreviation for the Committee on Uniform Securities Identification Procedures ("CUSIP"), which assigns identifying numbers to particular, unique securities.
[11] Plaintiffs references to the insured bonds includes the certificates of bond insurance ("CBI") relating to each insured bond.

8

and that, therefore, neither is ACA's insurance obligations. ACA has refused to make payments that were scheduled to be made, and has publicly confirmed in its June 30, 2011, Quarterly Financial Statement that its repudiation applies to all policies that insured the class members' bonds.

Plaintiffs James Davis and Francois Kohlmann are currently the owners/holders of securities identified by CUSIP No. 20786LCS8 which were insured by ACA under policy No. 50601-15. The Class upon whose behalf this suit is brought is defined as follows:

> All owners or holders of Connector 2000 Association, Inc. Toll Revenue Bonds (Southern Connector Project, Greenville, South Carolina) bearing CUSIP numbers 20786LCS8; 20786LCU3; 20786LCV1; 20786LCW9; 20786LCX7; 20786LCY5; and 20786LCY5, which were insured under ACA's Secondary Market Policies numbers: S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22, respectively.

Several months after Plaintiffs filed this action, Oppenheimer filed the New York Action seeking only declaratory relief. On July 23, 2012, an order was issued in favor of Oppenheimer and against ACA in the New York Action declaring that ACA "is obligated to provide coverage to plaintiffs for their claimed losses under the Secondary Market Insurance Policies, evidenced by Enhanced CUSIP Nos. 20786LCS8, 20786LCU3, 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5."[12]

## LEGAL DISCUSSION

"The class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23."[13] In addition, it gives those with lesser claims involving the same issues a venue to have their claims heard. Under the Federal Rules of Civil Procedure, a class should be certified when a

---

[12] See "Exhibit 3" at 38.
[13] Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 155, 102 S. Ct. 2364, 72 L. Ed. 2d 740, 1982 U.S. LEXIS 119, 50 U.S.L.W. 4650, 28 Fair Empl. Prac. Cas. (BNA) 1745, 29 Empl. Prac. Dec. (CCH) P32,781, 34 Fed. R. Serv. 2d (Callaghan) 371 (U.S. 1982)

Plaintiff meets all four requirements of Rule 23(a) and one of the requirements of Rule 23(b). Rule 23 is to be construed liberally and read to favor the maintenance of class actions. *See* FED. R. CIV. P. 23(a); *Weiss v. York Hosp.,* 745 F.2d 786, 807 (3d Cir. 1983); *Wetzel v. Liberty Mutual Insurance, Inc.,* 508 F.2d 239, 246 & n.7 (3d Cir.), *cert. denied*, 421 U.S. 1011 (1975). Further, when evaluating a motion for class certification, a court accepts as true the allegations made in support of certification, and does not examine the merits of the case. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). As demonstrated below, Plaintiffs meet all requirements necessary to certify this case as a class action.

    A.    <u>**The Rule 23(a) Requirements Are Met**</u>

        1.    **Rule 23(a)(1) – Numerosity**

The focus of the numerosity requirement of Rule 23 is judicial economy. The Rule does not set out a precise numerical standard, but presents an impracticability of joinder requirement, of which class size is an inherent consideration 1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003); Thus, class sizes of 30-40 members usually raise a presumption that the numerosity requirement is satisfied:

> Certainly, when the class is very large – for example, numbering in the hundreds – joinder will be impracticable; but in most cases the number that will, in itself, satisfy the Rule 23(a)(1) prerequisite should be much lower . . . . In light of prevailing precedent, the difficulty inherent in joining as few as 40 members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the of Rule 23(a)(1) on that fact alone.

1 H. Newberg and A. Conte, NEWBERG ON CLASS ACTIONS § 3:5 (4th ed. 2003). Rule 23(a)(1) requires that the class be so large that joinder of all members is impracticable. To satisfy the numerosity requirement, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members." *Pederson v. Louisiana State University,* 213 F.3d 858, 868 (5th Cir. 2000) (internal quotation omitted).

10

Plaintiffs have issued a *subpoena duces tecum* to the custodian -U.S. Bank- requesting, amongst other things, the disclosure of the number of insured bondholders. However, while the information was being compiled by U.S. Bank its office was flooded by Hurricane Sandy. Only within the past few days has anyone been allowed into U.S. Bank's offices. U.S. Bank is working on complying with Plaintiffs' subpoena, but does not know when Plaintiffs will receive the requested documents and information.

However, based on the fifty plus bondholders who have already contacted the undersigned as well as the unknown bondholders who own the unaccounted for approximately $3,500,000 of the bonds, it is apparent that the number of affected bondholders or owners could easily be in the hundreds and disbursed throughout the country. Joinder of all possible members is impracticable, and the numerosity requirement of Rule 23(a) is easily satisfied.

