UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES E. DAVIS, INDIVIDUALLY AND                                    PLAINTIFFS
FRANCOIS KOHLMANN, INDIVIDUALLY AND
ON BEHALF OF ALL OTHERS SIMILARLY
SITUATED

VS.                                                    CAUSE NO. 3:11-CV-093-MPM-SAA

ACA FINANCIAL GUARANTY                                              DEFENDANTS
CORPORATION, and
JOHN DOES One through Ten

---

## PLAINTIFFS' REPLY TO OPPOSITION TO
## MOTION FOR CLASS CERTIFICATION

---

COME NOW, Plaintiffs, James E. Davis and Francois Kohlmann ("Plaintiffs"), Individually and on Behalf of All Others Similarly Situated, being all owners and/or holders of Connector 2000 Association, Inc. Toll Road Revenue Bonds insured by Defendant(s) ACA Financial Guaranty Corporation and John Does One - Ten (hereinafter collectively referred to as "ACA"), and file this Reply to ACA's Opposition to the Motion for Class Certification or In the Alternative Leave to Permissively Join Additional Plaintiffs, and in support thereof, state as follows:

### INTRODUCTION

Despite ACA's loose, borderline defamatory and surely misleading assertions, this is a paradigmatic class action with claims of a sizeable number of individuals seeking payments under a Policy that ACA touts as being "noncancelable" and guarantees that "in a default, debt service will be unconditionally met." Noticeably, ACA does not and cannot dispute that: (1) there is approximately $7,000,000 of outstanding bonds not owned by Oppenheimer, (2) there

1

have been no other suits filed against ACA beyond this action and the *Oppenheimer Action[1]*, (3) at this time over fifty individuals and entities can be identified as bondholders – with  majority of these bondholders retaining *Plaintiffs' counsel*, and (4) the exact declaratory relief that is sought in Plaintiffs' Amended Complaint was granted against ACA in the *Oppenheimer Action.*

There are no differences between Plaintiffs and all putative class members.   All purchased the *Securities[2]* in the secondary market (in fact Mr. Kholmann purchased his *Securities* several years prior to the Issuer filing bankruptcy), all of the *Securities* were covered by identical Policies issued by ACA, and all putative class members are recipients of ACA's "across the board" denial and repudiation. Thus for Rule 23 purposes, there are central questions of liability under the identical policy language, all questions of fact and law are identical,  all class members are entitled to the sought declaratory relief,  and there are claims for damages that derive from the determination of the rights owed under the policy. The fact that Oppenheimer has chosen to only seek declaratory relief in its action, in no way diminishes Plaintiffs' other claims that accompany their pursuit of declaratory relief.  Oppenheimer clearly stated that as a multi-billion dollar company, its primary objective relating to the filing of the *Oppenheimer Action* was to discern how the *Securities* should be viewed for accounting and tax reporting purposes.

In their principal motion, Plaintiffs demonstrated that they satisfy each of the requirements of Rule 23(a).  Moreover, though only one of the class certification requirements of Rule 23(b) is necessary for certification, Plaintiffs demonstrated that this action satisfies every

---

[1] The *"Oppenheimer Action"* refers to the lawsuit filed in the New York Supreme Court styled *Oppenheimer v. ACA Financial Guaranty Corp.,* No. 653290/11 (N.Y. Sup. Ct. N.Y. Co.).

