UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES E. DAVIS

PLAINTIFF

vs. CAUSE NO. 3:11-CV-093-MPM-SAA

ACA FINANCIAL GUARANTY CORPORATION

DEFENDANT

---

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

ACA's Actions Following the *Oppenheimer* Order

As this Court is well aware, and has addressed in several orders, ACA's rights and obligations with respect to its bondholders, including the plaintiffs herein, revolve around and are determined by New York law. Until recently, that law was uncertain. However, on September 3, 2013, the New York Supreme Court, Appellate Division, First Department issued an order in Oppenheimer AMT-Free Municipals, et al. v. ACA Financial Guaranty Corp. ("Oppenheimer") that decided critical issues of New York law that apply in this case. This Court knows that ACA has asked this Court on a number of occasions to stay this case or otherwise withhold ruling so that those issues could be determined by the appropriate courts in New York, and this Court has recognized the advantages and even necessity of waiting until the New York courts had ruled and determined the questions of applicable law.[1]

[1] "[I]f a single court is to decide the unresolved legal issues in this case, then that court would preferably be one with expertise in the areas of law at issue." (Doc. 58 at 3). The Court's "inclination is to follow the lead of the New York court regarding the issues in this case, since they turn largely upon an interpretation of the law of that state." (*Id*). "It appears to this court that the instant case is something of a sideshow to the 'main event' litigation in *Oppenheimer*". (Doc. 89 at 2). "It is thus clear that, at least on a dollar basis, the *Oppenheimer* lawsuit is greatly

On September 3, 2013, New York Appellate Division issued its ruling in Oppenheimer ("Order"), and ACA promptly provided a copy of that Order to plaintiffs' counsel in this case. Although ACA has the right to petition the Court of Appeals, New York State's highest court, to hear an appeal of the case, ACA decided to seek no further appeal of that determination of New York law, and on September 12, 2013 ACA notified plaintiffs' counsel of its decision to honor all of its obligations under the Policies and related documents in accordance with the Oppenheimer Order. This meant that, with respect to the plaintiffs in this case, ACA would be making net payments in arrears to the extent there had been events of Nonpayment on CUSIPs 20786LCS8 (current interest bonds with payments due each January 1 and July 1) and 20786LCU3 (a capital appreciation bond that matured on January 1, 2012); and future net payments on the CUSIP for which there would be future interest, and principal, payments (CUSIP 20786LCS8) and the CUSIPs for which there would be future principal payments (CUSIP nos. 20786LCV1, 20786LCW9, 20786LCX7 and 20786LCY5). Accordingly, the bondholders will have been brought current and assured of future timely payments under the Policies.

**Summary of Motions**

This may seem to be a somewhat unusual motion. But in light of the procedural history, it makes perfect sense.

First, ACA moves for a summary declaratory judgment to be taken *against ACA* in the extant matter before the Court, in favor of the plaintiffs, to the effect that this Court adopts the New York Appellate Division's September 3, 2013, Oppenheimer decision *mutatis mutandis*. —

predominant over this one, and, arguably more importantly, that case is being decided by New York state courts which have both the expertise in and the authority to create new law dispositve of the novel issues in this context." (*Id*). "All parties agree that New York state law controls the instant dispute, and this court has previously expressed its strong inclination to follow the lead of the New York courts in resolving the legal issues in this case." (*Id*).

namely, that ACA is obligated to provide coverage under the terms of the financial guaranty insurance policies as provided in that decision, with the only change being that this Court's declaratory judgment is also deemed to apply to CUSIP nos. 20786LCS8 and 20786LCU3, in addition to the four CUSIPs already covered by the Oppenheimer decision (nos. 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5). There would be no award of costs, and all costs will be borne by the party who has incurred them. (The form of this portion of the judgment is set out in Exhibit A to the Motion.)[2]

Second, at least three of plaintiffs' contract-derived claims (breach of contract, anticipatory breach of contract, and breach of the implied duty of good faith and fair dealing) have been rendered moot or non-actionable and are also addressed by this summary judgment motion.

Third, because the bondholders, including the plaintiffs, will have been brought current and assured of future timely payments under the Policies, there are no damages for plaintiffs to recover. Plaintiffs have suffered no damages as attorneys' fees and expenses related to this action are not recoverable under the law of New York (or the law of Mississippi). Thus, summary judgment should be entered against plaintiffs on all their claims.

