UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**JAMES E. DAVIS, ET AL.**     **PLAINTIFFS**

vs.     **CAUSE NO. 3:11-CV-093-MPM-SAA**

**ACA FINANCIAL GUARANTY
CORPORATION, and
JOHN DOES One through Ten**     **DEFENDANTS**

### ACA FINANCIAL GUARANTY'S RESPONSE TO PLAINTIFFS' SEVERAL MOTIONS TO STAY, TO DEFER OR TO CONTINUE THE COURT'S CONSIDERATION OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant ACA Financial Guaranty Corp. ("ACA") respectfully requests that the Court deny plaintiffs' motions to stay and to postpone consideration of ACA's pending Motion for Summary Judgment and Motion to Dismiss Certain of Plaintiffs' Claims, set for hearing by the Court on October 30 (Doc. 118). Defendant respectfully submits that the plaintiffs should be required to respond promptly to these motions.

**I.**     **The Decision in *Oppenheimer* and ACA's Actions and Motions.**

As this Court is well aware, both the parties and the Court have been awaiting the decision by the New York Appellate Division in <u>Oppenheimer v. ACA</u>[1] and discovery had been stayed in this case pending its arrival. The decision came much later than expected, in September 2013. However, there is absolutely no discovery needed in order for Plaintiffs to appropriately respond to ACA's pending motions. Instead, the bases of defendant's motions are matters of law. ACA filed a motion for summary judgment with respect to certain of Plaintiffs'

---

[1] The Oppenheimer Funds are the "big dog" in these disputes. They hold insurance policies covering 84% of the par amount of Connector bonds, i.e., $37 million of the $44 million total par amount of Connector bonds whose payment was insured. The plaintiffs in this case hold policies covering only about six percent (6%), or about $2.5 million. Plaintiffs hold five out of the six insured CUSIPS, including three out of four of the CUSIPs held by the Oppenheimer Funds.

1

claims simply because it addresses ACA's decision after *Oppenheimer* to not appeal further, to abide by the decision, to honor the Policies as directed by *Oppenheimer*, and to pay, in arrears and going forward, as required by the decision in *Oppenheimer*. Indeed, ACA moved for the entry of a summary declaratory judgment to just that effect in its motion for summary judgment. In order to seek such an order, ACA needed to attach certain documents, such as correspondence reflecting ACA's announced intentions, which brought that motion into the realm of F.R.C.P. 56.

That declaratory judgment provides plaintiffs the exact relief they seek on the breach of contract claim (Count I). Such a judgment would require defendant ACA to pay interest and principal when due on the Policies, including those held by the plaintiffs, consistent with the order of the New York appellate division in *Oppenheimer*.[2]

Once such relief is granted and the breach of contract claim is removed, the remainder of plaintiffs' claims cannot be sustained, *as a matter of law*. As such, those claims that directly rely on the breach of contract claim—anticipatory breach of contract (Count II) and breach of duty of good faith and fair dealing (Count III)—which are so directly attached to the breach of contract claim, should be dealt with in the same motion.

Similarly, the defendant's Motion to Dismiss Certain of Plaintiffs' claims—gross negligence (Count IV) and fiduciary duty (Count V)—should also be decided as matters of law. The combination of motions may be unusual, but the upshot is simple: ACA has been ordered

---

[2] The plaintiffs make some attempt to distinguish the Policies and CUSIPs covered by the *Oppenheimer* decision and the Policies and CUSIPs held by the plaintiffs. In addition to holding a number of the CUSIPs held by the *Oppenheimer* plaintiffs and thus directly covered by the New York Order, plaintiffs own two other CUSIPs not held by the *Oppenheimer* plaintiffs and therefore rightfully not included in that order. However, the wording of all the Policies is the same and the Obligations whose payments they guaranteed were the same: 1998 Connector bonds of varying maturities. To turn mere coincidence of ownership into a distinction having any basis in law is a fallacy. And even for the CUSIPs held by plaintiffs and not held by Oppenheimer, LCS8 and LCU3, **less than half of such CUSIPs are held by plaintiffs** – meaning that plaintiffs' request that ACA willingly withdraw its payments in arrears and its promise to pay on such CUSIPs in the future (response at p 8) opens ACA up to breach of contract claims by the majority holders of each such CUSIP, based on the New York order.

by the New York court to pay on the Policies and ACA is paying, and agrees to pay going forward, the maximum it could ever be required to pay: the difference between payments that were owed on the 1998 Connector Bonds and the amounts actually received by policy holders from Connector.

