UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JAMES E. DAVIS, ET AL.

          PLAINTIFFS

vs.          CAUSE NO. 3:11-CV-093-MPM-SAA

ACA FINANCIAL GUARANTY
CORPORATION, and
JOHN DOES One through Ten          DEFENDANTS

**DEFENDANT ACA FINANCIAL GUARANTY CORPORATION'S
ANSWER TO SECOND AMENDED COMPLAINT**

The Defendant, ACA Financial Guaranty Corporation ("ACA"), states the following as its response to the Plaintiff's Second Amended Complaint ("complaint"):

PARTIES

1. - 34. ACA lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraphs 1 through 34.

35. ACA denies that it is a "foreign" insurance company; ACA admits the remaining allegations of paragraph 35.

36. No response is required to paragraph 36: plaintiffs have not identified any John Doe defendant. To the extent any answer is required, ACA denies the allegations of paragraph 36.

JURISDICTION AND VENUE

37. ACA admits the allegations of paragraph 37 on information and belief, now that the admittedly non-diverse plaintiff has been dismissed.

38. ACA denies that a substantial part of the events or omissions giving rise to the claims alleged occurred in this District or that venue is proper in this District; ACA admits that it is subject to personal jurisdiction in this District; and ACA lacks knowledge or information

sufficient to form a belief about the truth of the remaining allegations of paragraph 38, i.e., whether plaintiff John E. Davis resides in this District.

## FACTS

39. To the best of its information and belief, based solely on information in legal documents relating to the Connector financing in 1998, ACA admits the allegations of paragraph 39.

40. To the best of its information and belief, based solely on information in legal documents relating to the Connector financing in 1998, ACA admits the allegations of paragraph 40.

41. ACA admits that the Original Bonds were issued on or about February 11, 1998, and that the five of those listed in paragraph 41, which were in addition to the many others issued (and listed on the inside of the official statement relating the issuance of the Original Bonds), had the five CUSIP numbers listed in paragraph 41. ACA notes that the Plaintiffs appear to have omitted from this list the CUSIP of the Original Bonds corresponding to the securities identified in paragraph 18 (CUSIP 20786LAQ4, corresponding to enhanced CUSIP 20786LCV1) and have included the CUSIP of an Original Bond, CUSIP 20786LAU5, which corresponds to enhanced CUSIP 20786LCX7 and therefore to none of the alleged positions of any of the plaintiffs. ACA denies the remaining allegations of paragraph 41.

42. ACA admits the allegations of paragraph 42.

43. ACA admits the allegations of paragraph 43.

44. ACA states that it performs its contractual obligations under the terms of the Policies it issues, related to contractual agreements and according to applicable law. ACA denies the remaining allegations of paragraph 44.

45. ACA admits that in 2001 it wrote a number of Secondary Market Insurance Policies (the "Policies" or the "Policy") to insure the Issuer's payment obligations in respect to a defined subset of the Original Bonds (specific par amounts of Original Bonds with CUSIP Nos. 20786LAA9, 20786LAG6, 20786LAQ4, 20786LAR2, 20786LAU5, 20786LAW1, and 20786LAF8), and that such Policies were purchased by First Miami Securities, Inc., T. Rowe Price Associates, Inc. or Strong Capital Management, respectively, as further indicated in Exhibit A to the respective Policies. ACA's rights and obligations are governed by the terms and conditions of its Policies and the Custody Agreement ("Custody Agreement") between U.S. Bank National Trust Association, as Custodian (the "Custodian"), and ACA, and by applicable law. ACA denies the remaining allegations of paragraph 45.

46. ACA admits the allegations of paragraph 46, with respect to the non-refundable nature of the premiums accepted upon the issuance of the Policies.

47. ACA denies the first sentence inasmuch as whether new securities were created is a question of law. ACA admits that "Positions" as defined in the Custody Agreement were created, and were assigned and identified by unique (enhanced) CUSIP numbers corresponding to the CUSIP numbers in paragraph 45 respectively:20786LCS8, 20786LCU3, 20786LCV1, 20786LCW9, 20786LCX7, 20786LCY5 and 20786LCT6. ACA denies that any insured bonds were sold inasmuch as the initial purchasers of the Policies bought Positions or Certificates of Bond Insurance (as defined in the Custody Agreement) in respect of Original Bonds that were already held.

