**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| **JAMES E. DAVIS, ET AL.** | **PLAINTIFFS** |
| v. | **CIVIL ACTION NO. 3:11-CV-093-MPM-SAA** |
| **ACA FINANCIAL GUARANTY CORPORATION**<br>And **JOHN DOES One through Ten** | **DEFENDANTS** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS CERTAIN OF PLAINTIFFS' CLAIMS**

Plaintiffs, James E. Davis, et al., respectfully move this Court to deny Defendant's, ACA Financial Guaranty Corporation ("ACA"), *Motion to Dismiss Certain of Plaintiffs' Claims* ("Motion to Dismiss"), pursuant to Fed. R. Civ. P 12(g)(2)[1] as well as for the other reasons stated below. In support of Plaintiffs' Response in Opposition, Plaintiffs state as follows:

**INTRODUCTION**

ACA's Motion to Dismiss must be denied for numerous reasons. First, pursuant to Fed. R. Civ. P. 12(g)(2), ACA's Motion to Dismiss is procedurally barred as a result of ACA's failure to raise these defenses in its previous motion to dismiss [Dkt. No. 109] filed several days prior to ACA's filing this Motion to Dismiss. Pursuant to Rule 12(g)(2), ACA was required to bring the present defenses in its original motion to dismiss or the same are procedurally barred under Rule 12.

Nevertheless, ACA's Motion to Dismiss should also be denied for the following reasons. ACA's latest motion marks ACA's third attempt to move to dismiss these claims. This Court has

---

[1] ACA's Motion to Dismiss must be denied as it is procedurally barred by Fed. R. Civ. P. 12(g)(2) because ACA has previously filed a 12(b)(1) Motion to Dismiss Plaintiffs' Second Amended Complaint [Dkt. No. 109] and failed to include these claims. As discussed in detail below, Rule 12(g)(2) prohibits the filing of multiple motions to dismiss. "A party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." See Fed. R. Civ. P. 12(g)(2) (2013).

correctly denied both of ACA's previous attempts to dismiss Plaintiffs' claims for breach of fiduciary duty and gross negligence. No changes have occurred since the last denial aside from two New York Courts sharing in agreement that ACA's refusal to make insurance payments to Plaintiffs were baseless.

The facts and circumstances that give rise to Plaintiffs claims that ACA is attempting to have dismissed are a product of ACA's own making.[2] In an effort to protect itself and to obtain the right to control the fate of its payment obligations under its Policies, ACA mandated that before making insurance payments, the Plaintiffs assign and appoint ACA as its agent and attorney-in-fact giving ACA the irrevocable right to intervene and control any legal proceedings relating to the insured bonds. The Plaintiffs complied with ACA's mandate, but ACA used this relationship to its advantage and to the Plaintiffs' detriment.

During the Connector 2000 Bankruptcy[3], ACA made three payments to the Plaintiffs; however before ACA made these payments, it required the Plaintiffs to execute an irrevocable assignment giving ACA the right to control any legal proceedings relating to the bonds. The broad and strong language of the assignments made to ACA by the Plaintiffs state in pertinent part:

> the undersigned hereby irrevocably constitute(s) and appoint(s) ACA Financial Guaranty Corporation **as agent and attorney-in-fact** with respect to the within-mentioned payment.[4]

---

[2] Plaintiffs' claims for breach of fiduciary duty and gross negligence derive from the contractual relationship, but are independent of the Plaintiffs' breach of contract claim. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated. *Clark-Fitzpatrick, Inc. v. Long Island R. Co.,* 70 N.Y. 2d 382, 389 (N.Y. 1987). This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Id.* (citing seminal case, *Rich v. New York Cent. & Hudson Riv. R. R. Co.,* 87 NY 382, 398 (N.Y. 1882). "[A] breach of contract may be so intended and planned; so purposely fitted to time, and circumstances and conditions; so in woven into a scheme of oppression and fraud; so made to set in motion innocent causes which otherwise would not operate, as to cease to be a mere breach of contract, and become, in its association with the attendant circumstances, a tortious and wrongful act or omission." *Rich,* 87 NY 382, 389 (N.Y. 1882).

