IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JAMES E. DAVIS, et al.                                                                           PLAINTIFFS

v.                                                         CIVIL ACTION NO. 3:11-cv-093-MPM-SAA

ACA FINANCIAL GURANTY
CORPORATION, and
JOHN DOES One through Ten                                                                        DEFENDANTS

**ORDER**

This cause comes before the court on defendant ACA's motion to dismiss. The court, having considered the memoranda of the parties, as well as their arguments at a hearing held this date, is prepared to rule.

This is, *inter alia*, a breach of contract and insurance bad faith action in which plaintiffs seek to hold defendant ACA liable for its alleged failure to make good on its promise to insure municipal bonds issued by "Connector 2000," a South Carolina road construction project (hereinafter "the Issuer"). The Issuer ran into severe financial difficulties, and it was forced to seek Chapter 9 bankruptcy protection. ACA notes that, as part of that Chapter 9 bankruptcy, the bankruptcy court cancelled certain bonds which had originally been issued, and ACA contends that this cancellation served to remove its prior obligation to insure the bonds against default. Unfortunately for ACA, this argument was rejected by New York Supreme Court (which is that state's trial court) Judge Charles Ramos in a July 23, 2012 ruling in *Oppenheimer v. ACA Financial Guaranty Corp.,* No. 653290/11 (N.Y. Sup. Ct. N.Y. Co). Judge Ramos' ruling was recently affirmed by a New York appellate court, after which ACA expressed a willingness to pay its policyholders the full benefits under their policies. On the basis of this promise,

1

defendant sought dismissal of plaintiffs' claims as moot and/or legally baseless, and, on October 30, 2013, this court held a hearing regarding the status of this case in light of these developments.

As the court explained in its ruling from the bench, it regards this case as being essentially in a settlement posture, with the primary remaining issue being attorneys' fees. Plaintiffs have raised certain additional claims which were not asserted in the *Oppenheimer* litigation, but, as discussed below, the court is inclined to conclude that recovery in this case should be limited to the sort of contractual recovery obtained in the New York litigation. Defendant represented at the hearing that the plaintiffs in *Oppenheimer* did not recover attorneys' fees, and the court has no reason to doubt their representations in that regard. Nevertheless, the court was pleased to learn at the hearing that defendant had stepped forward in good faith to offer the plaintiffs a settlement which would give them full recovery under their policies, as well as reasonable attorneys' fees. As the court has previously stated, it regards the payment of such attorneys' fees as being an integral part of making plaintiffs whole in this case. The unsettled question is what "reasonable attorneys' fees" means in this case, and this court concludes that it likely falls somewhere between what defendant has offered to date and the seemingly excessive (under the unique procedural posture of this case) 40% contingency fee which counsel has negotiated with his clients.

Defendant's representations regarding its settlement offers in this case are in some conflict with its arguments in its motion to dismiss. In its motion to dismiss, defendant argues that, in light of its agreement to pay the claims under its policies, plaintiffs' claims in this case are either moot or legally without merit and should be dismissed. The arguments raised in defendant's motion to dismiss may have some legal merit, but they call for a less-than-just result,

since they limit plaintiffs' recovery to the policy amounts, with no award of attorneys' fees or costs. The court is sometimes forced to accept unsatisfactory results, but it does not wish to rush into them. The court therefore concludes that consideration of any motion to dismiss should await further discovery and briefing, as well as further settlement discussions. This discovery and briefing should, of course, relate to the merits of plaintiffs' remaining claims, but also to certain other issues which this court deems worthy of consideration. In particular, this court wishes to reserve any final ruling in this case until it has been further advised regarding the resolution of the almost identical claims in *Oppenheimer*.

This court has repeatedly expressed its discomfort in ruling upon issues of New York law, with which it is very much unfamiliar. Given this lack of familiarity, the court has consistently expressed its intention to follow the lead of the New York state courts in *Oppenheimer*, and that intention holds true today. Plaintiffs note that they have asserted claims here which were not asserted by the plaintiffs in *Oppenheimer*, and this is undoubtedly true. The question is whether these additional claims have any merit. The issues before the New York state courts in *Oppenheimer* seem identical to those here; indeed, the New York trial judge mistakenly included some of the policies in this case in his ruling. While this error was corrected on appeal, the fact that it was made in the first place highlights the virtually identical nature of the claims in the two cases.

This court has reviewed the rulings of the New York trial and appellate courts in *Oppenheimer*, and these rulings offer no apparent support for plaintiffs' claims for extra-contractual damages. While both New York state courts disagreed with ACA's position in this litigation, they did not characterize it as having being made in bad faith or as a result of gross negligence. Plaintiffs argue that *Oppenheimer* is distinguishable since the claims for policy

benefits in that case had not yet accrued, but the court regards this as being an issue relating to the timing of damages, rather than any real substantive difference between the nature of the claims. Plaintiffs allege that a fiduciary relationship arose between them and ACA based upon its actions in the bankruptcy proceedings, but ACA's actions in those bankruptcy proceedings affected the New York plaintiffs equally. There is no mention in the *Oppenheimer* opinions of the existence of any fiduciary relationship between ACA and the policyholders, and this court is quite skeptical of an argument that there is any fundamental difference between the relationship between ACA and the *Oppenheimer* plaintiffs and the plaintiffs in this case.[1]

The court presumes that the plaintiffs in *Oppenheimer* were represented by able counsel, and this seems to be borne out by the success which they have had in that litigation. The court further presumes that the *Oppenheimer* plaintiffs had no desire to "leave money on the table" by forgoing any valid claim they might have had for attorneys' fees or other extra-contractual damages. The plaintiffs in this case will therefore have an uphill battle in seeking recovery under any theories which were not asserted in *Oppenheimer*. *Oppenheimer* does not merely represent persuasive authority, but virtually identical authority, and this court will be strongly inclined to follow it in this case. The court accordingly requests that the parties submit briefing regarding the final resolution of the *Oppenheimer* litigation, prior to any ruling upon dispositive motions in this case.

