Mazzarelli, J.P., Acosta, Renwick, Richter, Gische, JJ.

9748     Oppenheimer AMT-Free               Index 653290/11
           Municipals, et al.,
               Plaintiffs-Respondents,

               -against-

          ACA Financial Guaranty Corporation,
              Defendant-Appellant.
          _____

Duane Morris LLP, New York (Thomas R. Newman of counsel), for appellant.

Sidley Austin LLP, New York (John G. Hutchinson of counsel), for respondents.
          _____

    Order and judgment (one paper), Supreme Court, New York County (Charles Ramos, J.), entered August 14, 2012, modified, on the law, to delete reference to Enhanced Committee on Uniform Securities Identification Procedures (CUSIP) Nos. 20786LCS8 and 20786LCU3, which were not owned by plaintiffs, and otherwise affirmed, without costs.

    Opinion by Gische, J. All concur.

    Order filed.

16

**EXHIBIT "B"**

SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT,

              Angela M. Mazzarelli,      J.P.
              Rolando T. Acosta
              Dianne T. Renwick
              Rosalyn H. Richter
              Judith J. Gische,       JJ.

                9748
            Index 653290/11
_____x

Oppenheimer AMT-Free
Municipals, et al.,
    Plaintiffs-Respondents,

       -against-

ACA Financial Guaranty Corporation,
    Defendant-Appellant.
_____x

Defendant appeals from an order and judgment (one paper)
        of the Supreme Court, New York County
        (Charles Ramos, J.), entered August 14, 2012,
        which denied its motion for summary judgment
        seeking a declaration that it was not
        obligated to provide coverage under the terms
        of the financial guaranty insurance policies
        it issued, and granted plaintiffs' cross
        motion for summary judgment declaring that
        defendant was required to provide coverage.

        Duane Morris LLP, New York (Thomas R. Newman,
        Cameron MacRae III, Hugh T. McCormick and
        Nathan Abramowitz of counsel), for appellant.

        Sidley Austin LLP, New York (John G.
        Hutchinson, Lee S. Attanasio, John J. Lavelle
        and Benjamin J. Hoffart of counsel), for
        respondents.

**EXHIBIT "B"**

GISCHE, J.

The underlying complaint seeks a declaration that defendant is still obligated to pay plaintiffs under certain insurance policies that guaranteed payment of municipal bonds when they matured in the event the issuing entity did not make the payment. Defendant seeks a declaration that it is relieved of liability for any further payment under the policies.

In February 1998, a public benefit corporation (issuer) issued and sold $200,177,680 in municipal bonds to finance the extension of a toll road in Greenville, South Carolina (original bonds). The issuance was made in accordance with a February 1, 1998 Master Indenture of Trust between the issuer and the First Union National Bank, as trustee (trust agreement). Under the trust agreement if the issuer files a voluntary petition in bankruptcy, it is an event of default which entitles a bond holder to pursue all its legal remedies.

In June 2001, defendant, a financial guaranty insurance company, issued a number of secondary market insurance policies to guaranty the issuer's timely payment of obligations under certain of the original bonds. The policies were subject to the terms of a November 3, 1997 custody agreement between First Trust of New York, National Association, a National Banking Association (custodian) and defendant. The individual policies were

2

**EXHIBIT "B"**

evidenced by certificates of bond insurance (collectively CBIs) which "wrapped" the particular bond defendant was insuring. The purpose of the CBIs was to improve the marketability and perceived creditworthiness of the original bonds.

Each CBI contained identical provisions which, insofar as relevant here, provide that defendant would pay the custodian the amount due for payment resulting from the issuer's nonpayment of its obligations under the bonds. Nonpayment is defined as the "failure of the Issuer to have provided sufficient funds . . . for the payment in full of all principal and interest on any Due Date of Payment of an Obligation." In the event of the issuer's nonpayment, once defendant received a Notice of Nonpayment, it was obligated to pay the custodian the monies due under the bonds, less any partial payments made. The monies paid, however, were for the benefit of the bond holders who received payment from the custodian according to a proscribed mechanism. Upon defendant making payment, it would become fully subrogated to the rights of the bond holder.