### 2. Rule 23(a)(2) – Commonality

The proposed class also meets the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." This requirement is met "where there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 625 (5th Cir. 1999) (quoting *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 5th Cir. 1997)). Here, the overriding issue common to all class members is whether Connector 2000's bankruptcy relieved ACA of its obligation to make payments to the class members under the Policies. Plaintiffs' Second Amended Complaint specifically lists other common issues implicated by their claims:

    i.    Whether ACA's actions and/or omissions is an anticipatory repudiation of the Policies.

    ii.    Whether the Issuer's bankruptcy eliminated ACA's insurance obligations to the members of the class.

    iii.    Whether ACA is liable under the policies at issue.

11

    iv.    Whether ACA's actions were carried out in a negligent, intentional, or grossly negligent fashion with a total disregard for the rights of the Class.

    v.    Whether ACA acted in bad faith in refusing to comply with its obligation under the Policies.

    vi.    Whether ACA breached its covenant of good faith and fair dealing owed to the Class under the Policies; and

    vii.    Whether ACA assumed and breached fiduciary duties as agent of the Class members.

### 3. Rule 23(a)(3) – Typicality

Plaintiffs also meet the typicality requirement of Rule 23(a). Rule 23(a)(3) requires that "the claims…of the representative parties are typical of the claims…of the class…" Fed. R. Civ. 23(a)(3). The test for typicality is not demanding, *Shipes v. Trinity Inds.,* 987 F.2d 311, 316 5th Cir. 1993), and it "focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." *Lightbourn,* 118 F.3d at 426. Here, the named Plaintiffs' claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Plaintiffs' interests are co-extensive with those of the class, since every class member claims injury resulting from the same uniform alleged misconduct by ACA.

Because commonality and typicality are closely related, a finding of one often results in a finding of the other. Here, typicality is inherent in the class claims asserted. All of the class members' claims arise from the common issue of whether ACA's payment obligations under the Policies remain intact. Accordingly, Plaintiffs have met the typicality requirement of Rule 23(a)(3).

### 4. Rule 23(a)(3) – Adequacy of Representation

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). To meet the adequacy requirement, the "class representatives, their counsel, and the relationship between the two [must

12

be] adequate to protect the interests of absent class members." *Unger v. Amedisys, Inc.*, 401 F.3d 316, 321 (5th Cir. 2005) (citing *Stirman v. Exxon Corp.,* 280 F.3d 554, 562 (5th Cir. 2002)). Differences between a named plaintiff and class members will render the named plaintiff an "inadequate" representative only if those differences create conflicts between the interests of the named plaintiff and the interests of class members. *Mullen,* 186 F.3d at 625-26.

Here, there are no conflicts of interest or other antagonisms between Plaintiffs, on the one hand, and Class Members, on the other. *See Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986). All have the mutual incentive to establish ACA's liability under the Policies. In addition, Plaintiffs' counsel have provided, and will provide, fair and vigorous representation for the Class. The interests of the Class will be fairly represented by the Plaintiffs. Counsel in this matter is competent and experienced in complex civil litigation, insurance litigation, and securities litigation. Counsel holds multiple securities licenses and has sold insured municipal bonds for years. Thus, counsel understands the securities at issue in this matter and laws surrounding the same.

### B. The Requirements of Rule 23(b) Are Met

#### 1. Common questions of law and/or fact predominate over questions affecting individual class members

Though only one of the Rule 23(b) requirements are necessary, this proposed class satisfies all three. Under Rule 23(b)(1), a class is properly certified when "prosecuting separate actions by . . . individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." The proposed class consists of owners/holders of insured bonds who claim to be entitled to payment under the Policies. If not for class relief, there is the danger of some individual class members obtaining judgments confirming their rights to such payments while others – who purchased the same insured securities and under the identified insurance policies – could be denied the same relief. Certification under Rule 23(b)(1) is therefore appropriate.

Under Rule 23(b)(2), a class is properly certified when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." In response to this lawsuit, ACA informed the public in its June 30, 2011 quarterly statement that

> The Company was recently named as a defendant in a putative class-action in the United States District Court for the Northern District of Mississippi. **The putative class purports to consist of all owners and/or holders of Connector 2000 Association, Inc. Toll Road Revenue Bonds (the "Connector Bonds") insured by the Company**. The issuer of the Connector Bonds, Connector 2000 Association, Inc. (the "Issuer"), successfully confirmed a Chapter 9 plan (the "Plan"), and emerged from its bankruptcy proceeding on April 1, 2011. Pursuant to the terms of the Plan and by operation of law, the Connector Bonds were exchanged for new obligations of the Issuer (the "New Obligations") and were effectively cancelled. As a result, **the Company asserts that the Connector Bonds are no longer enforceable obligations, and as such, neither is the guaranty obligation originally provided by the Company under its secondary market insurance policies.** Because the Connector Bonds are no longer effective or enforceable obligations by virtue of the exchange effected under the Plan, and because the original guaranty issued by the Company in connection with the Connector Bonds under the Policy was not extended under the Plan or otherwise to the New Obligations, **the Company asserts that it has no further liability or obligation under its policies.**

Thus, ACA has disclaimed liability to the entire class for the same reason, i.e., "because the Connector 2000 Bonds are no longer enforceable obligations." Since this ground constitutes an "act or refusal to act" which "applies generally to the class," certification under Rule 23(b)(2) is appropriate.