[2] **Error! Main Document Only.** The term Securities means and encompasses the bonds identified by CUSIP number 20786LCS8 which are bonds wrapped by Certificate of Bond Insurance and Policies issued by ACA. Thus the use of the term securities as used herein refers collectively to the insured bonds identified by the Enhanced CUSIP number 20786LCS8, ACA's Secondary Market Policies, and most importantly ACA's Certificates of Bond Insurance that were issued relating to the insured bonds identified by Enhanced CUSIP numbers: 20786LCS8, 20786LCV1, 20786LCW9, 20786LCX7, 20786LCU3, and 20786LCY5.

one. In its response, ACA failed to squarely address any of the relevant issues concerning the requirements of class certification. Instead, ACA primarily rests its arguments on the pendency of the *Oppenheimer Action* - which ACA lost and which granted the declaratory relief sought here by Plaintiffs. Boiled down to its essence, ACA argues that when an individual class member seeks only declaratory relief and the other class members seek the same relief plus monetary damages, then the latter is disqualified as being "typical," "common" or "adequate." The argument is nonsensical, unsupported by authority, and if accepted, would essentially eviscerate class actions completely.

ACA knows, or should know, that most of the class members are individual bondholders whose individual stakes are relatively small, making individual lawsuits cost prohibitive. In opposing certification, ACA is undoubtedly attempting to capitalize on the fact that most of the individual bondholders would not hire attorneys and fund litigation to recover amounts that may not exceed their attorneys' fees. Thus, these individual bondholders can only hope that Plaintiffs Motion is granted, so they will have an opportunity to be heard and recover what they are rightfully due. If not, then there will be no hope for the little guy. For the reasons that follow, the Court should reject ACA's arguments in opposition and grant the motion to certify or in the alternative grant Plaintiffs leave to permissively join additional bondholders as named plaintiffs to this action.

**ARGUMENT**

**A.**    **ACA Failed to Demonstrate the Absence of any Rule 23(b)(1) Requirement**

1.    Numerosity

The simple inquiry for determining numerosity is whether "the class is so numerous that joinder of *all* members is impracticable." ACA does not quarrel with the standard or with the

recognition that in the Fifth Circuit, classes that consist of 40 or more members usually satisfy the requirement. In their principal brief, Plaintiffs explained that the total par value of the *Securities* was $42.7 million, and that the bonds were sold in $5,000 denominations. Based on simple math, Plaintiffs originally estimated class members numbering in the thousands. In response, ACA represents that the total par value insured was actually $44.1 million -- higher than the Plaintiffs' estimate. However, ACA also pointed to the representation by Oppenheimer that it holds $37.1 million (or 84%) of the total *Securities* value. ACA suggests that, given Oppenheimer's substantial holdings, the Plaintiffs' original estimate that the number of class members "could be in the thousands" is untenable. Based on Oppenheimer's representations, Plaintiffs would agree. Nevertheless, the number of class members *known by Plaintiffs' counsel* already exceeds the threshold required to certify this class.

As revealed to ACA in the Plaintiffs' pre-discovery disclosures, Plaintiffs' counsel is personally aware of at least fifty-six persons or entities who own bonds insured by ACA under the Policies at issue.[3] In fact, a great majority of these individuals and entities have retained *Plaintiffs' counsel* to represent their interests against ACA. The approximate total cumulative par value holdings of these individuals and entities are approximately $3,500,000 of the remaining $7,000,000 not owned by Oppenheimer. Thus, even if the class was limited to the members *known* by the undersigned to be in existence, Rule 23's numerosity requirement would already be satisfied. Of course, there are many more class members that are unknown and who represent the unaccounted for approximately $3,400,000. Given the fact that the bonds are held

---

[3] Plaintiffs' disclosures are not part of the record, but Plaintiffs will produce them to the Court for in camera review should the Court wish to review them prior to making a numerosity determination.

in $5,000 par value denominations, it is mathematically possible that there are as many as 680 additional class members. It is almost certain that the number of class members exceed 100.[4]

Ignoring the actual factors used in the Rule 23 numerosity determination, ACA would have this Court deny certification simply because one of the class members, Oppenheimer, claims to own "84% of the par value." As ACA's omission of any authority supporting its theory would suggest, however, **Rule 23's numerosity requirement has nothing to do with the percentage stake in the amount in controversy that any one member may hold.** Indeed, in using this statistic in an attempt to deny the many individual owners of $5,000 par value *Securities* a practical avenue of recovery, ACA seeks to frustrate the general purpose of the class action procedure.