Finally, ACA is moving separately to dismiss certain of plaintiffs' claims because they fail as a matter of law.[3] The determination of these claims does not require an analysis or consideration of documents or information outside the pleadings and the documents central to the pleadings and therefore can be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). In the event

---

[2] This ACA action and the declaratory judgment will apply to all of the other bondholders of these two CUSIPs, regardless of whether they are parties. This is appropriate, because ACA's decision and action resulted from the determination of applicable law in the Oppenheimer Order, not anything related to this lawsuit.

[3] ACA's Motion to Dismiss Plaintiffs' claims for breach of fiduciary duty and gross negligence is filed contemporaneously with this Motion.

the Court determines that motion does require the consideration of such information outside the pleadings, it may also be considered under Fed. R. Civ. P. 56.

**I. Standard of Review on a motion for summary judgment.**

A motion for summary judgment should be granted when the movant shows that “there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.” Fed. R. Civ. P. 56(a). As the Supreme Court has explained, facts are to be viewed in the light most favorable to the nonmoving party “only if there is a ‘genuine’ dispute as to those facts.” *Scott v. Harris*, 550 U.S. 372, 380 (2007). One opposing a motion for summary judgment “must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no ‘genuine’ issue for trial.” *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The nonmoving party “must come forward with ‘specific facts showing that there is a *genuine issue for trial*.’” *Id.* (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). A fact issue is “material” only if a reasonable jury could return a verdict for the non-moving party based on the evidence adduced. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A non-moving party to a motion for summary judgment is not entitled to rely on general allegations or denials, but must come forth with significant probative evidence demonstrating the existence of a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Summary judgment is not foreclosed simply because a factual dispute exists. *Liddell v. Northrop Grumman Shipbuilding, Inc.*, 2011 WL 6781012, at *2 (S.D. Miss. Dec. 27, 2011) (citing *Willis v. Roche Biomedical Labs., Inc.*, 61 F. 3d 313, 315 (5th Cir. 1995)). The disputed

fact is only material if it "might affect the outcome of the lawsuit." *Id.*; *see also Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).

## II. Entry of Summary Declaratory Judgment Against ACA Eliminates the Claim for Breach of Contract.

ACA has complied with New York law, which governs its contract with the plaintiffs,[4] as determined and announced September 3, 2013, by the New York Appellate Division in the Oppenheimer decision. Upon receiving the Order in Oppenheimer, ACA notified the Court and counsel for the sole plaintiff[5] of the decision. Furthermore, on September 12, 2013, ACA notified plaintiffs' counsel and the court of ACA's decision not to seek appeal to a higher New York court, but to honor the Policies in accordance with New York law as determined and announced by the New York Appellate Division in the Order in Oppenheimer. ACA also advised counsel for the plaintiff bondholder(s) that ACA was sending notice of ACA's decision to pay and actions to all bondholders, and ACA sent that counsel the Custodian's Notice that was going out to all bondholders. See Decl. of Clark, ¶¶ 2, 3 and 4 (and exhibits thereto).[6]

This judgment gives plaintiffs all they are entitled to receive under the contracts, i.e., the Policies. Therefore nothing remains of their claim for breach of contract.

## III. Plaintiffs' claims for anticipatory repudiation (breach) of contract and breach of implied duty of good faith must be dismissed.

---

[4] The Policy is governed by New York Law, and thus New York substantive law applies to the issues discussed herein. *See Joiner v. Performance Ins. Servs., Inc.*, 2010 WL 5209391, at *4 (S.D. Miss. Dec. 16, 2010) ("under Mississippi choice of law rules, a contract's choice of law provision is generally enforceable").

[5] As of September 3, 2013, the only Plaintiff before this Court was James Davis.

[6] Although it is not essential to the granting of this motion, prior to the determination and announcement of the applicable law by the New York Appellate Division in the Order in Oppenheimer, defendant ACA had acted in good faith in defending the litigation in the Oppenheimer case and in this case based upon a reasonable interpretation of applicable New York law. ACA's legal position and defenses are set out in ACA's answer and affirmative defenses to the previous complaints in this action, and in the other court papers in this case and in the court papers in the Oppenheimer case.

Plaintiffs assert at least two other claims, both tied inextricably to the breach of contract claim, and which cannot stand without that contract claim: anticipatory repudiation (breach of contract) and breach of implied duty of good faith and fair dealing. Under the applicable law, and in light of the Oppenheimer Order, ACA's decision and actions (including the declaratory judgment to be entered), both of these claims do not survive and must be dismissed.