The rest of the claims, asserting a breach of various duties that somehow damaged ACA, must fail. *Given* plaintiffs' complaint (including the documents incorporated by reference in the complaint, which may be considered on a motion to dismiss or motion for summary judgment), together with ACA's action and proposed declaratory judgment, the law requires the dismissal of all of plaintiffs' remaining claims. Simply, given those, *under no set of facts* can plaintiffs avoid judgment as a matter of law.

Because Plaintiffs do not need any discovery in order to respond to these motions—which can be decided based on the record before the Court, including ACA's announced intention (and proposed judgment) to abide by *Oppenheimer*—Plaintiffs should be compelled to timely respond to ACA's pending dispositive motions.

**II.     Plaintiffs' Flailing Attempts to Avoid the Inevitable**

In their motions to stay and to defer, and the memoranda in support, plaintiffs go far afield to avoid addressing the critical issues of law raised by ACA's motions. Plaintiffs do not raise any legitimate need for discovery in order to adequately respond to these pending motions. As noted, given the complaint and the documents it references and incorporates, plaintiffs could elicit or provide no set of facts that would save their claims.

For example, plaintiffs say they somehow need discovery to see if "sinking fund" payments may not have been made by ACA. This "throw everything at the Court and hope something sticks" effort by plaintiffs *has absolutely nothing to do with the complaint or this lawsuit, much less any need for discovery.*

3

As an initial matter, plaintiffs make no reference whatsoever to sinking funds in their complaint or discovery requests. Plaintiffs cannot point to what this has to do with the Policies, or ACA's obligations under the Policies. And that's for good reason; there is no "sinking fund" in the Policies (the two-page Policies are exhibits to the complaint) and ACA does not pay into any "sinking fund." As plaintiffs' exhibits show, ACA certainly does not make, and certainly could not have missed making, any "sinking fund payments to the Plaintiffs." (Plaintiffs' Memorandum at p. 13).

Rather, this is merely an attempt to concoct a factual dispute out of a single email from an irrelevant time period. Exhibit AA, a short email dated January 5, 2010, was written at a time when ACA was paying on the Policies and 18 months before ACA made the decision to deny coverage; its timing thus also makes it of dubious factual relevance.

Finally, on its face, the email has nothing to do with plaintiffs' claims. In the email, the Custodian stated that it "drew on ACA's policy," meaning that ACA paid its claim in full in respect of shortfalls by Connector on the recent January 1, 2010 bond payment date. The Custodian stated further that ACA "think(s) there was more due than the interest [the Custodian] requested." (Exhibit AA, p. 1) The "sinking fund," referenced on the second page apparently was a fund *the Issuer*, Connector, was required to maintain. Therefore, consistent with ACA's right of subrogation when it makes a full claim payment, ACA was asking the Bond Trustee about money that *ACA* might be able to recover *for itself* in subrogation to the full claim payment it had just paid out to the policyholders. Thus, ACA's inquiry to recoup its payments following a full claim payment it made in January 2010[3] bears no relationship whatsoever to plaintiffs' claims against ACA.

---

[3] Nowhere have plaintiffs alleged that ACA failed to make claim payments due January 1, 2010. Rather, their allegations cover claim payments due July 1, 2011, January 1, 2012, July 1, 2012, January 1, 2013 and July 1, 2013, which are the payments ACA has made in arrears with interest following the order of the New York Appellate Division in *Oppenheimer*.