48. ACA states that ACA's rights and obligations under the Policies are governed by the terms of the Policies, the Custody Agreement and by applicable law as determined and announced by the Appellate Division of the New York Supreme Court in the Oppenheimer Order

(hereinafter, the "Applicable Law"), including Policies that were not held by plaintiffs in the Oppenheimer case. ACA denies the allegations of paragraph 48 to the extent they are inconsistent with the Applicable Law.

49. ACA denies the allegations of paragraph 49 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

50. ACA denies the allegations of paragraph 50 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

51. ACA denies the allegations of paragraph 51 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

52. ACA denies the allegations of paragraph 52 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

53. ACA denies the allegations of paragraph 53 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

54. ACA denies the allegations of paragraph 54 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

55. ACA denies the allegations of paragraph 55 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

56. ACA denies the allegations of paragraph 56 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

57. ACA denies the allegations of paragraph 57 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

58. ACA denies the allegations of paragraph 58 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

59. ACA denies the allegations of paragraph 59 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

60. ACA denies the allegations of paragraph 60 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

61. ACA denies the allegations of paragraph 61 to the extent they are inconsistent with the terms of the Policies and the Custody Agreement and the Applicable Law.

62. ACA denies the allegations of paragraph 62 and furthermore states that the phrase "impair ACA's ability to collect" is indefinite, vague and ambiguous.

63. ACA denies the allegations of paragraph 63 and refers to the Policies for their terms and Definitions, subject to Applicable Law.

64. ACA admits the allegations of paragraph 64 and states that this is so for all the named plaintiffs, subject to Applicable Law.

65. ACA admits the allegations of paragraph 65.

66. ACA denies the allegations of paragraph 66, and refers to the Policies and Custody Agreement for their terms, subject to Applicable Law.

67. ACA denies the allegations of paragraph 67, and refers to the Custody Agreement for its terms and Definitions, subject to Applicable Law.

68. ACA denies the allegations of paragraph 68 and refers to the Certificate of Bond Insurance for its terms, subject to Applicable Law.

69. ACA denies the allegations of paragraph 69 as being indefinite, vague and ambiguous. See answer 47 for the enhanced CUSIPs to which the Policies relate, represented by Positions or Certificates of Bond Insurance, as defined in the Policies and Custody Agreement, subject to Applicable Law.

70. ACA states that the Insured Obligations as defined in the Policies (i.e., the 1998 Original Bonds) were replaced by new and different bonds issued by Connector in 2011 pursuant to the confirmation of the plan of bankruptcy of Connector, but otherwise admits the allegations of paragraph 70 in light of Applicable Law.

71. ACA denies the allegations of paragraph 71, and refers to the Policies and Custody Agreement for their terms, subject to Applicable Law.

72. ACA denies the allegations of paragraph 72 and refers to the Policies for their terms, subject to the Custody Agreement and Applicable Law.

73. ACA denies the allegations of paragraph 73 and refers to the Custody Agreement for its terms, subject to the Policies and Applicable Law.

74. ACA denies the allegations of paragraph 74.

75. ACA denies the allegations of paragraph 75.

76. ACA admits that although ACA historically insured obligations issued by municipalities and governmental entities, it also engaged in other lines of business including writing guarantees on the performance of CDOs. ACA denies the remaining allegations of paragraph 76.

77. ACA admits that subsidiaries of ACA served as asset managers of "collateralized debt obligations", or CDOs. ACA admits separately that certain subsidiaries wrote credit default swap protection on the financial performance of pools of financial obligations, including on CDOs, and the payment obligations of such subsidiaries pursuant to such credit default swaps were guaranteed by ACA through financial guaranty insurance policies; ACA otherwise denies the allegations of paragraph 77.

78.     ACA denies the allegations of paragraph 78 and states that there are various types of CDOs and that all types are different from credit default swaps, which is a different kind of instrument.