[3] Connector 2000 Bankruptcy refers to the bond Issuer, Connector 2000 Association, Inc., who filed a voluntary Chapter 9 Bankruptcy petition relating to the original bonds.

[4] See Notices of Non-payments and Form of Assignments executed in ACA's favor on January 5, 2010; July 6, 2010; and January 6, 2011, attached hereto as Exhibit "A."

Furthermore, Section 4.03 of ACA's Policy states in pertinent part:

> such appointment to [sic] be made contemporaneously with the delivery of the notice to [ACA] demanding payment under the Policy and to be contingent upon [ACA's] continued performance under the Policy.[5]

This assignment was required by Section 4.07 of ACA's Policy which states in pertinent part:

> Following and to the extent of payment by the [ACA] under the related Policy, the **Insurer may at any time during the continuation of an Insolvency Proceeding control all matters relating to such Insolvency Proceeding**….[6]

In order to receive payments during the Connector 2000 Bankruptcy, the Plaintiffs did exactly as ACA required by executing and delivering the Form of Assignments to ACA irrevocably appointing ACA as the Plaintiffs' agents and attorney-in-fact to control the insolvency proceeding/Connector 2000 Bankruptcy. However, Plaintiffs never accounted that ACA would take advantage of the Plaintiffs with the use of ACA's position of trust (as Plaintiffs agent and attorney-in-fact) by failing to act. This failure to act later created a basis to deny and repudiate ACA's obligations to the Plaintiffs under the insurance policies.

As the Plaintiffs pled in their Second Amended Complaint, this assignment created a fiduciary relationship and tort claims independent of the insurance Policy. [Dkt. No. 108 p. 15-21]. New York, Mississippi, and South Carolina jurisprudence all attach a high degree of responsibility and care to the attorney-in-fact fiduciary relationship.[7] New York law states: "[t]he relationship between an attorney-in-fact and his principal has been characterized as agent and principal with the attorney-in-fact under a duty to act with the utmost good faith toward the principal . . . ." *Mantella v. Mantella,* 268 A.D. 2d 852, 852-53 (3d Dept., 2000). Mississippi law states: an attorney-in-fact "is charged with a fiduciary duty to act in good faith and employ such vigilance, sound judgment,

---

[5] See Section 4.03(b)(iii) of Exhibit "B" Custody Agreement.
[6] See Section 4.07 entitled "Insolvency Proceedings" of ACA's Insurance Policy Custody Agreement attached hereto as Exhibit "B."
[7] ACA admitted in its Motion for Summary Judgment, New York Law does not control all claims made by the Plaintiffs—Mississippi law is applicable as well. See [Dkt. No. 113 at 3] ("related to this action are not recoverable under the law of New York (or the law of Mississippi)."

diligence and prudence as exercised by general prudent persons of discretion and intelligence in handling their own affairs." *Frazier v. Shackelford,* 912 So. 2d 138, 145 (Miss. 2005). South Carolina law states: "a fiduciary relationship exits when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 599 (S.C. Ct. App. 1987). "Moreover, it is a well-settled equitable rule that anyone acting in a fiduciary relationship shall not be permitted to make use of that relationship to benefit his own personal interests. It is a doctrine repeatedly announced by the courts of this nation…." *Id.* (citing 36A C.J.S. *Fiduciary* at 388 (1983)).

Plaintiffs' claims for breach of fiduciary duty and gross negligence are independent of their other claims that the New York Courts have ruled were well-founded. Thus, Plaintiffs' claims for breach of fiduciary duty and gross negligence are viable, properly pled, and should not be dismissed.