This court's suspicion that New York law may be against plaintiffs on this issue is strengthened by the fact that they argue that Mississippi law should apply to their claims. This

---

[1] Plaintiffs argue that a fiduciary relationship arose in this case based upon ACA's appointment as their agent in the bankruptcy proceedings. Defendant responds that this was merely a limited agency to the extent that ACA had already made certain policy payments and that bond trustee U.S. Bank National Association represented plaintiffs' interests throughout the bankruptcy proceedings. This court is tentatively inclined to conclude that defendant's argument is correct, but the parties may conduct discovery on this issue.

argument clearly lacks merit. The contract in this case calls for the application of New York law, and, this aside, there seems to be very little, if any, argument for the application of Mississippi law. Indeed, only one of the dozens of plaintiffs in this case is a Mississippi resident, and this litigation involves a New York insurance company and a South Carolina road construction project. Any Mississippi connection to this dispute is tenuous at best, and this court reiterates its repeatedly-expressed intent to apply New York law in this case.

The court finally notes that, in its motion for summary judgment, ACA raises questions regarding the fact that almost all the plaintiffs in this case were added to this lawsuit shortly *after* defendant had notified counsel for plaintiff of their intent to pay the claims of all policyholders, regardless of whether they had filed suit. Specifically, defendant writes in its brief that:

> [A]ll but one of the plaintiffs, James Davis, joined the lawsuit *only after* ACA notified plaintiff's (now plaintiffs') counsel of ACA's decision (1) not to seek appeal to a higher New York court and (2) to honor the Policies in accordance with New York law as determined and announced by the New York Appellate Division in the Order in Oppenheimer. ACA also had notified counsel for the sole plaintiff, and now for all the plaintiffs, that notices were being sent to all bondholders, advising them of ACA's decision to follow the law of the Oppenheimer Order. *See* Decl. of Clark, ¶ 3. Leave to add these plaintiffs was not even requested until September 18, 2013, *six days after* plaintiffs' counsel was advised of ACA's intention to follow the Oppenheimer Order and make all payments under the Policies in accordance with that decision (as applied to all CUSIPS).
>
> *Not only* are these plaintiffs (all but plaintiff Davis) receiving all they are entitled to receive under the Policies--and can have no cognizable or compensable injury or damage--*they knew they were going to be receiving all of this before they filed suit*. A plaintiff cannot claim to be damaged when he/she/it did not even file suit until after the target defendant (a) had agreed to accept (and not appeal) the new determination of law and (b) had announced its decision to pay all policy holders (including non-plaintiffs, which non-plaintiffs comprise over [90%] of policy holders by aggregate amount of policy coverage).

As the court stated at the hearing, it regards this argument as being somewhat unfair to counsel for plaintiff, since he has long stated to the court that he represented other clients. Still, it is

5

unfortunate that counsel did not file an amended complaint soon after this court denied the motion for class certification,[2] and the timing of the amended complaint does appear to detract somewhat from plaintiffs' arguments regarding the amount of attorneys' fees to which they are entitled. At the same time, it should have been entirely foreseeable to ACA that some plaintiffs would retain counsel as a result of the denial of the claims in this case, and contingency fee arrangements are very much standard in the plaintiff's bar. The court therefore regards each side as having valid arguments regarding attorneys' fees, and it submits that they should reasonably try to meet somewhere in the middle on this issue.

The court does note that there is a real potential for conflicts of interest between plaintiffs and their counsel in the event that a settlement is not reached which pays them for their full policy limits. If this court is called upon to rule upon the motion to dismiss, it is very possible, if not likely, that it will simply follow the lead of the New York state courts in *Oppenheimer* and dismiss any claims for extra-contractual damages. This might well result in plaintiffs only recovering 60 cents on the dollar under their policies, with their attorney recovering the remaining 40 per cent. This would be an unfortunate result, given that defendant is now offering plaintiffs 100 cents on the dollar, plus attorneys' fees.

It appears that, barring a settlement, plaintiffs will need to prevail on claims for extra-contractual damages which, by this court's understanding, were not even asserted in *Oppenheimer* in order to merely break even. They clearly face an uphill battle in doing so, although the court will allow them an opportunity for discovery before reaching a final decision in this regard. The court therefore regards it as being very much in the plaintiffs' best interests to reach a settlement in this case prior to any ruling on a renewed motion for summary judgment

---

[2] The result in this litigation confirms this court's conclusion that it properly denied class certification, since the policyholders who did not file suit at all are being offered full policy benefits, based on the results of the *Oppenheimer* litigation.

6

following discovery. Given the potential for conflicts, the court directs that copies of this order be forwarded to each plaintiff so that they may make informed decisions regarding how they wish to proceed. The court has before it policyholders who had (at least until recently) good reason to believe that they were treated poorly by defendant, and it does not wish for them to feel that they have been treated poorly by the judicial system as well. The court will therefore ensure that each plaintiff is given information with which to make informed decisions in this case.

In light of the foregoing, it is ordered that the motions to dismiss and summary judgment are dismissed [112-1, 114-1] without prejudice pending the completion of discovery.

It is so ordered on this 30th day of October, 2013.

**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**