CBIs are "noncancellable except in the event the holder or the Owner surrenders its interest in the Certificate of Bond Insurance or in the position . . . and waives its rights to receive payment from the Insurer under this policy pursuant to

**EXHIBIT "B"**

Sections 3.03(f)[1] and 4.06(b) of the Custody Agreement." The referenced custody agreement waiver of rights under the policy was a document required from a bond holder in order to collect monies from the custodian on account of an issuer's default.

Between 2003 and 2007, plaintiffs purchased, on the secondary market, a large amount ($37.18 million par value) of the original bonds with corresponding CBIs. This litigation concerns 1998 Series B bonds identified by Committee on Uniform Security Identification Procedures (CUSIP) Nos. 20786LAQ4, 20786LAR2, 20786LAU5 and 20786LAW1, with Enhanced CUSIP Nos. 20786LCV1, 20786LCW9, 20786LCX7 and 20786LCY5. The Enhanced CUSIP identifies that each of the corresponding bonds is covered by a CBI.

The original bonds had maturity dates ranging from January 1, 2020 to January 1, 2026. They were zero coupon bonds, with interest accreting and paid at maturity, along with the principal. Although the court below issued a declaration with respect to Enhanced CUSIP Nos. 20786LCS8 and 20786LCU3, the parties agree that plaintiffs do not own or hold those underlying bonds.

The toll revenues received by the issuer were substantially

---

[1]The copies of the custody agreement provided in the record on appeal do not contain any Section 3.03.

4

less than projected and, on January 1, 2010, the issuer defaulted in making payments on certain of the outstanding original bonds, none of which were owned by plaintiffs. On June 24, 2010, however, the issuer filed for Chapter 9 bankruptcy protection, which allows insolvent municipalities to reorganize their debts. Defendant was listed in the petition as one of the creditors holding twenty (20) of the largest unsecured debts. It was a "special notice" party and filed a proof of claim on its own behalf. Defendant was aware of all of the proceedings in bankruptcy court.

The bankruptcy filing had the effect of accelerating the claims on the original bonds. The CBIs, however, have no parallel acceleration requirement, except at the sole option of defendant, which it did not exercise. This policy provision is consistent with Insurance Law §6905(a), which, as a protection for the insurer, provides that where payments on the insured bonds are accelerated for any reason, the guaranteed payments shall still be made when the payments were originally scheduled to come due, unless the insurer accelerates payment. While the parties disagree on whether defendant has any obligation at all to pay under the CBIs, plaintiffs concede that no payment is due until such time as payments would have been made by the issuer under the original bonds had no bankruptcy proceeding been filed.

**EXHIBIT "B"**

As part of the bankruptcy, the issuer's bond offering was restructured in the manner set forth in the order entered April 1, 2011, Confirming Debtor's First Amended Plan (restructuring plan). The restructuring plan which, after notice, was voted on by the creditors, called for a mandatory exchange of the original bonds for new bonds and the consequent cancellation of the original bonds. The new bonds differ primarily from the old bonds in that the principal amount of the new bonds is reduced to $150,150,650 (from $200,177,680) and they have extended maturity dates. Among other differences between the old and new bonds are the remedies and protections in the event of default. The new bonds do not afford remedies for failure to make payments on Senior Subordinate Bonds unless there are no Senior bonds outstanding. As part of the restructuring, the holders of the original bonds are required to execute a general release in favor of the issuer. The release provisions neither expressly include nor exclude defendant.

Defendant acknowledges that it would have been contractually obligated to pay for any loss suffered by plaintiffs under the original bonds when they matured, in the event of the issuer's bankruptcy, but it claims that as a result of the Restructuring Plan that was adopted, the original bonds were cancelled, completely relieving it of any obligation to pay under the CBIs.

6

**EXHIBIT "B"**

The court rejects this position because it is inconsistent with the terms of the policies and contrary to law.