Finally, Rule 23(b)(3) imposes two prerequisites – predominance and superiority: "[Q]uestions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members, and…a class action [must be] superior to the other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To predominate, "common issues must constitute a significant part of the individual case."

14

*Mullen*, 186 F.3d at 626. The plaintiff must demonstrate that issues "that are subject to generalized proof and thus applicable to the class as a whole…predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Board of Realtors, Inc.* 675 F.2d 671, 676 (5th Cir. 1982). As the Supreme Court explained in *Amchem Prods., Inc. v. Winsor,* "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 521 U.S. 591, 623 (1997).

As described above, Plaintiffs and the Class allege injury by a common course of conduct. These allegations provide the common issues required to ensure predomination of common questions over individual issues.

### 2. A class action is the superior means to adjudicate the claims at issue

The Court must also apply Rule 23(b)(3) and consider whether a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here.

#### a. Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper,* 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). The class action mechanism is meant to afford remedies to claimants who cannot

15

otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). The bonds at issue are sold in $5,000 minimum par denominations. Thus, the financial interest of many of the class members is such that they cannot be expected to seek recourse individually. Given the expense of individual litigation, the claims for damages in this case are such that class relief is the only realistic alternative to no relief at all for many Class Members.

    b.  **The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendants asserting the claims here in dispute. The only other action is the New York Action which was filed several months after this action. Despite the fact that ACA repudiated its obligations to bondholders over seventeen months ago, this action and the New York Action are the only to actions brought against ACA. Furthermore, ACA has consistently argued, and continues to argue that the New York Action does not and will not have any effect on its ability to comply with a contradictory judgment here. Such an argument only can only lead one to believe that ACA would like to force the bondholders to file numerous actions all around the country running afoul of one of the primary purposes for class-actions. Therefore, this factor supports class certification.

    c.  **The Court is an appropriate forum for resolution of the claims in dispute**

The provisions of the Class Action Fairness Act ("CAFA") establish original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a State different from any defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000, exclusive of interest and costs. The total claims of individual class members in this action would undeniably exceed $5,000,000 in aggregate exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). Plaintiffs and other members of the class are citizens of states other than the state of Maryland, where ACA resides. Furthermore, Plaintiffs allege that the

16

total number of members of the proposed Class is believed to be greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B). Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A).

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties, and that personal jurisdiction will extend to members of the Class under the Due Process Clause because Plaintiffs will issue notice that is constitutionally sufficient to apprise class members of all necessary information pursuant to Rule 23. *Shutts,* 472 U.S. at 811-12.

### d. Manageability

Finally, this case can be easily managed by this court on a class basis.

### C. Alternatively, Plaintiffs Seek Leave to Permissively Join Additional Plaintiffs

If this Court denies Plaintiffs' Motion for Class Certification, in the alternative, Plaintiffs seek leave to permissively join additional bondholders as plaintiffs to this action. The undersigned has been retained by a substantial number of the insured bondholders to represent their interests against ACA. Pursuant to FRCP 20 (a)(1) Plaintiffs seek leave of this Court to join additional bondholders to this action if Plaintiffs' Motion for Class Certification is denied.

### CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court certify the following class:

> All owners or holders of Connector 2000 Association, Inc. Toll Revenue Bonds (Southern Connector Project, Greenville, South Carolina) bearing CUSIP numbers 20786LCS8; 20786LCU3; 20786LCV1; 20786LCW9; 20786LCX7; 20786LCY5; and 20786LCY5, which were insured under ACA=s Secondary Market Policies numbers: S0601-15; S0601-17; S0601-18; S0601-19; S0601-20; S0601-21; S0601-22, respectively.

17

Plaintiffs also respectfully request that they be appointed as the class representatives and that the law firm The Mitchell Firm, PLLC be appointed as class counsel. In the alternative, Plaintiffs seek leave to add additional plaintiffs pursuant to FRCP 20 (a)(1).

RESPECTFULLY SUBMITTED this the 3[th] day of December, 2012.

By:    /s/ *Jesse Mitchell, III*
       JESSE MITCHELL, III (MSB# 103020)
       *Counsel for Plaintiff*

OF COUNSEL:

THE MITCHELL FIRM, PLLC
774 Avery Blvd. N., Suite G
Ridgeland, Mississippi 39157
Telephone:   (769) 300-0462
Facsimile:    (601) 510-1981

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 3, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                  /s/ *Jesse Mitchell, III*
                                                  JESSE MITCHELL, III