Moreover, Plaintiffs do not need to prove the exact number or identity of class members. *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 868 (5th Cir. 2000). Rather, Rule 23 requires that Plaintiffs show that "[t]he class must be so numerous that joinder of <u>all</u> members is impracticable." As the rule focuses on the "practicability" of joinder, "a number of facts other than the actual or estimated number of purported class members may be relevant to the "numerosity" question; these include, for example, the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim." *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981); 7

---

[4] Though it has not separately moved to dismiss pursuant to 12(b)(1), ACA purports to raise a "serious question as to the Court's jurisdiction to hear this claim as a class action because (a) the amount in controversy may be significantly less than the threshold $5,000,000 mark, and (b) the number of potential Class members is likely to be well shy of 100." Oppenheimer's represented stake of $37.1 million is included in the amount in controversy. However, even if it were excluded, ACA's own calculations demonstrate that the remaining amount is well in excess of $5,000,000. As to CAFA's 100 member jurisdictional threshold, the burden of proof is on ACA to demonstrate that the actual number is less when challenging jurisdiction. For purposes of this motion, Plaintiffs accept ACA's implication that it does not know the identities and number of the class members. However, as noted in Plaintiffs' pleadings opposing ACA's motion to dismiss, ACA has reduced the total number of class members by purchasing the subject *Securities* from other potential class members (while at the same time arguing to this Court that those *Securities* were "cancelled" and "unenforceable.").

C. Wright & A. Miller, Federal Practice & Procedure § 1762, at 600-03 (1972). *See also Garcia v. Gloor*, 618 F.2d 264, 267 (5th Cir. 1980). As applied here, each of these factors strongly favor a finding of numerosity.

The geographic dispersion of the identifiable members alone is vast. As demonstrated in Plaintiffs' pre-discovery disclosures, class members reside in at least seventeen states, including Mississippi, Florida, North Carolina, New Jersey, Michigan, Illinois, Colorado, Georgia, South Carolina, Connecticut, New York, Virginia, New Hampshire, Maryland, Alabama, Texas, and Idaho. Even with this being the case, and with almost two years passing since this action was filed and ACA's repudiation, no other suits have been filed beyond this suit and the *Oppenheimer Action*.

Moreover, due to the nature of the action and its subject matter, joinder is made difficult due to the fact that class membership is fluid. The *Securities* have been traded in the open market[5] since June 8, 2001, and are still being traded today.[6] Due to the nature of securities trading, it is extremely difficult to determine the true owners of a security on a given day. For this reason, ". . . the prerequisite expressed in Rule 23(a)(1) is generally *assumed to have been met* in class action suits involving nationally traded securities." *Zeidman,* 651 F.2d at 1039.

The last factor, the size of each plaintiffs claim, also favors numerosity. Though ACA repeatedly trumpets Oppenheimer's 84% stake, the remaining 16% of the par value is held by a significantly numerous group. Many members can be expected to own only one of the *Securities*, meaning that the stake of individual bondholders could be limited to the par value of

---

[5] The industry term for the market in which these bonds were bought and sold is "over the counter".

[6] Daily trading of the bonds can be monitored at the Municipal Securities Rulemaking Board website. To see the daily trading of the 20786LCS8 bonds, for example, see
http://emma.msrb.org/SecurityView/SecurityDetailsTrades.aspx?cusip=20786LCS8

$5,000. An individual's interest could be even smaller if the bond is held in a joint brokerage account. As each and every factor that relates to numerosity favors certification, Rule 23(a)(1) is clearly satisfied.

### 2. Commonality

To establish Rule 23(a)(2)'s commonality requirement, the Plaintiff must show that "there are questions of law or fact common to the class." In its principal motion, Plaintiffs identified several common questions of law and fact, including "the overriding issue common to all class members [of] whether the Issuer's bankruptcy relieved ACA of its obligation to make payments to the class members under the Policies." Significantly, ACA does not dispute that this issue (or any of the identified issues) is common among all class members. In fact, the *Oppenheimer Court* has already found this to be the case.