**A. The Claim of Anticipatory Repudiation [Breach] Cannot Stand.**

While a party's good faith interpretation of a contract clause – even if in error – may give rise to a breach of contract, it does not give rise to a repudiation. *See, e.g., Jacobson v. Metro. Prop. & Cas. Ins. Co*., 2010 U.S. Dist. LEXIS 135564, at *11-12 (N.D.N.Y. Dec. 21, 2010) ("While mere refusal based upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of a contract provision may constitute a breach of contract, it does not alone amount to a renunciation or repudiation of the policy."). As a result, Plaintiffs' claim for anticipatory repudiation is ripe for dismissal.

Under settled New York law, a denial of coverage by an insurer based on its interpretation and application of the express terms of the policy of insurance, including a lack in the policy of express waivers to defenses, is not a repudiation. Rather, the insurer is "standing on the policy," not repudiating it, as explained in *Jacobson v. Metro. Prop. & Cas. Ins. Co*., 2010 U.S. Dist. LEXIS 135564, at *11-12 (N.D.N.Y. Dec. 21, 2010).

The Policy itself expressly provides that the amounts due under the Policy cannot be accelerated without ACA's express consent. (The New York Appellate division expressly recognized this in the Oppenheimer Order at 11: "Because defendant [ACA] has the sole right to accelerate payment for the losses to plaintiffs occurring as a result of issuer nonpayment under the original bonds, defendant has control over when it makes payments…."). Even absent such

contract language, it is well-established in New York law that the doctrine of anticipatory repudiation is limited to bilateral contracts, and is inapplicable to any contract (like the Policy) that is solely for the payment of money at a future time. *See, e.g., Kelly v. Sec. Mut. Life Ins. Co.*, 186 N.Y. 16, 20 (1906); *Sholom & Zuckerbrot Queens Leasing Corp. v. Forate Realty Corp.*, 286 N.Y.S.2d 364, 366 (N.Y. App. Div. 1967); *Medaris v. Lionel Corp.*, 268 N.Y.S.2d 936, 937 (N.Y. App. Div. 1966); *Wallace Clark & Co. v. Acheson Indus., Inc.*, 422 F. Supp. 20, 23 n.6 (S.D.N.Y. 1976).[7]

**B. The claim of Breach of Duty of Good Faith and Fair Dealing Cannot Stand.**

The purported factual predicate for this claim is that ACA allegedly sat idly by during the Bankruptcy Action when it was under a purported duty to act in the interests of Plaintiffs and preserve Plaintiff's right to sue ACA. (Cplt. ¶¶ 144-146).

First, this claim fails because it is dependent upon the existence of a breach of contract. Because ACA is honoring the Policies in accordance with Oppenheimer, no such claim for breach of contract can remain. *See e.g., Gross v. Empire Healthchoice Assur., Inc.*, 819 N.Y.S.2d 210, 210 (N.Y. Sup. Ct. 2006) ("[A] claim for breach of the implied covenant of good faith and fair dealing must fail because it cannot substitute for an unasserted or unsustainable breach of contract claim."); *Richstone v Everbank Reverse Mtge. LLC*, 910 N.Y.S.2d 408, 408 (N.Y. Sup. Ct. 2009) ("It is axiomatic that a claim for breach of the covenant of good faith and fair dealing cannot survive absent a valid breach of contract claim."); *Triton Partners LLC v Prudential Sec. Inc.*, 752 N.Y.S.2d 870, 870 (N.Y. App. Div. 2003) (upholding the dismissal of a covenant of good faith and fair dealing claim where "it was merely a substitute for a nonviable breach of contract claim"); *Empire State Bldg. Assocs. v Trump*, 669 N.Y.S.2d 205, 205 (N.Y.

[7] The summary judgment must be entered against plaintiffs on this claim for the *additional* reason set out in Part III, namely, the lack of cognizable damages.

App. Div. 1998), *dismissed in part, denied in part* N.Y.S.2d 586 (1998) ("The causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing were properly dismissed on the grounds that the former fails to adequately allege any breach of contract, and the latter merely duplicates the former.").