Likewise, plaintiffs suggest some need for discovery to see if ACA has paid what it is obligated to pay under the Policies. Of course, as the Policies and Custody Agreement (exhibits to the complaint) demonstrate, *ACA simply pays what the Custodian, the agent for the insured policyholders, tells ACA to pay.*[4]

Plaintiffs' other purported needs for discovery are equally misguided and smack of desperation. Given the pleadings and incorporated documents, and the *Oppenheimer* decision and ACA's action of abiding by it with respect to past payments, and stated intention to abide by it going forward, **plaintiffs cannot maintain their claims under any set of facts**. Defendant ACA has shown in its motions how, as a matter of law, plaintiffs cannot sustain their claims. Plaintiffs should be required to respond promptly to those motions and show why they think they can survive dismissal.

### III.  Stays and Timing of Discovery

Counsel for ACA must comment briefly on plaintiffs' counsel's misguided accusations of delay, bad faith, etc. in responding to discovery. First, the parties and the Court have been waiting a long time for the decision from New York Appellate Division. As plaintiffs acknowledge, discovery has been stayed pending the issuance of that decision. The decision arrived later than expected. Originally, it was anticipated in February 2013, then June 2013. The decision was finally handed down on September 3, 2013. ACA timely notified both Plaintiffs' counsel and the Court of this decision.

---

[4] Policy, p. 1: "'Notice of Nonpayment' shall mean telephonic or electronic notice…*from the Custodian to the Insurer*, which notice shall specify…(iii) the Amount Due for Payment and (iv) the Due Date of Payment." (Second paragraph, emphasis added.) Then, "Upon receipt of Notice of Nonpayment from the Custodian, the Insurer, …will deposit the Amount Due for Payment into a segregated account to be held by the Custodian." (Third paragraph.) The Notices of Nonpayment are referenced in and incorporated into the complaint. An example of such a Notice from the Custodian setting forth the Amount Due for Payment, which in each case has been the amount ACA paid in arrears, with interest, has been attached by plaintiffs in prior filings and as exhibits (5-8) to David Clark's Declaration. (For the convenience of the Court, an example of such a Notice, as well as the complaint and exhibits, all of which already are in the record via plaintiffs' complaint) is attached to this Response.

In early June 2013, the Court conducted a case management conference and a scheduling order was entered. Still, the decision from New York did not arrive. When the decision was issued September 3, 2013, ACA announced its decision to comply. As plaintiffs' counsel was aware, this announcement by ACA almost certainly meant these plaintiffs' claims would go away. As plaintiffs' counsel also is aware, responding to plaintiffs' very broad document requests has been quite a task for ACA. ACA has hundreds of thousands of potentially relevant documents stored electronically, and searching these records has been a difficult task.

In the fall of 2012, the parties agreed to limit discovery of these records to those relating to class action certification; still, the searches pulled up huge volumes of records that took several lawyers over a month to search or review. And that limited set of requests was much more limited than the remaining requests. The latest attempt by ACA to pull records by certain limiting search terms pulled up over 120,000 records.

Upon a lifting of the stay with the decision, ACA's counsel have advised plaintiffs' counsel of the task of searching and limiting the search, and recently, as in 2012, have asked his assistance in narrowing his requests.[5]

In any event, while ACA believes that plaintiffs' claims will be dismissed upon consideration of the pending motions by the Court, and that plaintiffs need absolutely no discovery in order to respond to the pending motions, ACA nonetheless has been actively working to produce the records requested by plaintiffs. (With the over-breadth of plaintiffs' requests, this request for production requires a search and review of a vast number of electronic records, a task that can be made reasonable, permissible, only by the narrowing of the request and search by agreement on search analysis and terms.).

---

[5] His "narrowing" of his discovery requests in September was just to say he was "withdrawing" the ones defendant already had responded to, as part of the class certification discovery.

Respectfully submitted, October 21, 2013.

/s/David W. Clark
David W. Clark (MBN 6112)
Erin Saltaformaggio (MBN 103999)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
*Attorneys for Defendant, ACA Financial Guaranty Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2013, I served the foregoing on Mr. Jesse Mitchell, counsel for the plaintiffs, by electronic mail and U.S. Mail, as well as providing notice by filing in the court's electronic filing system.

/s/ David W. Clark
OF COUNSEL