79.     ACA admits that CDOs are not insurance (although also asserts the irrelevance of such fact to the complaint), and denies the other allegations of paragraph 79.

80.     ACA denies the allegations of paragraph 80 and states that ACA never engaged in a macroeconomic analysis of risks to the American economy.

81.     ACA denies the allegations of paragraph 81, and states in particular that ACA had a business managing CDOs. See first sentence of the answer to paragraph 77.

82.     ACA denies the allegation that the financial assets guaranteed by ACA were approximately $22 billion, but admits that a portion of the financial assets to which ACA's assets and financial guaranties and insurance policies related were pools of residential mortgages, including but not limited to so-called subprime mortgages.

83.     ACA denies the allegations of paragraph 83 and further states that the assertions are indefinite, vague and ambiguous.

84.     ACA admits the allegations in paragraph 84, except it does not speculate whether any such events could have had "dire" consequences (a vague term without precise meaning) and hence denies the allegations in the second sentence of paragraph 84.

85.     ACA denies the allegations of paragraph 85, except it admits that the quoted reason was one reason, among others, for the August 2008 restructuring, but states further that ACA is not required to pay claims that are not valid.

86.     ACA admits the first sentence of paragraph 86, denies the remaining allegations and refers to the settlement agreement for its terms.

87. ACA denies the allegations of paragraph 87.

88. ACA denies the allegations of paragraph 88 and refers to the settlement agreement for its terms.

89. ACA denies the allegations of paragraph 89.

90. ACA denies the allegations of paragraph 90 and refers to the settlement agreement for its terms, except ACA admits that it was required to operate as a run-off guaranty insurance company, meaning that it generally may not write new insurance policies.

91. ACA denies the allegation that the required non-payment correspondence was in a format designed by ACA; ACA otherwise admits the allegations of paragraph 91, subject to the definition of "non-payment" in the Policies subject to Applicable Law.

92. ACA admits the allegations of paragraph 92.

93. ACA admits the allegations of paragraph 93, and states that, accordingly, *and only to the extent of the amount of such payment,* ACA received the rights described in the answer to paragraph 94.

94. ACA states that simultaneous with the payment described in paragraph 94 *and only to the extent of the amount of such payment,* by operation of the Policies and the Form of Assignment included in the notice of non-payment from the Custodian, ACA received subrogation rights against the Issuer in such amount of payment. ACA otherwise denies the allegations of paragraph 94.

95. ACA admits the allegations of paragraph 95.

96. ACA admits the allegations of paragraph 96, and upon such payment, *and only to the extent of such payment,* received the same rights as set forth in the responses to paragraphs 93 and 94 above.

97. ACA admits the allegations of paragraph 97 solely with respect to certain unliquidated and inchoate claims as described in the Proof of Claim filed by ACA.

98. ACA admits the allegations in paragraph 98, and upon such payment, *and only to the extent of such payment,* received the same rights as set forth in the responses to paragraphs 93 and 94 above..

99. ACA admits the allegations in paragraph 99 and states that the Original Bonds were cancelled upon exchange for new bonds pursuant to the Amended Plan.

100. ACA denies the allegations of paragraph 100, and notes that the Enhanced CUSIP numbers relate to Certificates of Bond Insurance and/or Positions created when ACA wrote its Policies. Certificates of Bond Insurance/Positions, are issued by the Custodian evidencing ACA's Policies and thus were not, and could not, be adjusted pursuant to the Amended Plan.

101. ACA denies the allegations of paragraph 101 and states that ACA asserted its rights and obligations under the Policies, Custody Agreement, and applicable law as then in effect.

102. ACA denies the allegations of paragraph 102

103. ACA denies the allegations of paragraph 103.

104. ACA denies the allegations of paragraph 104 and states that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement and then-applicable law.

105. ACA denies the allegations of paragraph 105, and states that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement and then-applicable law.

106. ACA denies the allegations of paragraph 106 and states that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement and then-applicable law.

107. ACA denies the allegations of paragraph 107 and states that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement and then-applicable law.