## ACA'S ARGUMENTS

ACA makes the same four arguments in its Motion to Dismiss that it made in its previously denied motions to dismiss:

1. "Plaintiffs fail to allege facts sufficient to support a claim that Plaintiffs and ACA were engaged in any relationship beyond an insurer-insured relationship." [Dkt. No. 120 at 1]

2. "Plaintiffs failed to allege any legal duty owed by ACA to Plaintiffs independent from their contractual relationship." [Dkt. No. 120 at 1]

3. "Plaintiffs' allegations fail to assert claims for breach of fiduciary duty because there are no allegations that ACA was appointed the agent for Plaintiffs in the Bankruptcy Action;" [Dkt. No. 120 at 7, 9]

4. "Plaintiffs' claim for gross negligence fails because Plaintiffs do not allege the existence of a duty independent of the contractual relationship upon which to sustain a claim for gross negligence." [Dkt. No. 120 at 13]

All of ACA's arguments should be rejected—again—by this Court. As illustrated below, ACA's Policies, the three Notices of Assignments (irrevocably appointing ACA as the Plaintiffs'

4

agent and attorney-in-fact), and the facts pled in Plaintiffs' Second Amended Complaint [Dkt. No. 108] clearly establish these tort claims against ACA, independent of Plaintiffs' breach of contract claims.

**PLAINTIFFS' COMPLAINT ALLEGATIONS AND SUPPORTING DOCUMENTS**

In the Second Amended Complaint, the Plaintiffs specifically plead the relevant facts that clearly establish and support their tort claims for breach of fiduciary duty and gross negligence as follows: [Dkt. No. 108]

<u>COMPLAINT FACTS</u>

71. Both the Policies and the Custody Agreement give ACA broad powers to protect its interests whenever the underlying obligations become the subject of legal proceedings.

72. Under the Policies, and as a condition of ACA's payment, ACA was required to be appointed to act "as agent for the Holder or Owner" in any legal proceedings related to the Obligations. Specifically, the Policies provided:

> In any event of Nonpayment, the Custodian shall make a claim for payment under this Policy. *In order to receive payment hereunder*, the Custodian as the attorney in fact of the Holder or Owner, as the case may be, shall execute and deliver appropriate instruments of assignment to the Insurer and shall appoint Insurer *as the agent of such Holder or Owner* and of the Custodian *in any legal proceedings* relating to the Obligations.

(emphasis added).

73. Section 4.07 of the Custody Agreement specifically applied these powers to insolvency proceedings commenced by the bond insurer.

74. ACA provided form letters to the Custodian and instructed the Custodian to send the form correspondence to ACA in the event that Connector 2000 failed to make scheduled payment.

75. ACA represented to the Custodian that delivery of the correspondence would satisfy the requirement for payment under the Policies.

….

101. Nevertheless, once ACA learned that Connector 2000 intended to exchange the Original Bonds, ACA developed an underhanded plan intended to eliminate any liability it had under the Policies.

102. ACA decided that it would intentionally not pursue claims against Connector 2000 and that it would not seek to protect its subrogation rights for payments that it made prior to, and during, the bankruptcy proceedings.

….

106. ACA decided to blame the Bondholders and the Custodian for not assigning ACA the right to represent their interests in the bankruptcy proceedings, when ACA had already been appointed as agent-in-fact, and despite the fact that ACA chose not to participate in the bankruptcy proceedings.

….

108. These frivolous and bad faith decisions and positions were motivated by the selfish interests of ACA, as directed by the surplus note holders, who stand to gain if ACA is able to avoid payment to Plaintiffs.

109. Aside from filing a notice of claim, ACA took no further action in the Connector 2000 Bankruptcy Proceedings.

110. ACA had the right to control all matters relating to the Bondholders' interest in the Connector 2000 Bankruptcy Proceedings pursuant to the Custody Agreement.

111. ACA's payments in response to nonpayment were conditioned on ACA's receipt of appropriate instruments of assignment and its appointment to act as agent for the Bondholders in any legal proceedings relating to the Obligations.

112. ACA became agent for the Bondholders and was allowed to control all matters in the bankruptcy proceedings.

113. ACA received all significant pleadings and orders in the bankruptcy proceedings.

114. ACA did not exercise its right to control the proceedings.

115. ACA did not seek to protect its interests in the bankruptcy proceeding.

116. ACA did not seek to protect Plaintiffs' interest in the bankruptcy proceedings.

## COUNT IV

## (GROSS NEGLIGENCE)

150. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

151. ACA owed duties to Plaintiffs to review, investigate, process, and pay their claims before denying the same.

152. ACA's actions in denying the Policies in their entirety before reviewing, investigating, processing, or paying any claims were reckless and grossly negligent and with knowledge that their actions would cause Plaintiffs considerable and additional harm.