The CBIs are financial guaranty insurance policies, which defendant is specially licensed to sell throughout the United States, including New York. As a monoline insurer, defendant is only authorized to sell this kind of insurance (see *Matter of McFerrin-Clancy v Insurance Dept. of State of New York*, 23 Misc 3d 1223[A], 2009 NY Slip Op 52257[U] [Sup Ct New York County 2009]). The policies are primarily governed by Article 69 of the Insurance Law. While they have some unique characteristics, they are generally subject to the same laws and principles underlying insurance policies in general (see Insurance Law §6908). Thus, CBIs are policies of insurance that should be analyzed in accordance with general principles of contract interpretation and insurance law (see *Vigilant Ins. Co. v Bear Stearns Cos., Inc.*, 10 NY3d 170 [2008]).

Insurance policies are to be afforded their plain and ordinary meaning and interpreted in accordance with the reasonable expectations of the insured party (see *Cragg v Allstate Indem. Corp.*, 17 NY3d 118 [2011]). Exclusions from policy obligations must be in clear and unmistakable language (see *Pioneer Tower Owners Assn. v State Farm Fire and Cas. Co.*, 12 NY3d 302, 307 [2009]), and if the terms of a policy are

EXHIBIT "B"

ambiguous, any ambiguity must be construed in favor of the insured and against the insurer (see *White v Continental Cas. Co.*, 9 NY3d 264 [2007]. The CBIs each expressly provide that they are to be governed by the laws of the State of New York (see *Aon Risk Servs. v Cusack*, 102 AD3d 461 [1st Dept 2013]).

The plain meaning of the contractual language contained in the CBI requires defendant to absolutely and unconditionally guarantee payment on the individual bonds in the event of the issuer's nonpayment. Issuer insolvency is clearly a covered risk, as is bankruptcy, which is a societal hallmark of insolvency. These are the very risks for which defendant received payment of premiums. The CBIs were noncancellable, with a narrow exception not applicable here, and did not provide for any exclusion in the event of bankruptcy. The filing of the bankruptcy petition by the issuer is an event of default under the trust agreement and it also served to accelerate plaintiff's claims against the issuer, which the issuer could not fully pay. The restructuring occurred only after the default under the trust agreement had occurred. Confirmation of the restructuring plan made it a certainty that the issuer would not make any future payments to plaintiffs on the original bonds at their respective maturity dates. It is the restructuring of the bonds and their reissuance in a lower principal amount with a longer payment

period that concretely represents that plaintiffs have sustained a loss.

Neither the restructuring plan, nor the issuer's discharge of debt in the bankruptcy proceeding, changed the obligations under the parties' contracts of insurance. Although releases were made in favor of the issuer and others, the terms of the releases do not include, and consequently do not extend to, defendant (see *Union Trust Co. v Willsea*, 275 NY 164, 167 [1937]; *Culver v Parsons*, 7 AD3d 931 [3d Dept 2004]). Additionally, while the Bankruptcy Court had jurisdiction and power to permanently enjoin claims and actions against nondebtors, it did not issue such an order in favor of defendant (see *In re Connector 2000 Assn.*, 447 BR 752, 767 [Bankr D SC 2011]).

Defendant's primary argument is that the cancellation of the original bonds and replacement with new and materially different bonds under the restructuring plan relieves it from any obligation to make payments to plaintiffs under the policies. It relies on the principle of law that a surety/guarantor is relieved of liability where, without its consent, there is any alteration of the underlying insured obligation (see *Bier Pension Plan Trust v Estate of Schneierson*, 74 NY2d 312, 315 [1989]). We do not go so far as to adopt plaintiffs' position that a monoline insurer can never assert such a defense on account of the

9

insurer's unique statutory right to accelerate payment. We find, however, that this common-law defense has no application to the CBIs at issue.