Rather, ACA argues that commonality fails because Plaintiffs' *claims* are not identical to those asserted by Oppenheimer. As ACA points out, Oppenheimer sought only a declaration of its rights under the Policies, whereas Plaintiffs seek both declaratory relief and money damages under breach of contract and tort claims. This distinction, according to ACA, destroys commonality.[7] Such is quite to the contrary. **The *Oppenheimer* ruling granted the exact declaratory relief that is sought here by Plaintiffs.** To be clear, ACA suggests that an individual class member's lawsuit must be identical to a putative class member's before

---

[7] ACA misrepresents to the Court that Oppenheimer has taken a "diametrically opposed" position as to whether ACA anticipatorily repudiated and whether the repudiation authorizes accelerated damages. In this regard, ACA selectively quotes from a paragraph in a brief submitted by Oppenheimer in its New York action wherein Oppenheimer correctly states that *the policies* do not permit the bondholders to require accelerated payments *acknowledged by ACA to be owed* except at ACA's election. Oppenheimer's point related to ACA's intentional failure to protect its rights during Connector 2000's bankruptcy and Oppenheimer's inability "under the Policies" and "during the bankruptcy" to demand acceleration. *See* ACA's Exhibit 5 at 18-19. Oppenheimer took no position as to whether any bondholders are entitled to accelerated payments in a lawsuit for breach of contract through anticipatory repudiation. Nothing in the policy speaks to that.

commonality can be established. This argument, which is unsupported by any authority, is easily refuted.

First, the focus on commonality is "questions of law or fact common to the class." This requirement is met "where there is at least *one* issue, the resolution of which will affect all or a significant number of the putative class members." *Mullen v. Treasure Chest Casino, LLC*, 186 F. 3d 620, 625 (5th Cir. 1999). The Court should assess whether the "common contention… [is] of such a nature that it is capable of classwide resolution -- which means that determination of its truth or falsity will resolve an issue that is central to the validity of each on the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2551 (2011). "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.* Plaintiffs have identified several common questions of law and fact applicable to the entire class, including the central issue of ACA's continuing obligation *vel non* under the identical policies that insure all of the class members' bonds.

Second, the fact that Oppenheimer chose to file a separate declaratory action *for itself* does not destroy commonality in this class action. On the contrary, the *Oppenheimer Action* and declaratory relief granted therein supports the establishment of commonality. If nothing else, the *Oppenheimer ruling* demonstrates that another individual class member has attempted to seek relief under issues of law and fact that are common to the class members. The fact that Oppenheimer being a multi-billion dollar company chose not to seek monetary relief is of no consequence. In its initial pleading, Oppenheimer explained that the primary reason for filing suit against ACA that sought only declaratory relief was driven by its accounting and tax reporting needs.

3.      Typicality

As noted in Plaintiffs' principal motion, the test for satisfying Rule 23(a)(3)'s typicality requirement is whether "the claims . . . of the representative parties are typical of the claims . . . of the class."  Once again, ACA does not quarrel with the fact that the putative class representatives have claims that are typical of the class members as a whole.  Rather, ACA suggests that facts relating to *Mr. Davis'* bond purchase destroy class certification under this requirement.  ACA makes no argument that Mr. Kohlmann is similarly atypical.  In fact, they intentionally attempt to mislead the Court by suggesting that Mr. Kohlmann did not own the *Securities* during the Issuer's bankruptcy.  The truth is that Mr. Kohlmann purchased the *Securities* years prior to the Issuer filing bankruptcy. Thus, even if ACA's points concerning Mr. Davis had merit, the class should still be certified.