Second, this claim fails for the same reason that Plaintiff's tort claims fail: (a) ACA had no right – much less any contractual or legal duty – to act as Plaintiff's agent and take control of the Bankruptcy Action; and (b) in any event, the facts alleged by Plaintiff – even if sustainable (***which they are not***) only set forth a claim for a breach of the express terms of §§ 4.03(b)(iii) and 4.07 of the Custody Agreement – not a breach of any legal or implied duty.[8]

## IV. Plaintiffs Have No Damages to Recover, and Judgment Must Be Entered on These and Plaintiffs' Other Claims.

ACA announced and notified both the Court and plaintiffs' counsel, on September 12, 2013 of its decision not to seek appeal to the a higher New York court, but rather to honor the Policies in accordance with New York law as determined and announced by the New York Appellate Division in the Oppenheimer Order. ACA also notified counsel for Mr. Davis, advising him of ACA's decision to follow the law of the Oppenheimer Order and to make all payments due under the Policies, both in arrears (with interest) and prospectively. *See* Decl. of Clark, at ¶ 3.

On September 24, ACA sent a Notice to the Custodian for the policies who caused the Notice to be distributed to all beneficial holders of ACA's Policies. Such notice advised them of ACA's decision to follow the law of the Oppenheimer Order and to make all payments due under the Policies, both in arrears (with interest) and prospectively. ACA advised plaintiff's counsel

[8] The deficiencies in plaintiffs' tort claims are discussed in the contemporaneous motion to dismiss certain of plaintiffs' claims. Moreover, summary judgment must be entered against plaintiffs on this claim for the *additional* reason set out in Part III, namely, the lack of cognizable damages.

on September 12 that these notices would be sent, and then on September 25 that they had been sent. *See* Decl. of Clark, at ¶¶ 3 and 4.

ACA now seeks to have the Court enter a judgment adopting the New York Appellate Division's September 3, 2013 Oppenheimer decision *mutatis mutandis*, with the only exception being to expand its applicability to CUSIPs 20786LCS8 and 20786LCU3.[9] The bondholders, including (but certainly not limited to) the plaintiffs, are receiving all they are entitled to receive under the Policies. There is therefore nothing left for them to recover.

Second, all but one of the plaintiffs, James Davis, joined the lawsuit *only after* ACA notified plaintiff's (now plaintiffs') counsel of ACA's decision (1) not to seek appeal to a higher New York court and (2) to honor the Policies in accordance with New York law as determined and announced by the New York Appellate Division in the Order in Oppenheimer.[10] ACA also had notified counsel for the sole plaintiff, and now for all the plaintiffs, that notices were being sent to all bondholders, advising them of ACA's decision to follow the law of the Oppenheimer Order. *See* Decl. of Clark, ¶ 3. Leave to add these plaintiffs was not even requested until September 18, 2013, *six days after* plaintiffs' counsel was advised of ACA's intention to follow the Oppenheimer Order and make all payments under the Policies in accordance with that decision (as applied to all CUSIPS).

*Not only* are these plaintiffs (all but plaintiff Davis) receiving all they are entitled to receive under the Policies--and can have no cognizable or compensable injury or damage--*they knew they were going to be receiving all of this before they filed suit*. A plaintiff cannot claim to

[99] While the practical legal application of the *Oppenheimer* extends to the holders of all six CUSIPS, the judgment included only the four CUSIPs represented by the plaintiffs in that action, 20786LCV1, 20786LCW9, 20786LCX7, and 20786LCY5.

[10] As noted above, the *Oppenheimer* Order did not apply to the bonds of the two CUSIPs held by the plaintiffs. But ACA had notified plaintiffs' counsel that ACA would honor the Order as to those two CUSIPs as well, and the notices that went to all bondholders advised of that as well. *See* Decl. of Clark, ¶¶ 3 and 4.

be damaged when he/she/it did not even file suit until after the target defendant (a) had agreed to accept (and not appeal) the new determination of law and (b) had announced its decision to pay all policy holders (including non-plaintiffs, which non-plaintiffs comprise over [90%] of policy holders by aggregate amount of policy coverage).

Third, as noted, the plaintiff (or even new plaintiffs) in this lawsuit did not cause any change of position by ACA or effect in any way the change in the application law that led to ACA's decision. From the start, ACA has asked this Court and the plaintiff to wait for the determination of applicable New York law by appropriate New York courts in their cross-motions for declaratory judgment; and, when that law was determined, ACA promptly took these actions with respect to *all* bondholders. So, these plaintiffs cannot be entitled to recover "damages" by doing nothing more than the many non-plaintiff bondholders who did not join a lawsuit that had no effect after ACA already represented that it would follow the direction of the New York courts and announced law.