108. ACA denies the allegations of paragraph 108.

109. ACA denies the allegations of paragraph 109, and states that it attempted to have the Bond Trustee in respect of the Original Bonds recognize ACA's rights to represent the Original Bonds covered by its Policies, and direct the Bond Trustee to act, which efforts were rebuffed by the Bond Trustee, and ACA took certain other actions related to the foregoing.

110. ACA denies the allegations of paragraph 110 and states that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement, then-applicable law and the law governing the Bankruptcy Proceedings.

111. ACA admits that ACA conditioned its payments, *inter alia*, on the receipt of instruments of assignment and appointment to act as agent, as alleged, but states that such assignment and appointment were *solely to the extent of payment*. ACA denies the remaining allegations of paragraph 111, including that these were the exclusive conditions to ACA's response, and ACA states further that ACA's rights and obligations under the Policies were governed by the terms of the Policies, the Custody Agreement and then-applicable law.

112. ACA denies the allegations of paragraph 112.

113. ACA admits that as a party that had filed a Proof of Claim, it received numerous pleadings, orders and other documents in respect of the Bankruptcy Proceedings, but ACA is

without information to form a belief as to the truth of the remaining allegations of paragraph 113, as ACA is not in a position to state whether these comprised "all significant pleadings and orders" in those proceedings.

114. ACA denies the allegations of paragraph 114, including the suggestion that it had a right "to control the proceedings."

115. ACA denies the allegations of paragraph 115.

116. ACA denies the allegations of paragraph 116 and states further that such question requires a conclusion of law as to the extra-contractual duties owed by ACA to the Plaintiffs.

117. Paragraph 117 is duplicative of paragraph 109 and ACA makes the same answer as to paragraph 109.

118. ACA denies the allegations of paragraph 118, subject to Applicable Law.

119. ACA admits under Applicable Law as now defined the allegations of paragraph 119 but also states that under applicable law as of July 1, 2011, such "Nonpayment" (as defined in the Policies) had not occurred and makes reference to the definitions contained in the Policies and the Custody Agreement.

120. ACA denies the allegations of paragraph 120. See response to paragraph 119.

121. ACA denies the allegations of paragraph 121. See response to paragraph 119.

122. ACA denies the allegations of paragraph 122. See response to paragraph 119.

123. ACA admits that it sent the letter dated July 7, 2011, and refers to the letter for its terms. ACA denies the remaining allegations of paragraph 123 and states that as a result of the New York Appellate Division's <u>Oppenheimer</u> Order, ACA has *rescinded* its letter of July 7, 2011.

124. ACA denies the allegations of paragraph 124 and states that as a result of the New York Appellate Division's <u>Oppenheimer</u> Order, ACA has *rescinded* its letter of July 7, 2011..

125. ACA denies the allegations of paragraph 125.

126. ACA denies the allegations of paragraph 126.

127. ACA denies the allegations of paragraph 127

## COUNT I
## (BREACH OF CONTRACT)

128. ACA repeats and reasserts its responses to all preceding paragraphs, as realleged in paragraph 128, as if fully set forth herein.

129. ACA denies the allegations of paragraph 129.

130. ACA denies the allegations of paragraph 130.

131. ACA denies the allegations of paragraph 131

132. ACA denies the allegations of paragraph 132

133. ACA denies the allegations of paragraph 133 and states that as of September 3, 2013, the applicable law became that determined and announced by the New York Appellate Division in the <u>Oppenheimer</u> Order. As a result, ACA rescinded its letter of July 7, 2011, and has agreed to pay all policyholders, including the plaintiffs in this action, amounts in arrears (plus interest) and going forward as provided by the Policies in light of and consistent with that Order applied to all the Policies.

## COUNT II
## (ANTICIPATORY REPUDIATION)

134. ACA repeats and reasserts its responses to all preceding paragraphs, as realleged in paragraph 134, as if fully set forth herein.