153. As a result of ACA's actions, Plaintiffs are entitled to an award of compensatory damages, punitive damages, attorneys' fees, and costs.

COUNT V

(BREACH OF FIDUCIARY DUTY)

154. Plaintiffs repeat and reallege all preceding paragraphs, as if fully set forth herein.

155. As a condition of payment, ACA was appointed agent in any legal proceeding relating to the insured securities.

156. ACA paid certain amounts that became due during Connector 2000's Bankruptcy Proceeding.

157. Once ACA became the bondholders' appointed agent, ACA acquired duties owed outside of the Policy, including the duty to protect the bondholders' interests in Connector 2000's bankruptcy proceedings.

158. Rather than protect the bondholders' interests, ACA stood silent, hoping that its inaction would enable it to ultimately avoid the obligations owed to its principals.

159. For these reasons, ACA's acts and omissions give rise to an independent tort.

160. ACA breached fiduciary duties it owed to the bondholders and the class members as their agent.

161. ACA's breach of its fiduciary duties entitled Plaintiffs to compensatory damages, punitive damages, attorneys' fees, costs and interest.

When viewed in conjunction with ACA's Policy mandates[8] and the irrevocable assignments and appointments to ACA as the Plaintiffs' agent and attorney-in-fact, the Plaintiffs adequately pled and based their tort claims on facts and ACA's omissions which are independent of the contractual obligations owed the Plaintiffs.

---

[8] See Sections 4.03(b)(iii) and 4.07 of Exhibit "B".

## ARGUMENT

## **FAMILIAR STANDARDS FAVOR DENIAL OF ACA's MOTION**

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-plead facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). "A dismissal will not be affirmed if the allegations support relief on any possible theory." *Id.* "The court may not look beyond the pleadings in ruling on [a 12(b)(6)] motion." *Baker*, 75 F.3d at 197.

"In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept all well-plead facts as true and view them in the light most favorable to the plaintiff." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996), citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir. 1992). "[I]t does not decide whether the plaintiff has a winning claim." *Airport Surface Techs., L.L.C. v. FieldTurf, Inc.*, 268 F. Supp. 2d 999, 1001 (N.D. Ill. 2003) (citing *Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998)). "A dismissal will not be affirmed if the allegations support relief on any possible theory." *Id.* "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. … The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Spalitta v. National Am. Bank*, 444 F.2d 291, 293 (5th Cir. La. 1971). When considering only the four corners of the Second Amended Complaint, there is no question that the Plaintiffs have stated claims for breach of fiduciary duty and gross negligence.

Moreover, ACA's claims are procedurally barred pursuant to Rule 12(g)(2) of the Federal Rules of Civil Procedure. Rule 12(g)(2) provides that except "as provided in Rule 12(h)(2) or (3), a party that makes a

motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P 12(g)(2). Shortly after the Plaintiffs filed their Second Amended Complaint [Dkt. No. 108], ACA has filed a Rule 12 motion to dismiss based on lack of subject matter jurisdiction. [Dkt. No. 109] Several days later, ACA also filed this Rule 12 Motion to Dismiss. Essentially, by repeatedly filing these Motions, ACA is requiring the parties, and the Court, to devote time and attention to matters raised in each motion that could have, and should have, been raised at one time in one motion. Fed. R. Civ. P. 12(g)(2) clearly prohibits and procedurally bars the filing of multiple Rule 12 motions to dismiss.

As noted by the United States District Court for the Eastern District of Pennsylvania in *Printing Plate Supply Co v. Curtis Pub Co.,* "Rule 12(g) is intended to require consolidation of defenses and thus discourage delay and dilatory tactics." 278 F. Supp. 2d 642, 644 (E.D. Pa. 1968). *See also, Ryan v. Glenn*, 52 F.R.D. 185 (N.D. Miss. 1971)(noting that Rule 12(g) requires Rule 12 motions to be consolidated and that a party who make such a motion shall not thereafter make another Rule 12 motion except as provided for in Rule 12(h)(2)). No except applies here; thus ACA's Motion to Dismiss should be summarily denied as it is barred by Fed. R. Civ. P. 12(g)(2).