The defense is inconsistent with the nature and purpose of the policies themselves. As noted, the policies are noncancellable, except for a narrow nonapplicable exception. Noncancellability is consistent with and integral to the singular risk that the CBIs were clearly intended to cover, which is the insolvency or bankruptcy of the issuer. Reorganization is a likely, if not desirable outcome of bankruptcy, so that when a municipal bond issuer files for bankruptcy, such reorganization should not in itself vitiate obligations under contracts with third parties. If defendant were allowed to assert the common law defense it proposes, defendant would avoid paying for the very risk it undertook to insure and for which it received premiums.

The cases relied upon by defendant only apply the defense to the situation where the debtor and creditor have entered into a private agreement altering the terms of the obligations that were guaranteed. None of the cases arise in the context of a bankruptcy proceeding where the alteration is part of a reorganization plan and court ordered (see *Bier Pension Plan*, 74 NY2d at 315; *Geiger v ENAP, Inc.*, 264 AD2d 755 [2d Dept 1999]; *In*

10

**EXHIBIT "B"**

re *Dexel Bernham Lambert Group, Inc.*, 151 BR 674 [Bankr SD NY 1993], *affd* 157 BR 532 [SD NY 1993]). Additionally, there is no claim made that by virtue of the bond exchange defendant is now obligated to insure payment on the new bonds. Plaintiffs' claim is, as it should be, only for the known default under the original bonds, which was the very risk that defendant was insuring under the CBIs. Defendant's arguments about having to bear increased risk associated with the new bonds is misplaced. The new bonds are meaningful in terms of subrogation rights and/or offsets to payment. The loss that is payable under the CBIs takes into account any partial value received by the bond holder from the issuer, which in this case would reflect and be equal to the value of the new bonds. This is different than the risk of insuring the new bonds, which defendant is not required to assume under the restructuring plan. Because defendant has the sole right to accelerate payment for the losses to plaintiffs occurring as a result of issuer nonpayment under the original bonds, defendant has control over when it makes payments and it can do so at a time when it believes the value of the new bonds is favorable to it, provided payment is no later than the maturity date on the original bonds.

**EXHIBIT "B"**

Since it is undisputed that plaintiffs are not the owners of Enhanced CUSIP Nos. 20786LCS8 and 20786LCU3, the court below erred in including these bonds in its order and judgment.

We have considered defendant's remaining arguments and find them unavailing.

Accordingly, the order and judgment (one paper) of the Supreme Court, New York County (Charles Ramos, J.), entered August 14, 2012, which denied defendant ACA Financial Guaranty Corporation's motion for summary judgment seeking a declaration that it was not obligated to provide coverage under the terms of the financial guaranty insurance policies it issued, and granted the cross motion for summary judgment by plaintiffs Oppenheimer AMT-Free Municipals, Oppenheimer Multi-State Municipal Trust and Oppenheimer Municipal Fund, declaring that defendant was required to provide coverage, should be modified, on the law, to delete reference to Enhanced Committee on Uniform Security

12

**EXHIBIT "B"**

Identification Procedures (CUSIP) Nos. 20786LCS8 and 20786LCU3, and otherwise affirmed, without costs.

All concur.

THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.

ENTERED: SEPTEMBER 3, 2013

_____
CLERK

13

**EXHIBIT "B"**

Mazzarelli, J.P., Acosta, Renwick, Richter, Gische, JJ.

9748     Oppenheimer AMT-Free                      Index 653290/11
          Municipals, et al.,
              Plaintiffs-Respondents,

                -against-

          ACA Financial Guaranty Corporation,
              Defendant-Appellant.

---

Duane Morris LLP, New York (Thomas R. Newman of counsel), for appellant.

Sidley Austin LLP, New York (John G. Hutchinson of counsel), for respondents.

---

    Order and judgment (one paper), Supreme Court, New York County (Charles Ramos, J.), entered August 14, 2012, modified, on the law, to delete reference to Enhanced Committee on Uniform Securities Identification Procedures (CUSIP) Nos. 20786LCS8 and 20786LCU3, which were not owned by plaintiffs, and otherwise affirmed, without costs.

    Opinion by Gische, J. All concur.

    Order filed.

**EXHIBIT "B"**