ACA argues first that "Mr. Davis purchased his ACA Policy after the cancellation of the Original Insured Bonds" and that "the distinction is critical because many of the tort and quasi-contract claims that Plaintiffs purport to assert on behalf of the Class in their amended complaint rely upon the fact that [some of] the Class members . . . had purchased their Policies *prior to the Issuer's Bankruptcy Action."*   Though ACA made this distinction, it completely failed to apply it to any of the claims asserted in the amended complaint.  In other words, ACA failed to demonstrate how the *Securities* purchase date relative to the date of "the issuer's bankruptcy action" disqualifies Mr. Davis from representing the class under any of the claims he asserts.

Each and every one of the claims asserted in the complaint arise out of ACA's identical repudiation to Davis and all other class members of its obligations to make payments under its Policies.[8]   These include the asserted claims for breach of contract, anticipatory repudiation,

---

[8] It is undisputed that, after Davis purchased his bonds, ACA informed him and all other holders of bonds bearing CUSIP 20786LCS8 and 20786LCU3 that they would not be receiving their scheduled coupon payments.  It is

breach of the implied covenant of good faith and fair dealing, gross negligence, breach of fiduciary duty, and declaratory judgment.

ACA's other typicality argument also relates solely to Mr. Davis – not Mr. Kholmann. In this regard, ACA argues that Davis is not a typical class member because he bought his *Securities* at a "steep discount." Once again, ACA identifies a peculiar fact but fails to demonstrate how the fact prevents the representative's claim from being "typical" of the class. In this regard, ACA does not demonstrate how Davis' purchase price relates to any of his claims. ACA vaguely references "Mr. Davis' damages claim" and asserts that it is "radically different" because of his purchase price. In so doing, ACA feigns ignorance as to what Mr. Davis' "damages claim" actually is. As a plain reading of the amended complaint demonstrates, the "damages claim" focuses *only on what ACA was obligated to pay*. Whether Mr. Davis or any other member purchased the *Securities* at a discount or premium is irrelevant. ACA committed to pay the full maturity and interest payments not made by the Issuer – with no exceptions – and were paid to accept this exact risk.

Perhaps ACA's argument in this regard would have merit if the class were seeking damages based on individual purchase prices. In this action, however, it would not matter whether Mr. Davis purchased his *Securities* at a "steep discount," or whether he overpaid, or whether his *Securities* were gifted to him.[9] Mr. Davis is identically postured with all other class members simply because he owns the *Securities* that were insured by ACA.

---

further undisputed that, after Davis purchased his *Securities*, ACA confirmed that it had no intention of honoring any payments on any of the insured bonds because the "obligations under the policies are unenforceable." ACA has gone so far as to make its repudiation public by making the same affirmative statements several of its Quarterly Financial Statements.

[9] ACA's suggestion that a class representative should have paid a "typical" purchase price is ridiculous when considering that these bonds were traded on an open bond market in which prices fluctuate daily.

4. <u>Adequacy</u>

Under Rule 23(b)(4), "class representatives, counsel, and their relationship" must be adequate. In its response, ACA challenged only the adequacy of the class representatives themselves, suggesting that Mr. Davis and Mr. Kohlmann have demonstrated impermissible conflicts of interest with the other class members. Once again, ACA predicates its arguments on the individual lawsuit filed by Oppenheimer.

First, ACA misrepresents that Oppenheimer has taken [unspecified] "polar opposite" positions than the class members. There are no "polar opposite" positions taken in the two complaints.[10] After this class action was commenced, Oppenheimer simply filed a complaint that did not include all of the claims for relief sought by the Plaintiffs. ACA has not demonstrated how any position taken by Oppenheimer is "in conflict with the Plaintiffs" or otherwise prevents the Plaintiffs from adequately representing the class in this action.