## V. Plaintiffs cannot recover attorney's fees and therefore cannot prove they are entitled to any damages as a result of ACA's actions.

### A. Plaintiffs' have suffered no damages under their breach of contract claim.

As noted above, ACA is paying in arrears the entire amount owed under the Policies and has expressed its intention to honor the Policies in the future, including by asking this Court to enter a judgment to that effect. Because of this, Plaintiffs cannot prove that they are entitled to any damages whatsoever arising from this lawsuit.[11] "It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its

[11] In addition, as discussed above in Part III, and in the accompanying Motion to Dismiss and supporting memorancum, all of the plaintiffs except the original Mr. Davis joined the lawsuit only *after* ACA had notified counsel for plaintiff(s) on September 12 of ACA's intentions to accept the September 3 *Oppenheimer* Order and to pay all bondholders pursuant to the Policies. So they cannot have any damages.

rights under the policy." *N.Y. Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 324, 639 N.Y.S.2d 283, 292 (1995). *See also American Mut. Fire Ins. Co. v. Beards*, 453 N.Y.S.2d 569 (N.Y. Sup. Ct. 1982) ("As a general rule, New York does not allow a litigant to recover damages for his expenses in the prosecution or defense of an action.").

Because Plaintiffs cannot present any proof of damages, they are not entitled to recovery under New York law for their breach of contract claim.

**B. Plaintiffs' are not entitled to extra-contractual damages.**

As discussed *supra* at Section II B, Plaintiffs are not entitled to extra-contractual damages because they are not entitled to any damages for breach of contract. Furthermore, ACA has acted in good faith at all times representing that it would comply with the decision of the New York court and announced law. "New York has adopted a strict standard for extra-contractual damages in first-party insurance actions." *N.Y. Univ.*, 87 N.Y.2d. at 316. Plaintiffs must then prove (1) ACA's "conduct is actionable as an independent tort", (2) "the tortious conduct is of an egregious nature," (3) "the egregious conduct is direct to the plaintiff[s]", and (4) "the egregious conduct is part of a pattern directed at the public generally." *Id.*; *see also Rocanova v. Equitable Life Assur. Soc'y*, 83 N.Y.2d 603, 613, 634 N.E.2d 940, 943, 612 N.Y.S.2d 339, 342 (1994)).

Plaintiffs have not and cannot satisfy this strict standard and as such, ACA is entitled to summary judgment on this claim.

**C. Plaintiff's are not entitled to damages under their theory of anticipatory repudiation.**

It is well established in New York that the doctrine of anticipatory repudiation has no application to a contract for the payment of money at a future time. See, *e.g.*, *Kelly v. Sec. Mut. Life Ins. Co*., 186 N.Y. 16, 20 (1906) ("The plaintiff had no right to sue for damages before the time for performance by the defendant had arrived. He had sustained no damages, for the policy

was still in force, and if it refused to recognize its obligation thereunder he could compel recognition by a judgment exactly adapted to the situation"). "[A]n attempt to repudiate such a contract does not make it due." *Kelly v. Sec. Mut. Life Ins. Co., supra*, 186 N.Y. at 19. See also, *Sholom & Zuckerbrot Queens Leasing Corp. v. Forate Realty Corp.*, 286 N.Y.S.2d 364, 366 (N.Y. App. Div. 1967) ("The theory of anticipatory breach has no application to this contract for periodic payment of money"); *Medaris v. Lionel Corp.*, 268 N.Y.S.2d 936, 937 (N.Y. App. Div. 1966) ("The doctrine of anticipatory breach of an executory contract 'has no application to contracts for the payment of money only, in installments or otherwise'").

## Conclusion

For the reasons set forth above, ACA is entitled to summary judgment on Plaintiffs' claims for breach of contract, anticipatory repudiation and breach of the implied duty of good faith and fair dealing. As such, these claims should be dismissed with prejudice. Further ACA is entitled to an entry of judgment in accordance with Oppenheimer, *mutatis mutandis*, in accordance with Exhibit A.

Respectfully submitted, this the 4 day of October, 2013.

/s/David W. Clark___________________
David W. Clark (MBN 6112)
Erin Saltaformaggio (MBN 103999)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
*Attorneys for Defendant, ACA Financial Guaranty Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2013, I filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ David W. Clark
OF COUNSEL