135 - 139.    ACA states affirmatively that as of September 3, 2013, the applicable law became that determined and announced by the New York Appellate Division in the <u>Oppenheimer</u> Order.  As a result, ACA rescinded its letter of July 7, 2011, and has agreed to pay all policyholders, including the plaintiffs in this action, amounts in arrears (plus interest) and going forward as provided by the Policies in light of and consistent with that Order applied to all the Policies.

ACA is performing its obligations under the Policies, and plaintiffs have received and/or will receive from ACA all they are entitled to receive under the Policies.

ACA is not in breach of contract, plaintiffs have not been damaged by ACA's conduct, and plaintiffs are not entitled to receive or recover any other sums from ACA, whether in the form of "damages" or costs or fees.

ACA denies any remaining allegations or any allegations in paragraphs 135-139 that are contrary to or inconsistent with the foregoing statement.

COUNT III
(BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

140.    ACA repeats and reasserts its responses to all preceding paragraphs, as realleged in paragraph 140, as if fully set forth herein.

141.    The allegations of paragraph 141 are a purported statement of law to which no responsive pleading is required.

142.    ACA denies the allegations of paragraph 142.

143.    ACA denies the allegations of paragraph 143.

144.    ACA denies the allegations of paragraph 144.

145.    ACA denies the allegations of paragraph 145.

146.    ACA denies the allegations of paragraph 146.

147. ACA denies the allegations of paragraph 147.

148. ACA denies the allegations of paragraph 148.

149. ACA denies the allegations of paragraph 149.

## COUNT IV
## (GROSS NEGLIGENCE)

150. ACA repeats and reasserts its responses to all preceding paragraphs as realleged in paragraph 150, as if fully set forth herein.

151. ACA denies the allegations of paragraph 151.

152. ACA denies the allegations of paragraph 152.

153. ACA denies the allegations of paragraph 153.

## COUNT V
## (BREACH OF FIDUCIARY DUTY)

154. ACA repeats and reasserts its responses to all preceding paragraphs as realleged in paragraph 154, as if fully set forth herein.

155. ACA denies the allegations of paragraph 155.

156. ACA admits the allegations of paragraph 156; see answers to paragraphs 91, 96 and 119 covering such payments.

157. ACA denies the allegations of paragraph 157.

158. ACA denies the allegations of paragraph 158.

159. ACA denies the allegations of paragraph 159.

160. ACA denies the allegations of paragraph 160.

161. ACA denies the allegations of paragraph 161.

## COUNT VI
## (DECLARATORY JUDGMENT)

162. ACA repeats and reasserts its responses to all preceding paragraphs as realleged in paragraph 162, as if fully set forth herein.

163. ACA admits that plaintiffs seek a declaration of their rights and ACA's liabilities under the Policies.

### FIRST AFFIRMATIVE DEFENSE

164. The complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

165. Venue is not proper in this district.

### THIRD AFFIRMATIVE DEFENSE

166. Plaintiff's claim for punitive damages is limited by and subject to the applicable provisions of the Constitution of the United States and the Mississippi Constitution, is limited by and subject to the applicable provisions of any limiting state statutes, is barred to the extent that the lack of clear standards makes the imposition of punitive damages against Defendant unconstitutionally vague and/or overbroad, and is barred to the extent that no act or omission of defendant ACA alleged in the complaint evidences such wanton dishonesty as to imply a criminal indifference to civil obligations, or demonstrates egregious tortious conduct sufficient to warrant punitive damages.

WHEREFORE, Defendant ACA denies that it is liable to the plaintiffs or that the plaintiffs are entitled to the relief they request, or any relief whatsoever, and ACA respectfully requests that the Court dismiss plaintiffs' and enter judgment in ACA's favor.

RESPECTFULLY SUBMITTED, October 23, 2013.

/s/David W. Clark_____
David W. Clark (MBN 6112)
Erin Saltaformaggio (MBN 103999)
BRADLEY ARANT BOULT CUMMINGS LLP
One Jackson Place
188 E. Capitol Street, Suite 400
Jackson, Mississippi 39201
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
*Attorneys for Defendant ACA Financial Guaranty Corporation*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 23, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will deliver copies to all counsel of record.

                                         /s/ David W. Clark
                                         OF COUNSEL