### PLAINTIFFS' TORT CLAIMS ARE INDEPENDENT OF PLAINTIFFS' CONTRACT CLAIMS

ACA's assignment and appointment as the Plaintiffs' agent and attorney-in-fact clearly renders cognizable breach of fiduciary duty and gross negligence claims brought by Plaintiffs. The same facts and omissions made by ACA support both of Plaintiffs' tort claims, thus they are addressed simultaneously.

Contrary to ACA's claims in its Motion, Plaintiffs' claims are not resolved. ACA's appointment as Plaintiffs' agent renders cognizable breach of fiduciary duty claims as separate and legally distinct claims from breach of contract under the laws of New York and Mississippi.[9]

---

[9] *See Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C. v. Seay*, 42 So. 3d 474 (Miss. 2010)(finding that "fiduciary relationship" is a very "broad term embracing both technical fiduciary relations and those informal relations which exist

"It is well settled that the same conduct which may constitute the breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by the contract but which is independent of the contract itself." *Mandelblatt v. Devon Stores*, 132 A.D. 2d 162, 168, 521 NY 2d. 672 (2d Dept. 1987) (citing, *Meyers v. Waverly Fabrics*, 65 N.Y. 2d 75, 80 (1985); *see also*, North Shore Bottling Co., at 179)). "[A] contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract." *North Shore Bottling Co. V. C. Schmidt & Sons, Inc.* 22 N.Y. 2d 171, 179-180 (N.Y. 1968). "It is a breach of the duty for the fiduciary to injure or act contrary to the interests of the person to whom the duty of loyalty is owed." *Mandelblatt*, 132 A.D. 2d 162, 168. "Breach of fiduciary duty is a tort that arises from a violation of a relationship of trust and confidence, such as that of an agent to his principal or a lawyer to his client." *Vione v. Tewell*, 2006 NY Slip 26210, 4 (N.Y. Sup. Ct. 2006). "New York law recognizes a fiduciary relationship 'when one person is under a duty to act for or to give advice for the benefit of another within the scope of the relation.'" *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 U.S. Dist. Lexis 23062, 45-47 (S.D.N.Y. Dec. 22, 2003); *Levitin v. Pain Webber, Inc.*, 159 F.3d 698, 707 (2d Cir. 1998).

As the Policy required, in order for Plaintiffs to receive the three payments made by ACA under the Policies, the Plaintiffs had to assign and appoint ACA as their attorney-in-fact in any legal proceedings relating to the Insured Bonds. The Plaintiffs allege that ACA became their agent, and that ACA acquired duties owed outside of the insurance policy, including the duty to protect the bondholders' interest in Connector 2000's Bankruptcy proceedings. The Plaintiffs further allege that ACA breached its duties by standing silent and failing to act, and hoping that its inaction would enable it to ultimately avoid the obligations owed to its principals (Plaintiffs and the other

---

wherever one person trusts or relies in or relies upon another."); see also, *Union Nat'l. Life Ins. Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004)(noting that a "claim of breach of fiduciary duty is 'appropriately recognized as an action in tort, not contract.'")

bondholders). ACA's alleged fiduciary relationship gives rise to the possibility of recovery under independent torts outside of the Plaintiffs' contract claims. Accordingly, ACA's motion to dismiss these claims must be denied.