ACA's second adequacy argument is even further afield. Without tying the point to any "conflict," ACA argues that the fact that certain other class members (including Oppenheimer) did not "join" this lawsuit somehow renders the putative class representatives inadequate. In this regard, ACA substitutes legitimate adequacy analysis with **speculation as to why other members have not been <u>selected</u> to represent the class**. Of course, the fact that one class member does not participate as a class representative has no bearing whatsoever on the adequacy of the members who do.[11]

---

[10] To the extent ACA is referring to the class complaint's claim of anticipatory repudiation, that red herring is addressed above. *See, supra*, n. 5.

[11] ACA misleads the Court in suggesting that the "bulk" of the class has "consciously decided not to participate in the class." Moreover, the fact that Oppenheimer is not being designated a class representative does not reflect a "conscious decision" not to participate in this class action as a member. The same is true for FMS Bonds and the Niles Partnership being <u>selected</u> as class representatives. Indeed, notwithstanding ACA's reckless pronouncement to the contrary, no class member has expressed any conscious decision not to participate in this class action. In fact,

**B.**     **ACA Has Failed to Demonstrate Inapplicability of Any Rule 23(b) requirement.**

1.     Risk of Inconsistent Adjudications

As ACA concedes, Rule 23(b)(1) is satisfied if "separate actions by individual class members would create a risk that . . . ACA would be subject to incompatible standards of conduct." As noted above, each of the class members owns *Securities* insured under a policy of identical language, and each member claims that ACA is obligated to make payments pursuant thereto. Of course, individual lawsuits seeking to determine the obligations of ACA under identical policy language and under an identical set of facts pose an obvious risk that ACA will be subjected to incompatible standards of conduct. **In one action, ACA could be required to honor its obligations and make payments, whereas in another action, ACA could be relieved of any liability under the Policies. In one action, ACA could be required simply to make payments when they become due. In another, ACA could be required to accelerate all payments as damages for anticipatory repudiation.** Such inconsistency is one of the primary reasons for the Rule 23's creation.

Amazingly, ACA argues that "in the unlikely event that ACA were found liable here but not in the New York action" it could "comply with both judgments," and that such compliance somehow would not subject ACA to incompatible standards or conduct. To be clear, ACA argues that it would *not be* inconsistent to require it to pay damages for breach of contract in one jurisdiction if another court were to find that it never had the contractual obligation in the first place. However, we now know that ACA has been ordered to pay by the *Oppenheimer Court.*

---

these entities and individuals actions suggest the opposite position. Even if any class member had made such an announcement, it would not be relevant – much less dispositive – as to the propriety of class certification.

ACA's arguments in this regard cannot be made with a straight face. The fact that Oppenheimer has filed a suit –and won– highlights the propriety of class certification. Without a class action, the various bondholders would have to present the exact same evidence to different courts in different jurisdictions and run the risk of obtaining differing results and inconsistent outcomes. Rule 23(b)(1) is satisfied.

### 2.         Appropriateness of Class-Wide Declaratory Relief

Under Rule 23(b)(2), class certification is appropriate "*if the party opposing the class has acted or refused to act on grounds generally applicable to the class*, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." ACA does not dispute that, in repudiating its obligations to make any payments under any of the Policies, it has "refused to act on grounds generally applicable to the class." Nevertheless, ACA opposes certification under Rule 23(b)(2) under the false position that "Plaintiffs' amended complaint does not seek a declaration of future liability . . ." **ACA completely ignores Count V of the Amended Complaint, which provides that "Plaintiffs seek a declaration of the rights of the class members and the liabilities of ACA under the Policies, and specifically, whether ACA has 'further liability or obligation' under the Policies, as ACA has denied."** This is the exact ruling issued against ACA by the *Oppenheimer Court.* "ADJUDGED and Declared that defendant ACA is obligated to provide coverage to plaintiffs for their claimed losses under the Secondary Market Insurance Policies…."[12] Rule 23(b)(2) is satisfied.