New York law states: "[t]he relationship between an attorney-in-fact and his principal has been characterized as agent and principal with the attorney-in-fact under a duty to act with the utmost good faith toward the principal…." *Mantella v. Mantella,* 268 A.D. 2d 852, 852-53 (3d Dept., 2000). Mississippi law states: an attorney-in-fact "is charged with a fiduciary duty to act in good faith and employ such vigilance, sound judgment, diligence and prudence as exercised by general prudent persons of discretion and intelligence in handling their own affairs." *Frazier v. Shackelford,* 912 So. 2d 138, 145 (Miss. 2005). South Carolina law states: "a fiduciary relationship exits when one reposes special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Island Car Wash, Inc. v. Norris,* 292 S.C. 595, 599 (S.C. Ct. App. 1987). "Moreover, it is a well-settled equitable rule that anyone acting in a fiduciary relationship shall not be permitted to make use of that relationship to benefit his own personal interests. It is a doctrine repeatedly announced by the courts of this nation…." *Id.* (citing 36A C.J.S. *Fiduciary* at 388 (1983)).

New York law recognizes claims for gross negligence that are independent from any contractual duties or obligations. For instance, a legal "duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship. Professionals . . . may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties." *Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Management, Inc.*, 80 A.D. 3d 293, 306 (S.C.A.D. 1ˢᵗ Dept. 2010) (internal quotations and citation omitted). This independent legal duty requires a person to act prudently, and not in a manner that "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Aphrodite Jewelry, Inc. v. D & W Cent.*

*Station Alarm Co., Inc.*, 256 A.D. 2d 288, 289 (S.C.A.D. 2d Dept. 1998). Finally, New York law holds that gross negligence "involves a devil-may-care attitude or indifference to duty amounting to recklessness . . ." or is willful "conduct [that] has been defined as a conscious indifference . . ." toward someone else. *Coco Investments, LLC. v. Zamir Manager River Terrace, LLC.*, 26 Misc. 3d 1231, at \*5 (citing Delaware law and noting that "New York law is essentially the same as Delaware law for the tort claims of gross negligence and willful misconduct.")(not reported in Atlantic Digest). This willful conduct is "wanton behavior . . ." which shows a "conscious indifference to consequences in circumstances where probability of harm to another within the circumference of the conduct is reasonably apparent . . . ." *Coco Investments, LLC. v. Zamir Manager River Terrace, LLC.*, 26 Misc. 3d 1231 at \*5.

Here, Plaintiffs' tort claims of breach of fiduciary and gross negligence spring from circumstances extraneous to, and not constituting elements of, their contract claims. See *Clark-Fitzpatrick, Inc. v. Long Is. R.R. Co.*, 70 N.Y.2d 382, 389 (1987). These claims, cognizable under New York law, are entirely independent of Plaintiffs' breach of contract claims, such that they have a life of their own and are not dependent on any alleged resolution of the contract claims (resolved according to ACA only). These separate claims—breach of fiduciary duty and gross negligence—therefore, are not dependent on the contractual rights, duties and obligations, but arise from the *relationship* between Plaintiffs and ACA. As such, contrary to ACA's assertions otherwise, these separate claims are viable and must not be dismissed.

## CONCLUSION

ACA's Motion to Dismiss should once again be denied by this Court. First, ACA's Motion to Dismiss should be denied as it is procedurally barred, Pursuant to Fed. R. Civ. P. 12(g)(2). In addition, ACA's Motion to Dismiss should be denied because the Plaintiffs clearly pled facts sufficient to establish it torts claims independent of its contract claims. ACA was assigned and

appointed the Plaintiffs' agent and attorney-in-fact, which created a fiduciary duty that ACA breached. Based on the relationship and duty created and owed to Plaintiffs by ACA, ACA's actions and omissions constitute gross negligence and a reckless disregard for the Plaintiffs' rights. For these reasons, Plaintiffs request the Court to – again – deny ACA's Motion to Dismiss.

RESPECTFULLY SUBMITTED, this the 28th day of October, 2013.

By: /s/ JESSE MITCHELL, III
Jesse Mitchell, III (MS Bar No.103020)
*Attorney for Plaintiffs*

**OF COUNSEL:**
**THE MITCHELL FIRM, PLLC**
774 Avery Blvd., Suite G
Ridgeland, Mississippi 39157
Telephone: (769) 300-0462
Facsimile: (601) 510-1981
Email: jmitchell@themitchellfirms.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 28, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        Respectfully Submitted,

        /s/ JESSE MITCHELL, III
        JESSE MITCHELL, III (MSB 103020)