### 3.         Superiority and Predominance

Under Rule 23(b)(3), a class action is also appropriate if it is "superior to other methods of fairly adjudicating the case" and "common questions of law or fact predominate over

---

[12] See *Oppenheimer Order* attached to Dkt. #85 as Exhibit "2".

questions affecting individual class members." ACA does not identify any other method of fairly adjudicating the claims of the class members, preferring instead to simply point out that Oppenheimer filed an individual lawsuit (which it won) after this litigation was commenced. The fact that almost two years has passed and no other bondholder has filed suit, shows that a class action is superior to other methods –if not the only feasible method available. ACA cites two cases for the proposition that the existence of litigation initiated by other class members can disqualify a class case under 23(b)(3). Neither of ACA's cases are analogous.

In both *Becnel v. KPMG LLP,* 229 F.R.D. 592, 598 (W.D. Ark. 2005) and *Steinmetz v. Bache & Co., Inc.,* 71 F.R.D. 202, 205-06 (S.D.N.Y. 1976), the class actions were initiated *after* a plethora of individual actions had been filed by class members seeking the same relief. *See Becnel*, 229 F.R.D. at 598 (class action was eighteenth lawsuit and followed three years of individualized litigation); *Steinmetz v. Bache & Co., Inc.,* 71 F.R.D. at 205-06 (class action was "the twentieth action instituted since the failure of the bond issue in late 1973 . . . [N]ineteen [prior] lawsuits were commenced . . . in various state and federal courts . . ."). Unlike *Becnel* and *Steinmetz*, this case was the first filed on the subject, the only class action filed to date, and the only action that seeks declaratory relief and damages on behalf of the entire class. Indeed, there is no multitude of individual actions pending against ACA, despite the fact that ACA repudiated its obligations almost two years ago. Given the impracticability of litigating $5,000 individualized claims, the absence of other actions is not surprising, and demonstrates that a class action is more than simply a "superior" method of adjudicating the case; it is the *only* practical method of determining the rights of the class members.

Finally, in suggesting that there is no predominance of common questions of law or fact, ACA incorporates its arguments that challenge commonality and typicality under Rule 23(a).

Aside from the arguments that are addressed above, ACA also suggests that choice of law concepts impede certification. However, as ACA has repeatedly reminded the Court, the Policies at issue provide that New York law governs their interpretation, and ACA has relied solely on New York law in support of its motion to dismiss this action. Plaintiffs have similarly relied on New York law in opposing ACA's motion to dismiss, and as the *Oppenheimer Court* found the claims are cognizable and supported thereunder. Plaintiffs submit that the claims asserted in the amended complaint are uniformly recognized as actionable throughout the country and have no objection to the application of New York law to the claims of the class.

There is no serious dispute that common questions of law and fact predominate in this action. The issues of law and fact concerning the construction of ACA's insurance policies, its conduct, the relief sought, ACA's present and future obligations, its liability to the class members, are "class" issues. Comparatively, neither of the class representatives seek any relief or assert any claim that is "individual," or applicable only to them. Rule 23(b)(3) is satisfied.

## CONCLUSION

Plaintiffs have demonstrated satisfaction of each of the class action requirements under Rule 23(a). Though only one is required, Plaintiffs have also satisfied each of the class action requirements under Rule 23(b). Accordingly, Plaintiffs' motion for class certification should be granted. In the alternative if the class is not certified, then Plaintiffs seek leave to permissively join additional individuals and entities as named plaintiffs to this action.

RESPECTFULLY SUBMITTED, this 11th day of January, 2013.

/s/ *Jesse Mitchell, III*
Jesse Mitchell, III (MS Bar No. 103020)
*Attorneys for Plaintiffs*

OF COUNSEL:

THE MITCHELL FIRM, PLLC
774 Avery Blvd. N., Ste G.
Ridgeland, Mississippi 39157
Telephone:      769.300.0462
Facsimile:      601.510.1981
Email:          jmitchell@themitchellfirms.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 11th, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                      */s/ Jesse Mitchell, III*
                                      JESSE MITCHELL, III